# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TRICIA GALBREATH,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 15-00308-CG-N** |
| | ) | |
| **HALE COUNTY, ALABAMA** | ) | |
| **COMMISSION,** | ) | |
| **HALE COUNTY, ALABAMA, and** | ) | |
| **ARTHUR CRAWFORD, Probate Judge,** | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on the Motion to Dismiss (Doc. 7) filed by the Defendants, which seeks dismissal of certain claims in the Complaint (Doc. 1) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Tricia Galbreath ("Galbreath") has timely filed a response (Doc. 10) to the motion, and the Defendants have timely filed a reply (Doc. 11) to the response. The motion is now under submission (*see* Doc. 9) and is ripe for determination.

Under S.D. Ala. GenLR 72(b), the Motion to Dismiss (Doc. 7) has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition under 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss (Doc. 7) be **GRANTED in part** and **DENIED in part**, as set out herein.

## I.  <u>Well-Pleaded Facts</u>[1]

Galbreath is a white female and is currently 54 years old.  On November 25, 2008, she was hired under written contract by the Defendant Hale County, Alabama Commission (hereinafter, "the Commission") to serve as County Administrator for Defendant Hale County, Alabama (hereinafter, "Hale County"). The Commission is the governing body of Hale County and consists predominantly of African-American commissioners.  The Hale County Probate Judge is also the chairman of the Commission.  Defendant Arthur Crawford ("Crawford"), an African-American male, was elected Hale County Probate Judge in November 2012, defeating the three-term incumbent following a write-in campaign.[2]

On November 27, 2012, Galbreath executed an amendment to her employment contract with the Commission (hereinafter, the "Amended Contract").[3] Article I of the Amended Contract contained the following provisions:

> INITIAL TERM OF EMPLOYMENT:  The employer [the Commission] hereby employs the employee [Galbreath] and the employee hereby accepts employment with the employer for a period of five years beginning on November 25, 2008 to November 25, 2013.  However, this agreement may be terminated by the employee at an earlier date, as hereinafter provided.

---

[1] In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)).

[2] Crawford had initially won the Democratic primary over the incumbent but was subsequently ordered removed from the ballot by an Alabama court for failing to comply with campaign disclosure laws.

[3] Galbreath has attached a copy of the Amended Contract to her Complaint as "Exhibit A." (Doc. 1-1).

RENEWAL TERM OF EMPLOYMENT:   Upon the expiration of the Initial Term of Employment, the Employer hereby extends the terms of this Agreement for five years beginning on November 26, 2013, to November 25, 2018.

(Doc. 1-1 at 2).

Article IV of the Amended Contract provided, *inter alia*:

[]In the event of termination by the Employee **voluntarily** during the Employment Term, the Employee shall be entitled to receive, in full discharge of all County's obligations to Employee, the Employee's full compensation, benefits and expenses reimbursements then payable to [her] through the date of termination.

[]In the event of termination by the Employer **for cause** prior to the completion of the Employment term, the Employee shall be entitled to receive, in full discharge of all of County's obligations to Employee, the Employee's full compensation, benefits and expense reimbursements then payable to the Employee through the date of termination and the Employee shall be entitled to an additional six (6) months of Employee's full compensation from the effective date of termination.
…
[]In the event of termination of Employee's employment other than (i) as a result of any disability pursuant to the above, (ii) by reason of Employee's death, (iii) for cause pursuant to the above, or (iv) by the Employee voluntarily during the Employment Term, the Employee shall be entitled to receive, in full discharge of all of County's obligations to Employee, Employee's full compensation, benefits and expense reimbursements due and payable to the Employee under the terms of this Agreement, including any salary increase Employee would have been due under said Contract for the remainder of the contract term.   Said payments shall be made in equal monthly installments for the total number of months remaining on the contract term at the time of termination.

(*Id.* at 4 (emphasis added)).

Following Crawford's election, Crawford and the Commission "began a systemic purging of white county employees," terminating Galbreath, the then-

3

Chief Clerk of the Probate Court,[4] and the then-County Attorney.  Each of these county employees was replaced by an African-American.  Galbreath's and the then-County Attorney's replacements were also younger than them.

Galbreath and the then-County Attorney were both terminated at a Commission "executive session" meeting held on June 18, 2013.  Galbreath was not given any prior notice that she was going to be terminated or disciplined in any way.  Instead, she was called into the meeting under the guise of discussing performance issues and an "improvement plan."  The reasons given for her termination at the executive session included absenteeism, failure to carry out duties, and use of foul language.  Prior to the executive session, no Defendant had ever raised any of the issues presented to Galbreath, nor did they or anyone acting on their behalf ever give any indication that Galbreath was not performing to their expectations or was otherwise failing to perform her duties.  Following Galbreath's termination, Crawford repeatedly made false statements, including repeating the allegations made at the executive session, to persons outside of Hale County government, including persons in state government.

The Defendants have refused to honor the aforementioned terms of the Amended Contract since Galbreath's termination.  Moreover, at the time of her termination, Hale County had promulgated personnel policies, including disciplinary procedures and a grievance process, which the Defendants did not follow.  Galbreath filed a Notice of Claim with the Commission on September 4,

---

[4] The then-chief probate clerk has also filed a lawsuit against Crawford and the Commission arising from her termination.  *See Langford v. Hale County AL Commission et al.*, S.D. Ala. Case No. 2:14-cv-00070-KD-M.

2013.   She also filed a complaint with the Equal Employment Opportunity Commission, which issued her a right-to-sue letter on April 27, 2015.

## II.   Causes of Action

Galbreath initiated this civil action on June 16, 2015, by filing a Complaint (Doc. 1) with the Court alleging eight causes of action:

**Count 1** (against all Defendants) – Depriving Galbreath of her "constitutionally protected property interest in her employment as County Administrator" without procedural due process (specifically – notice, a sufficient opportunity to be heard, and a neutral decision maker) required by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

**Count 2** (against all Defendants) – Discriminatory termination of Galbreath on the basis of race in contravention of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

**Count 3** (against all Defendants) – Discriminatory termination of Galbreath on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII").

**Count 4** (against Hale County and the Commission) – Breach of Contract under state law

**Count 5** (against Hale County and the Commission) – Wrongful Termination under state law

**Count 6** (against Crawford) – Defamation under state law

**Count 7** (against all Defendants) – A "stigma plus" due process rights deprivation under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983. Specifically, the circumstances of Galbreath's termination "seriously damaged her standing and associations in the community and/or foreclosed her freedom to take advantage of other employment opportunities," and she "was not afforded an opportunity to clear her name."

**Count 8** (against all Defendants) – Discriminatory termination of Galbreath on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").[5]

Defendant Crawford is being sued in both his individual capacity and in his official capacity as chairman of the Commission.[6]

### III.   <u>Analysis</u>

The Defendants' motion asserts six separate grounds for dismissal (hereinafter, "Argument I," "Argument II," etc.). The undersigned will consider each separately, though not in the order presented by the Defendants.

---

[5] The Court has original jurisdiction over the federal claims under 28 U.S.C. § 1343 and/or 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

[6] No allegations in the Complaint indicate that Crawford is being sued in his official capacity as probate judge.

### a.     Argument III - Procedural Due Process Claims

In Argument III of their motion, the Defendants argue that *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), compels dismissal of Galbreath's § 1983 claims asserting deprivation of procedural due process (Counts 1 & 7).   *McKinney* noted:

> The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. *Cf. Zinermon v. Burch,* 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990). A violation of either of these kinds of protection may form the basis for a suit under section 1983. *Id.*

*McKinney*, 20 F.3d at 1555.

*McKinney* noted that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' "  *Id.* at 1556 (quoting *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1985) (Powell, J., concurring)).   Thus, "an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component.   Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection."   *Id.* at 1560 (11th Cir. 1994).[7]  "As a result, these state law

---

[7] The Defendants do not contend that Galbreath lacks a property right in her employment with Hale County.

based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *Id.* at 1556.[8]

"Substantive due process rights differ from their procedural counterparts in a second, important fashion: the manner in which a violation of the right occurs.  A violation of a substantive due process right … is complete when it occurs; hence, the availability *vel non* of an adequate post-deprivation state remedy is irrelevant.  Because the right is 'fundamental,' no amount of process can justify its infringement.  By contrast, a procedural due process violation is not complete 'unless and until the State fails to provide due process.'  In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  *Id.* at 1556-57 (quoting *Zinermon*, 494 U.S. at 123) (internal citation and and footnote omitted).  "This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation."  *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (per curiam) (quoting *McKinney*, 20 F.3d at 1560).  "This directive is not an exhaustion requirement.  Instead, this directive is a recognition that procedural due process

---

[8] The en banc *McKinney* court expressly overruled prior Eleventh Circuit precedent "grant[ing] pretextually terminated employees section 1983 causes of action premised on substantive due process violations…"  20 F.3d at 1560.

violations do not even exist unless no adequate state remedies are available." *Id.* n.2 (citation omitted).

The Defendants assert that Galbreath cannot state a claim for deprivation of procedural due process "because Alabama state courts afforded her adequate remedies to challenge any alleged denial of procedural safeguards." (Doc. 7 at 6). The Defendants cite to *Bell v. City of Demopolis, Alabama*, 86 F.3d 191 (11th Cir. 1996) (per curiam), which, in affirming summary judgment against a plaintiff on claims of inadequate procedural due process "both before and after his termination" under § 1983, noted that "Alabama courts … review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." 86 F.3d at 192 (citing *Ex Parte Tuskegee*, 447 So. 2d 713 (Ala. 1984); *Guinn v. Eufaula*, 437 So. 2d 516 (Ala. 1983)). *See also Cotton*, 216 F.3d at 1331 ("Defendant initially contends that certiorari to the state courts was available to Plaintiff and that this process was an adequate state remedy. We agree with Defendant that certiorari is generally an adequate state remedy. *See Narey*[ *v. Dean*], 32 F.3d [1521,] 1527 [ (11th Cir. 1994)] (review by Georgia courts of state agency's employment decisions is an adequate remedy); *see also Bell*, 86 F.3d at 192 (certiorari is adequate remedy under Alabama law); *McKinney*, 20 F.3d at 1563 (same under Florida law)."); *Stanley v. City of Clay, Ala.*, No. 2:12-CV-0374-JEO, 2012 WL 6000307, at *8 (N.D. Ala. Oct. 31, 2012) ("Alabama state courts afford an adequate remedy to a terminated employee who claims he has not been granted a hearing or other

procedural safeguards to which he is entitled under state or local law." (citing cases)), *report and recommendation adopted*, No. 2:12-CV-0374-JEO, 2012 WL 6000243 (N.D. Ala. Nov. 30, 2012).[9]

Galbreath argues that "the violation of Ms. Galbreath's due process rights was complete when she was afforded neither notice nor a hearing. *McKinney* simply does not address the situation which occurred here: a complete lack of any constitutionally mandated pre-deprivation due process. *McKinney* discusses the situation where an employee was provided pre-termination due process to which he ascribed a deficiency due to bias of the decision-maker. Therefore, the issue of providing a remedy through state court is irrelevant." (Doc. 10 at 6 (citations omitted)).

---

[9] *See also Hicks v. Jackson Cnty. Comm'n*, 374 F. Supp. 2d 1084, 1092-93 (N.D. Ala. 2005):

> To be considered constitutionally adequate, "the state procedure need not provide all the relief available under section 1983.... Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Cotton,* 216 F.3d at 1331. On review, an Alabama state court is "responsible for reviewing the record *to ensure that the fundamental rights of the parties, including the right to due process, [have] not been violated." Evans v. City of Huntsville,* 580 So.2d 1323, 1325 (Ala. 1991) (emphasis supplied). Thus, Alabama courts "review employment termination proceedings both to determine whether they are supported by substantial evidence *and to see that the proceedings comport with procedural due process." Bell v. City of Demopolis,* 86 F.3d 191, 192 (11th Cir. 1996) (citations omitted) (emphasis supplied). Based on this dual review, the Eleventh Circuit has previously held Alabama's writ of *certiorari* to be an adequate post-deprivation remedy for a procedural deprivation. *See id.* at 192 ("The state offers an adequate remedy in the form of administrative as well as state court review."); *Cotton,* 216 F.3d at 1331 ("We agree with Defendant that certiorari is generally an adequate state remedy."). Accordingly, plaintiff cannot escape the *McKinney* rule on this basis.

> In summary, the State of Alabama offers plaintiff an adequate post-deprivation remedy to correct the Commission's earlier procedural violation. Thus, pursuant to *McKinney,* plaintiff's procedural due process claim cannot succeed.

"It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *McKinney*, 20 F.3d at 1561. Galbreath has asserted that the Defendants deprived her of notice, an opportunity to be heard, and an unbiased decisionmaker prior to her termination. However, the undersigned does not agree with Galbreath's sweeping assertion that a complete lack of pre-deprivation process is always an actionable procedural due process violation regardless of post-deprivation remedies.

> "Although the Due Process Clause generally requires notice and an opportunity to be heard *before* the government seizes one's property ... the Supreme Court 'has rejected the proposition that ... the State [must always] provide a hearing prior to the initial deprivation of property.' " *Reams v. Irvin,* 561 F.3d 1258, 1263 (11th Cir. 2009) (emphasis in original) (internal citation omitted) (quoting *Parratt[ v. Taylor*], 451 U.S. 527,] 540–41, 101 S. Ct. [1908,] 1915–16[ (1981)]); *see also Hudson v. Palmer,* 468 U.S. 517, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984).

> "[T]he feasibility of predeprivation procedures [i]s the central question in determining [whether predeprivation procedures must be provided]." *Rittenhouse v. DeKalb Cnty.,* 764 F.2d 1451, 1455 (11th Cir. 1985); *see also Carcamo v. Miami–Dade Cnty.,* 375 F.3d 1104, 1105 n.4 (11th Cir. 2004). So long as the State provides adequate post-deprivation remedies, "due process d[oes] not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property." *McKinney v. Pate,* 20 F.3d 1550, 1562–63 (11th Cir.1994) (en banc).

> Pre-deprivation process is impractical "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure," because "the state cannot know when such deprivations will occur." *Hudson,* 468 U.S. at 532, 533, 104 S. Ct. at 3203. These "established state procedure[s]" are typically established for the purpose of depriving citizens of their property. *Rittenhouse,* 764 F.2d at 1455. For example, the plaintiff-tenants in *Grayden* were evicted from their apartments because the

city's code inspector found various code violations. 345 F.3d at 1233–
36. They argued that they deserved a hearing to challenge these
findings prior to eviction. *Id.* Although the court ultimately rejected
the plaintiffs argument, *id.* at 1236, the facts present an applicable
paradigm: a government actor (city inspector) acting pursuant to a
government policy (regular inspections) that is specifically designed to
deprive people of property interests (issuing an eviction notice, upon
finding code violations, that deprives tenants of their rights as lessees),
see *id.* at 1234–35.

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633  F.3d
1297, 1317 (11th Cir. 2011).

*McKinney* itself noted the same with regard in specifically addressing a
deprivation due to an impartial decisionmaker, noting:

> The precedent established by *Parratt* is unambiguous: even if McKinney
> suffered a procedural *deprivation* at the hands of a biased Board at his
> termination hearing, he has not suffered a *violation* of his procedural due
> process rights unless and until the State of Florida refuses to make
> available a means to remedy the deprivation. **As any bias on the part of
> the Board was not sanctioned by the state and was the product of
> the intentional acts of the commissioners, under *Parratt,* only the
> state's refusal to provide a means to correct any error resulting
> from the bias would engender a procedural due process violation.**
> It is to an examination of this state remedy—and a determination of
> whether it satisfies due process—that we now turn.

20 F.3d at 1562-63 (emphasis added).

Galbreath has alleged that the Defendants failed to follow Hale County
personnel policies, including disciplinary procedures and a grievance process, when
they terminated her.  (Doc. 1 at 7, ¶ 37).  However, the Defendants, in a catch-22,
would have been wrong to do so regardless, since Galbreath also alleges that "[s]aid
policies were unconstitutional on their face."  (*Id.*, ¶ 38).  The Defendants have not
addressed whether their alleged failure to follow their own facially unconstitutional

policies rendered pre-deprivation process impractical in these circumstances under *Parrat*, instead simply making their own blanket assertion that adequate post-deprivation process always negates a claim for a violation of procedural due process under § 1983.  The undersigned will not *sua sponte* engage in such a fact-specific inquiry at this stage.[10]

As such, the undersigned finds that the Defendants' motion to dismiss (Doc. 7) is due to be **DENIED** as to Argument III.

### b.   *Argument I – Official-Capacity Federal Claims against Crawford*

In Argument I of their motion, the Defendants assert that all official-capacity federal claims against Crawford (Counts 1, 2, 3, 7, and 8) should be dismissed because they are redundant to the federal claims against the Commission.

### 1.   Section 1983 Claims

" 'Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992).

---

[10] *See Reams*, 561 F.3d at 1263-64 ("[B]ecause 'due process is a flexible concept that varies with the particular circumstances of each case,' we must apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18[ (1976)], to determine whether pre-deprivation process was required in this case. *Grayden*[ *v. Rhodes*], 345 F.3d [1225,] 1232-33[ (11th Cir. 2003)]; *see also Bailey v. Bd. of County Com'rs of Alachua County, Fla.*, 956 F.2d 1112, 1123 n.12 (11th Cir. 1992) ('The need for some form of predeprivation hearing is determined from balancing the competing interests at stake.'). Under *Mathews*, the specific dictates of due process in any given case are determined by considering: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, 'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' 424 U.S. at 335, 96 S. Ct. at 903.").

> In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply " 'another way of pleading an action against an entity of which an officer is an agent.' " [*Kentucky v. Graham*, 473 U.S. 159,] 165-66, 105 S. Ct. [3099,] 3105[ (1985)] (citations omitted) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55-56 L. Ed. 2d 611 (1978)). Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents. *See id.* 473 U.S. at 165–66, 105 S. Ct. at 3105; *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S. Ct. 873, 877–78, 83 L. Ed. 2d 878 (1985); *Monell,* 436 U.S. at 691, 98 S. Ct. at 2036; *Farred v. Hicks,* 915 F.2d 1530, 1532 (11th Cir. 1990). Consequently, a plaintiff cannot rely on a *respondeat superior* theory to hold a municipality liable for individual actions of its officers. *Monell,* 436 U.S. at 691, 98 S. Ct. at 2036; *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334 (11th Cir. 1982). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell,* 436 U.S. at 691, 98 S. Ct. at 2036 (emphasis in original).

*Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (footnote omitted).   *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 877, 83 L. Ed. 2d 878 (1985).  As such, it is no different from a suit against the State itself. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S. Ct. 3099, 3104–3105, 87 L. Ed. 2d 114 (1985)…"); *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) (similar).

The Defendants have cited the following holding from *Busby* in support of dismissing the official capacity federal claims against Crawford:

> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against

local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond). *See Kentucky v. Graham,* 473 U.S. at 166, 105 S. Ct. at 3105; *Brandon v. Holt,* 469 U.S. [464,] 471–72, 105 S. Ct. [873,] 877–78[ (1985)]. In Busby's action against the City of Orlando, the district court recognized that the intended defendant was actually the City. To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury. We therefore AFFIRM the district court's decision to grant a directed verdict in favor of Walsh, Mays, Paden, and Noble as officially named defendants, because the City of Orlando remained as a defendant.

931 F.2d at 776.  *See also Snow ex rel. Snow v. City of Citronelle, AL*, 420 F.3d 1262, 1270 (11th Cir. 2005) ("In addition, Snow sued the City of Citronelle and Parker, Reid, and Presnell in their official capacities.  The district court properly granted summary judgment on these claims.  'Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent,' we address Snow's argument in relation to the City of Citronelle.' *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)."); *Christman v. Saint Lucie Cnty., Fla.*, 509 F. App'x 878, 879 (11th Cir. Feb. 15, 2013) (per curiam) (unpublished) ("For purposes of a suit under 42 U.S.C. § 1983, a claim against a defendant in his official capacity is the same as a claim against his employer. *See McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781, 785 n.2, 117 S. Ct. 1734, 1737 n.2, 138 L. Ed. 2d 1 (1997) (stating that 'a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent.' (internal quotation marks and alterations omitted)); *Welch v. Laney,* 57 F.3d 1004, 1009 (11th Cir. 1995) (stating that 'where a plaintiff brings an action against

a public official in his official capacity, the suit is against the office that official represents, and not the official himself")").

Galbreath attempts to distinguish *Busby* on the basis of its procedural posture, noting that *Busby* addressed a motion for directed verdict at trial rather than a pretrial motion to dismiss. Galbreath asserts that, because "[i]t remains unclear whether Hale County will be left in this case at the time of trial[,]" the official capacity claims against Crawford should not be dismissed at this stage. (Doc. 10 at 3). As the Defendants correctly argue in their reply, however, in focusing on this procedural distinction, Galbreath misses the overall significance of suing a government official in his official capacity. Suing Crawford in his official capacity as chairman of the Commission is equivalent to suing the Commission. Therefore, any claims that fail against the Commission would also necessarily fail against Crawford in his official capacity.

> In reliance on this notion, courts in this Circuit routinely and overwhelmingly deem suits against both a local government official in his official capacity and the entity of which the officer is an agent to be redundant, and dismiss the official-capacity claims against the individual defendant on that basis. *See, e.g., Abusaid v. Hillsborough County Bd. of County Com'rs,* 405 F.3d 1298, 1302 n.3 (11th Cir. 2005) (explaining that where plaintiff named county and county fire marshal in his official capacity as separate defendants, only the fire marshal's employer—the county—was proper party); *Busby,* 931 F.2d at 776 ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury.").[] Plainly, then, extensive authorities illustrate the well-entrenched principle that suits against both an official in his or her official capacity and the entity that official represents are redundant and unnecessary.

*M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty.*, Civil Action No. 11-0245-WS-C, 2012 WL 2931263, at *2 (S.D. Ala. July 18, 2012) (Steele, C.J.). *See also id.* n.5 (citing other cases); *Betts v. Conecuh Cnty. Bd. of Educ.*, Civil Action No. 13-0356-CG-N, 2014 WL 7411670, at *7 & n.6 (S.D. Ala. Dec. 30, 2014) (Granade, J.) ("[B]ecause Betts is already alleging § 1983 claims against the Board, to the extent Betts is suing Superintendent Brogden and Danford in their official capacities[ as Board agents] under §§ 1981 and 1983, such claims are due to be DISMISSED as redundant." (citing *Busby* and *M.R.*)).

As such, the undersigned finds that the Defendants' motion to dismiss (Doc. 7) is due to be **GRANTED** as to the § 1983 claims (Counts 1, 2, and 7) against Crawford in his official capacity.

### 2.     Title VII and ADEA claims

Both Title VII and the ADEA provide relief against a plaintiff's employer. *See, e.g.*, *Busby*, 931 F.2d at 772; *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). "[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby*, 931 F.2d at 772. *Accord Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) ("[B]oth this court and the Fifth Circuit have held that Title VII actions … may be brought only

against individuals in their official capacity and/or the employing entity."). The same is true for claims under the ADEA. *See Wheeles v. Nelson's Elec. Motor Servs.*, 559 F. Supp. 2d 1260, 1267 (M.D. Ala. 2008) ("[L]ike Title VII, an official capacity suit[ under the ADEA] is the same as a suit against the employer. Thus, official capacity suits against employees can be dismissed as redundant where the employer is a properly named defendant in the lawsuit." (quotation omitted)).

Here, Galbreath has already asserted Title VII and ADEA claims against her employer, the Commission. Thus, her Title VII and ADEA claims (Counts 3 and 8) against Crawford in his official capacity as chairman of the Commission are redundant, and the Defendants' motion to dismiss (Doc. 7) is due to be **GRANTED** as to these claims. *See Shoots v. City of Mobile*, Civil Action No. 11-00673-KD-M, 2013 WL 3281875, at *3 (S.D. Ala. June 28, 2013) (DuBose, J.) ("To the extent Shoots' alleges [Title VII ]claims against the individual defendants in their official capacities…, such claims are redundant as her employer has been named as a defendant." (citing *Cross*, 49 F.3d at 1504; *Portera v. State of Ala. Dep't of Fin.*, 322 F. Supp. 2d 1285, 1287 (M.D. Ala. 2004) ("[A]ny [Title VII ]claim against McClenney in his official capacity is redundant since the Finance Department is already a defendant")); *Betts*, 2014 WL 7411670, at *5 (similar). *But see Yeldell*, 956 F.2d at 1060 (Title VII "[s]uits may be brought only against individuals in their official capacity **and/or** the employing entity." (emphasis added)).

**c.**   ***Argument IV – Individual Capacity Title VII & ADEA Claims against Crawford***

In Argument IV of their motion, the Defendants assert, correctly, that Galbreath's Title VII and ADEA claims (Counts 3 & 8) are due to be dismissed against Crawford in his individual capacity.   Eleventh Circuit precedent is clear "that ' "[t]he relief granted under Title VII is against the employer, not [against] individual employees whose actions would constitute a violation of the Act." ' " *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam) (quoting *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)).   *Accord Busby*, 931 F.2d at 772; *Cross*, 49 F.3d at 1504.   Thus, " '[i]ndividual capacity suits under Title VII are … inappropriate.' " *Cross*, 49 F.3d at 1504 (quoting *Busby*, 931 F.2d at 772) (alteration added).   *See also Yeldell v*, 956 F.2d at 1060 ("[B]oth this court and the Fifth Circuit have held that Title VII actions are not appropriately brought against government officials in their personal capacities. Such suits may be brought only against individuals in their official capacity and/or the employing entity.").   The same is true for ADEA suits.   *See Lomax*, 45 F.3d at 404 n.4.   Galbreath "concedes that the individual capacity Title VII and ADEA claims against Defendant Crawford are due to be dismissed."  (Doc. 10 at 1).

Thus, the Defendants' motion to dismiss (Doc. 7) is due to be **GRANTED** as to Galbreath's individual-capacity claims against Crawford in Counts 3 and 8. Given that the undersigned has also recommended dismissal of the official-capacity claims against Crawford for these Counts, *see supra*, the undersigned with therefore **RECOMMEND** that Counts 3 and 8 be **DISMISSED** entirely as to Crawford.

### d.    Defamation

### 1.    Argument VI – Sufficiency of Factual Allegations

In Argument VI of their motion, the Defendants argue that Galbreath's defamation claim (Count 6) is due to be dismissed because she has not pled sufficient factual detail to state a plausible claim.

" 'To survive ... a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

> [*Iqbal*] held that the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Second, restating the plausibility standard, the Court held that where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief. The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief. Importantly, the Court held in *Iqbal,* as it had in *Twombly,* that courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Id.* at 1290 (citations and quotations omitted).

Under Alabama law, to " 'establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).' " *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 895 (Ala. 2004) (quoting *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988) (citations omitted)).

The Defendants complain that Galbreath "provides no detail on exactly <u>what</u> was supposedly said by Judge Crawford, <u>to whom</u> it was said, <u>where</u> it was said or <u>when</u> it was said." (Doc. 7 at 9).[11] However, they cite no authority to support this level of specificity in pleading defamation under Alabama law, and the undersigned finds that Galbreath has plead sufficient factual allegations indicating that Crawford published false and defamatory statements to others – specifically, alleging that, after she was terminated on June 18, 2013, Crawford repeated the

---

[11] The Defendants have also argued that additional factual detail is needed "because the claim may be barred by the defenses of absolute or conditional privilege." (Doc. 7 at 9). These privileges, however, appear to be affirmative defenses, *see Butler v. Town of Argo*, 871 So. 2d 1, 23-26 (Ala. 2003), which Galbreath is under no obligation to assist the Defendants in establishing. *See In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense … [I]t is well established that the party asserting an affirmative defense usually has the burden of proving it." (quotation omitted)).

allegedly untrue reasons given for her termination at the executive session (absenteeism, failure to carry out duties, use of foul language, etc.) to persons in state government and others outside of Hale County government. *See Am. Dental Ass'n.*, 605 F.3d at 1289 (while mere "labels and conclusions" are insufficient, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). Moreover, by alleging that she has "suffered damage to her professional reputation as a result of Defendant Crawford's defamatory statements," as well as "lost wages, compensation, and other benefits, and also suffered mental anguish[,]" she has at least shown her claim is actionable per quod.[12]

The "at least negligent" element requires more in-depth discussion. Under Alabama law,

> [a] court must determine as a matter of law a plaintiff's classification in the context of a defamation claim. *White v. Mobile Press Register, Inc.*, 514 So. 2d 902 (Ala. 1987). This determination will establish the plaintiff's burden of proof. *New York Times Co. v. Sullivan, 376 U.S. 254*, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). In defamation actions, a plaintiff is either a private person, a public official, or a public figure, either in general or for the limited purpose of a particular public controversy. *Mead Corp. v. Hicks,* 448 So. 2d 308 (Ala. 1984). If a plaintiff is determined to be a public official, public figure, or limited-purpose public figure, then the plaintiff has the burden of establishing

---

[12] *See Butler*, 871 So. 2d at 16-17 ("In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se. While to constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude. This distinction, however, does not deny the right to maintain an action for slander founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though it falls short of imputing the commission of such crime or misdemeanor. In such case the law pronounces the words actionable per quod only, and the plaintiff must allege and prove special damages as an element of the cause of action." (quotations omitted)).

by clear and convincing evidence that the defamatory statement was made with " 'actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 280, 84 S. Ct. 710; *Curtis Publ'g Co. v. Butts,* 388 U.S. 130, 87 S. Ct. 1975, 18 L.Ed.2d 1094 (1967); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974); and *White,* 514 So. 2d at 904. If it is determined that the plaintiff is a private figure, then the plaintiff has the burden of establishing by a preponderance of the evidence that the defendant negligently published the defamatory statement. *Mead Corp.,* 448 So. 2d at 312 (holding that "defendants who made false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff"). Whether an individual is a public figure, limited-purpose public figure, or private figure is a question of law to be determined by the court. *Mobile Press Register, Inc. v. Faulkner,* 372 So. 2d 1282 (Ala. 1979).

*Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 332-33 (Ala. 2007).

The threshold question whether the actual-malice standard applies in a defamation action involves a two-pronged inquiry—whether the [defamed party] is a public official and, if so, whether the allegedly defamatory comments related to his conduct as a public official. This is so, because "the Constitution protects statements made about *public officials* when those statements concern '*anything which might touch on an official's fitness for office ....*' " *Soke v. Plain Dealer,* 69 Ohio St.3d 395, 397, 632 N.E.2d 1282, 1284 (1994) (quoting *Garrison v. Louisiana,* 379 U.S. 64, 77, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964)) (emphasis added); see *Roberts v. Dover,* 525 F. Supp. 987, 989 (M.D. Tenn.1981). This formulation includes "personal attributes," regardless of whether they "may also [reflect] the official's private character." Garrison, 379 U.S. at 77, 85 S. Ct. 209. This is so, because "[f]ew personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation." *Id.* Thus, the first prong concerns the defamation plaintiff's status, while the second prong concerns the "nexus between that position and the conduct that is the subject of the defamation." Note, *The Status/Conduct Continuum: Injecting Rhyme and Reason into Contemporary Public Official Defamation Doctrine*, 84 Va. L. Rev. 871, 874 (1998) (emphasis added). Such threshold determinations are questions of law for the court. *See Ex parte Rudder*, 507 So. 2d 411, 416 (Ala.1987); *Fulton v. Advertiser Co.*, 388 So. 2d 533, 536 (Ala. 1980).

*Smith v. Huntsville Times Co.*, 888 So. 2d 492, 496 (Ala. 2004) (footnote omitted).

> A "public official" must hold a position that would invite public scrutiny of the person holding it, apart from the scrutiny and discussion occasioned by the allegedly defamatory remarks. Furthermore, the "public office" should be one of such importance that the public has a particular interest in the qualifications and performance of the person holding that office beyond the public general interest in the qualifications and performance of all governmental employees. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967).

*Barnett v. Mobile Cnty. Pers. Bd.*, 536 So. 2d 46, 54 (Ala. 1988)

Here, Galbreath cannot reasonably dispute that, for purposes of her defamation claim, she is a "public official" (i.e. a County Administrator)[13] and that Crawford's alleged defamatory comments – repeating the reasons for her termination given at the executive session ("absenteeism, failure to carry out duties, use of foul language, etc.") to other government officials[14] – related to her conduct as a public official.   Thus, she must satisfy the "actual malice" standard to prove defamation – mere negligence is not enough.  This standard

> is satisfied by proof that a false statement was made " 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 659, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) (quoting *New York Times v. Sullivan,* 376 U.S. at 279–80, 84 S. Ct. 710). A defendant acts with "reckless disregard" if, at the time of publication, the defendant " 'entertained *serious doubts* as to the truth of [its] publication' or acted 'with a *high degree of awareness* of ... [its] probable falsity.' "

---

[13] *Cf. Barnett*, 536 So. 2d at 54 ("[T]he plaintiff should be accorded the status of a public official. The plaintiff held the public office of town clerk, that is, she was a governmental employee who had substantial responsibility for, or control over, the conduct of governmental affairs.").

[14] These are the only alleged defamatory comments Galbreath has pled with sufficient specificity under *Twombly* and *Iqbal*.  The undersigned disregards her hinting at other, unspecified "false and defamatory statements," which are mere "legal conclusions" that are properly disregarded.

*McFarlane,* 91 F.3d at 1508 (quoting *St. Amant,* 390 U.S. at 731, 88 S. Ct. 1323)(emphasis added). "The actual malice standard is *subjective;* the plaintiff must prove that the defendant *actually* entertained a serious doubt." *Id.* (emphasis added). See *Sanders v. Smitherman,* 776 So. 2d 68, 71 (Ala.2000); *Finebaum,* 854 So. 2d at 1124; see also *Revell v. Hoffman,* 309 F.3d 1228, 1233 (10th Cir.2002); *Flowers v. Carville,* 310 F.3d 1118, 1131 (9th Cir. 2002); *Chafoulias v. Peterson,* 668 N.W.2d 642, 654 (Minn. 2003).

Malice can be shown by circumstantial evidence showing, for example, "that the story was (1) 'fabricated,' (2) 'so inherently improbable that only a reckless man would have put [it] in circulation,' or (3) 'based wholly on' a source that the defendant had 'obvious reasons to doubt,' such as 'an unverified anonymous telephone call.' " *McFarlane*, 91 F.3d at 1512–13 (quoting *St. Amant*, 390 U.S. at 732, 88 S. Ct. 1323). However, malice cannot be "measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731, 88 S. Ct. 1323 (emphasis added). Indeed, the failure to investigate does not constitute malice, unless the failure evidences " 'purposeful avoidance,' " that is, "an intent to avoid the truth." *Sweeney v. Prisoners′ Legal Servs.*, 84 N.Y.2d 786, 793, 647 N.E.2d 101, 104, 622 N.Y.S.2d 896, 899 (1995) (quoting *Connaughton*, 491 U.S. at 693, 109 S. Ct. 2678); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).

*Huntsville Times Co.*, 888 So. 2d at 499-500.

The Defendants correctly point out that Galbreath's use of "actual malice" "buzzwords," claiming that Crawford made the statements "with reckless disregard to their truth or falsity; and/or []with knowledge that the statements were false" (Doc. 1 at 12), are only bare "legal conclusions" insufficient to plead a plausible claim of "actual malice."  *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) ("His complaint used actual-malice buzzwords, contending that the RSLC had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they were

25

false. But these are merely legal conclusions, which must be backed by well-pled facts." (citing *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("A plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action." (quotation marks omitted)); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) ("Applying the *Iqbal* standard to this case, we find that the Appellants have not stated a claim. To begin with, Appellants' assertion that Appellees' statements 'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient.  This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279-80 (S.D.N.Y. 2013) ("Courts of appeals have recently dismissed defamation cases for failure to sufficiently plead actual malice under the more robust Rule 12(b)(6) standard articulated by the Supreme Court in *Iqbal* … Courts in this district have also dismissed pleadings of actual malice where the allegations were conclusory and lacked plausibility." (citing cases)).[15]

---

[15] "It is true that [Federal ]Rule[ of Civil Procedure] 9(b) requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.' But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. See 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1301, p. 291 (3d ed. 2004) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule 8(a) ... should control the second sentence of Rule 9(b)"). And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label  'general allegation,' and expect his complaint

However, Galbreath has also alleged that "[t]he reasons given during the executive session – absenteeism, failure to carry out duties, use of foul language, etc. –" for her termination, which Crawford then allegedly repeated to state government officials, "were false and created as a pretext to terminate Ms. Galbreath because she was an older white woman."   (Doc. 1 at 5 – 6, ¶ 26).  Assuming these allegations true,[16] and construing them in the light most favorable to Galbreath, as the undersigned must at this stage, a trier of fact could reasonably infer that Crawford, knowing the reasons for her termination were pretextual, acted at least with reckless disregard of whether they were false or not in repeating them to other government officials.[17]   These allegations raise, at least, a reasonable expectation that discovery will reveal evidence of Crawford's "actual malice," *Miyahira*, 715 F.3d at 1265, and thus sufficiently nudge Galbreath's claim of defamation across the line from conceivable to plausible.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 683.

As such, the undersigned finds that the Defendants' motion to dismiss (Doc. 7) is due to be **DENIED** as to Argument VI.

---

to survive a motion to dismiss."  *Iqbal*, 556 U.S. at 686-87.  *See also Mayfield*, 674 F.3d at 378 ("Rule 9(b) ensures there is no heightened pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated.").

[16] While Galbreath's allegation of pretext may be considered a bare "legal conclusion" in the context of her employment discrimination claims, the undersigned finds it is properly considered as a factual allegation in the context of her defamation claim.

[17] Of course, that the reasons given for Galbreath's termination may have been pretextual does not necessarily mean that they are false, or that Crawford knew or should have known that they were false.

### 2.   *Argument II – Individual Capacity Claim*

In Argument II of their motion, the Defendants assert that the state law defamation claim in Count 6 is due to be dismissed as to Crawford in his individual capacity, on the basis "that County Commissioners are not amendable [sic] to suit in their individual capacities."   (Doc. 7 at 4).[18]   In support of this argument, the Defendants cite to the following holding from *Smitherman v. Marshall County Commission*, 746 So. 2d 1001 (Ala. 1999) (per curiam):

> We first consider the trial court's ruling that the county commissioners and the county engineer are not amenable to suit in their individual capacities. The trial court relied on *Cook v. St. Clair County,* 384 So. 2d 1 (Ala.1980), in which this Court held:
>
>> "Counties are amenable to suit in tort under Code of Alabama, 1975, § 11–1–2. Because counties, as bodies corporate, act through their governing bodies, the county [commissions, the] commissioners likewise are subject to suit in tort, not in their individual capacities but only in their official capacities."
>
> 384 So. 2d at 7 (opinion on application for rehearing). It is therefore clear that the summary judgment was properly entered for the commissioners as to the claims against them in their individual capacities.

746 So. 2d at 1004.

In *Horne v. Russell County Commission*, 379 F. Supp. 2d 1305, 1338 (M.D. Ala. 2005) (Albritton, J.), *aff'd*, 180 F. App'x 903 (11th Cir. 2006), another case cited by the Defendants that Galbreath concedes supports the Defendants' *Smitherman* argument (*see* Doc. 10 at 4 ("…*Horne* did grant summary judgment on the grounds

---

[18] The Defendants make the same argument for Crawford as to Counts 4 and 5.  However, as Galbreath correctly points out, Counts 4 and 5 do not assert claims against Crawford, only Hale County and the Commission.

advanced by the Defendants…")), the district court undertook a detailed examination of *Smitherman* and *Cook*.

In *Horne*, the plaintiff, asserted causes of action arising from her employment as an Alabama county administrator, which included state law claims of defamation and assault against a county commissioner, Pugh, in his individual capacity. 379 F. Supp. 2d at 1314, 1338. Pugh "argued that as a County Commissioner he is not amenable to suit for violations of Alabama tort law[,]" citing *Smitherman*. *Id.* at 1338. The district court addressed Pugh's contention as follows:

> Horne argues that in cases like *Smitherman* and *Cook,* the actions at issue were negligent failure to maintain county property properly, so that those cases are distinguishable. Of course, Horne overlooks that wantonness claims were also asserted in *Smitherman*. Horne argues that it has always been the law that state actors can be individually sued for their actions and are not protected by discretionary function immunity if the individual acts willfully, maliciously, fraudulently, in bad faith, or beyond authority or under a mistaken interpretation of law. Horne does not cite, however, and the court is not aware of any, cases decided after *Smitherman* in which a state law tort claim was allowed to proceed as against a county commissioner in his or her individual capacity.
>
> The line of cases addressing this issue begin with *Cook v. St. Clair County,* 384 So. 2d 1 (Ala. 1980). In *Cook,* the court determined that a governmental immunity which had been applied to county commissions in the past would no longer be applied. *Id.* at 5. In this context, therefore, the court stated that county commissioners could be sued in their official, but not individual capacities. *Id.* On rehearing, the Cook court again stated that "commissioners likewise are subject to suit in tort, not in their individual capacities but only in their official capacities," and followed that statement with the statement that governmental immunity is no longer available in suits. *Cook,* 384 So. 2d at 7.
>
> If there were no further interpretation of the *Cook* holding by the Alabama Supreme Court, this court might be inclined to agree with Horne that individual commissioners may be sued irrespective of

29

principles of governmental immunity, and that such suits are governed by principles of discretionary function immunity. The Alabama Supreme Court has, however, spoken further on the issue. In *Smitherman,* claims for negligence and wantonness were asserted against county commissioners. The trial judge granted summary judgment, citing *Cook,* and stating that the commissioners in their individual capacities "cannot be sued in tort." *Smitherman,* 746 So. 2d at 1003. As quoted above, the Alabama Supreme Court stated that "summary judgment was properly entered for the commissioners as to the claims against them in their individual capacities." *Id.* at 1004. The fact that a wantonness claim was asserted precludes this court from merely assuming that the Alabama Supreme Court did not address whether claims could be asserted against the individuals because it was obvious that discretionary function immunity applied. In addition, although Horne tries to distinguish the facts of *Cook* and *Smitherman* as being duties of the county, not the individual commissioner, the court cannot conclude that the broad holding in *Smitherman* is limited to those facts.[FN13] This court is bound to read *Smitherman* as holding that no tort claim can be asserted against county commissioners in their individual capacities because they are not subject to suit in tort.

> FN13 – If the fact that a county duty was involved had been dispositive, the commissioner would not have owed the plaintiff any duty and there would have been no need to find that commissioners are not amenable to suit.

In view of this precedent of the Alabama Supreme Court, summary judgment is due to be GRANTED as to all of the state law claims brought against Pugh.

*Id.* at 1338-39 (two footnotes omitted).  Since *Horne* was decided, the Alabama Supreme Court has reaffirmed its holding in *Smitherman*.  *See Wheeler v. George*, 39 So. 3d 1061, 1088 (Ala. 2009) ("Alabama law is clear that a county commissioner cannot be sued in his or her individual capacity … We have not been asked to overrule *Smitherman*. Because Joseph, as a county commissioner, cannot, as a matter of law, be sued in his individual capacity, the summary judgment in his favor [on the plaintiffs' claims of fraud, suppression, breach of contract, rescission,

and conspiracy arising out of the sale of their land ]is due to be affirmed …"); *Suttles v. Roy*, 75 So. 3d 90, 101-02 (Ala. 2010), *as modified on denial of reh'g* (July 22, 2011) (Shaw, J., concurring) ("In *Smitherman,* the plaintiffs sued various county commissioners and a county engineer seeking damages for personal injury sustained as the result of an allegedly improperly maintained roadway. The trial court noted that under *Cook v. St. Clair County,* 384 So.2d 1 (Ala.1980), the county commissioners could not be subject to suit in their individual capacities. *Smitherman* affirmed the holding that, under *Cook,* the commissioners were subject to suit only in their official capacities.   In other words, the Court noted what appears to be a *per se* rule barring individual-capacity suits against county commissioners.").

Galbreath does not dispute the Defendants' characterization of Crawford as a county commissioner by virtue of his serving as chairman of the Commission (despite having been elected to the position of probate judge),[19] and she has provided no convincing argument to go against *Horne*'s thoughtful analysis of *Smitherman*, which compels the conclusion that Crawford is immune from suit in his individual capacity for the tort of defamation as a matter of law.[20]  Thus, the undersigned finds

---

[19] *See* Ala. Code § 11-3-1(c) ("Unless otherwise provided by local law, by court order, or governed by Section 11-80-12, and as otherwise provided in subsection (d), there shall be in every county a county commission, composed of the judge of probate, who shall serve as chairman, and four commissioners, who shall be elected at the time prescribed by law and shall hold office for four years until their successors are elected and qualified.").

[20]     Galbreath erroneously argues that *Smitherman* and *Horne* are no longer good law on this point because *Suttles v. Roy*, 75 So. 3d 90 (Ala. 2010), "abrogated the *Smitherman* holding insofar as it could be read to grant blanket immunity to local government officials." (Doc. 10 at 4).  In a footnote, the *Suttles* court addressed arguments that *Smitherman* stood

that the Defendants' motion to dismiss (Doc. 7) is due to be **GRANTED** as to Galbreath's individual-capacity claim against Crawford in Count 6.

### f.   *Argument V – Wrongful Termination*

Finally, in Argument V of their motion, the Defendants assert that Galbreath's state law wrongful termination claim (Count 5) is due to be dismissed

---

"for the proposition that because the allegedly tortious acts that form the basis of [the plaintiff]'s claims were performed by [a city police officer] while he was acting in the line and scope of his employment, [the plaintiff] could sue [the officer] only in his official capacity[,]" and that "*Smitherman* held 'that a public officer or employee defendant engaged in the performance of their official duties acts only within their official capacity and may only be sued in that capacity.' "  75 So. 3d at 98 n.4.  The *Suttles* court rejected these arguments, holding that *Smitherman* "does not stand for this proposition."  *Id.*  In doing so, however, the *Suttles* court made no mention of *Smitherman*'s holding regarding county commissioners' immunity in their individual capacities, instead distinguishing a separate *Smitherman* holding affirming the trial court's grant of summary judgment in favor of a county engineer.  *See id.* ("In [*Smitherman*], the trial court held that a county engineer sued in his individual capacity was entitled to a summary judgment because there was 'no evidence' indicating that he 'acted in his individual capacity with regard to the issues' presented in the complaint. 746 So. 2d at 1003. We affirmed the trial court's judgment because the appellant did not, on appeal, challenge the summary judgment in favor of the county engineer on the claim alleged against him in his individual capacity. Although this Court went on to state, in dicta, that the record supported the trial court's judgment, this Court did not affirm on the basis of the rationale of the trial court's holding. *Id.* at 1004.").

There is no indication that *Suttles* in any way overruled, modified, or narrowed *Smitherman*'s holding as to county commissioner individual capacity immunity, which the Alabama Supreme Court had emphatically reaffirmed the previous year in *Wheeler*, *see supra*. *Cf. Suttles*, 75 So. 3d at 102 (Shaw, J., concurring) ("The individual-capacity claim against the county engineer[ in *Smitherman*] involved a different analysis [from those against the county commissioners] … *Smitherman* gives no explanation as to what evidence the record contained in support of the summary judgment as to the county engineer.  It is impossible to determine what actions the engineer did or did not undertake or how those acts occurred as part of, or could not be outside of, the line and scope of the engineer's duties. It is clear, however, that the Court *did not* hold that the *per se* rule of *Cook* barring individual-capacity claims against county commissioners also applied to county employees. Indeed, there would have been no authority for the Court to do so, because nothing in Cook indicates that the rule addressed there would extend to county employees who are not part of a county's governing body: 'Because counties, as bodies corporate, act through their governing bodies, the county commission[s], [the county] commissioners likewise are subject to suit in tort, not in their individual capacities but only in their official capacities.' 384 So. 2d at 7 (opinion on rehearing). In other words, the *per se* rule barring an individual-capacity action against a county commissioner exists by virtue of the county commissioner's role as a part of the governing body of the county.").

because her claim for wrongful termination "is simply a reiteration of her breach of contract claim" in Count 4.  (Doc. 7 at 8).  Count 5 alleges a claim for wrongful termination based on both Galbreath's "protectable interest in her employment through both a written contract with the Hale County Commission and the employment policies and procedures of the Hale County Commission."  (Doc. 1 at 11).  The Defendants are correct that, under Alabama law, both situations support a breach of contract claim, rather than a wrongful termination claim.  *See Hardric v. City of Stevenson*, 843 So. 2d 206, 209 (Ala. Civ. App. 2002) ("[W]hen the employer limits its right to terminate an employee by providing a manual outlining specific procedures that must be followed in order to terminate an employee, violation of these procedures gives rise to a breach-of-contract claim." (citing *Morrow v. Town of Littleville*, 576 So. 2d 210 (Ala. 1991) ("The plaintiff alleged in count one of his complaint that the defendant had a 'Policy and Procedures Manual' and that the defendant had failed to follow the policies and procedures set out therein in terminating his employment. Construing the complaint liberally in favor of the plaintiff, … we must disagree with the defendant's contention that the trial court correctly characterized count one of the complaint as attempting to state a tort claim for the wrongful termination of an employment contract. Instead, we conclude that count one is sufficient to state a claim for the breach of an employment contract.")).

In response, Galbreath argues that she has stated a cognizable and separate claim of wrongful termination, citing *Hardric v. City of Stevenson* in support.  In

33

that case, the Alabama Court of Civil Appeals reversed dismissal of a former municipal police officer's claim for wrongful termination, holding:  "As to Hardric's claim of wrongful termination, we view this court's decision in *City of Gadsden v. Harbin*, 398 So. 2d 707 (Ala. Civ. App. 1981), as controlling.  That decision held that a municipal employee may bring a wrongful-termination action. This court determined that '[t]he dismissal of a public employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under Alabama law.'  *Harbin*, 398 So. wr2d at 708."  398 So. 2d at 210.

In reply, the Defendants argue that *Hardric* and *Harbin* are distinguishable because both involved wrongful termination claims by former <u>municipal</u> employees (specifically, city police officers), rather than county employees such as Galbreath. The Defendants correctly point out that counties and municipalities are separate and distinct legal entities under Alabama law.  They also point out that municipal law enforcement officers are expressly entitled to pretermination hearings under Ala. Code § 11-43-230 but that no similar statutory provision exists for a county employee such as Galbreath.

Neither *Hardric* nor *Harbin* expressly mentions § 11-43-230.  However, the undersigned notes that in *Hardric*, the Alabama Court of Civil Appeals, though relying on its previous holding in *Harbin* that the "dismissal of a **public** employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under Alabama law[,]" appears to have limited that holding by characterizing it as allowing for wrongful termination claims by "**municipal**

employees," rather than "public employees" in general. 398 So. 2d at 210 (emphasis added). The parties do not cite, nor has the undersigned located, any Alabama appellate court cases that apply *Hardric*'s wrongful termination holding, and the federal district courts in Alabama that have applied *Hardric* and *Harbin* also involved claims of wrongful termination by municipal, not county, employees. *See Finley v. Town of Camp Hill*, No. 3:15CV195-CSC, 2015 WL 2031371, at *2-3 (M.D. Ala. Apr. 30, 2015) (city police officers) (discussing the plaintiffs' right to due process under Ala. Code § 11-43-230); *Hale v. City of Lanett, Ala.*, No. 3:12CV584-TFM, 2012 WL 3890132, at *3 (M.D. Ala. Sept. 7, 2012) (city police officers) ("In Alabama, a municipal employee may bring a wrongful termination action against a municipality … Therefore, to the extent the plaintiffs assert that they were not provided a hearing in compliance with municipality's own policies and procedures during termination proceedings, the court concludes that the plaintiffs state a plausible claim for relief."); *Taylor v. City of Demopolis*, Civil Action No. 04-758-BH-B, 2005 WL 3320735, at *8 (S.D. Ala. Dec. 6, 2005) (city clerk), *aff'd*, 182 F. App'x 973 (11th Cir. 2006).

Nevertheless, the undersigned is not convinced that dismissal of Galbreath's wrongful termination claim is warranted at this stage of the proceedings. In reaching the holding relied on by *Hardric*, *Harbin* relied on two Alabama Supreme Court decisions, *Limbaugh v. Johnston*, 393 So. 2d 963 (Ala. 1981), and *Jefferson County v. Reach, Alabama*, 368 So. 2d 250 (Ala. 1979). Both of those cases involved deputy sheriffs as plaintiffs, considered state employees under Alabama law. *See*

*Heard v. Hannah*, 51 F. Supp. 3d 1129, 1139 (N.D. Ala. 2014) ("[U]nder Alabama law, county sheriffs are state constitutional officers, such that the deputies they appoint are also deemed to be state officials, rather than employees of the counties in which they serve." (citing cases)).  *Reach* held the plaintiff's claim "that his dismissal from the Sheriff's Department, without being afforded a hearing, violated due process of law under both the Alabama Constitution and the United States Constitution … arises from a breach of duty imposed by law…" and was thus considered a tort action.  368 So. 2d at 252.  *Limbaugh*, citing *Reach*, held that the reinstated plaintiff's "claim for back pay is a tort action for damages on account of the injury caused by the failure to dismiss him in accord with due process of law requirements" and that "[a] plaintiff is allowed one year from the date of an alleged wrongful dismissal to commence proceedings."  393 So. 2d at 965.  The Alabama Supreme Court's decisions in *Limbaugh* and *Reach* suggest that wrongful termination claims may not be limited to just municipal employees, as *Hardric* suggests.[21]

The undersigned "does not by this [recommendation] definitively resolve whether [Alabama law] provides the plaintiff a cause of action[ for wrongful termination].  Instead, the [undersigned finds] only that the defendant[s] ha[ve] not demonstrated that no such cause of action exists.  The [undersigned] has and

---

[21] *Cf. Doyle v. Volkswagenwerk Aktiengelellschaft*, 81 F.3d 139, 142 (11th Cir. 1996) (" 'Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " (quoting  *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

expresses no opinion whether the defendant[s] could have done so by presenting different or stronger arguments, though the defendant[s] remain[] free to try on motion for summary judgment." *Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1331 (S.D. Ala. 2013) (denying motion for judgment on the pleadings).

Thus, the undersigned finds that the Defendants' motion to dismiss (Doc. 7) is due to be **DENIED** as to Count 5.

## IV.    Conclusion and Recommendations

In accordance with the foregoing analysis, it is **RECOMMENDED** that the Defendants' Motion to Dismiss (Doc. 29) be **GRANTED in part** and **DENIED in part**, such that the Complaint (Doc. 1) be **PARTIALLY DISMISSED** under Federal Rule of Civil Procedure 12(b)(6) as follows:

1. Counts 1, 2, and 7 should be **DISMISSED** against Crawford in his official capacity *only*;

2. Count 6 should be **DISMISSED** against Crawford in his individual capacity *only*; and

3. Counts 3 and 8 should be **DISMISSED** against Crawford *only*, in their entirety.

## V.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P 72(b).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 15th day of September 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**