IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TRICIA GALBREATH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   **CIVIL ACTION NO. 15-308-CG-N** |
| | ) |
| HALE COUNTY, ALABAMA | ) |
| COMMISSION, et al., | ) |
| | ) |
|     Defendants. | ) |

## <u>ORDER AND MEMORANDUM OPINION</u>

This matter is before the Court on the parties' cross motions for summary judgment. Defendants Hale County, Alabama; Hale County, Alabama Commission; and Probate Judge Arthur Crawford (collectively, "Defendants") filed a Motion for Summary Judgment (Doc. 25), a Brief in Support of Motion for Summary Judgment (Doc. 26), a Reply Brief in support (Doc. 39), and a Response in Opposition to Plaintiff Tricia Galbreath's ("Plaintiff") Motion (Doc. 33). Plaintiff filed a Motion for Partial Summary Judgment (Doc. 28), a Brief in Support of Motion for Summary Judgment (Doc. 29), a Reply Brief in support (Doc. 36), and a Response in Opposition to Defendants' Motion (Doc. 34). For the reasons explained below, Defendants' Motion for Summary Judgment is **GRANTED**, in part, and **DENIED**, in part, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

## I. PROCEDURAL BACKGROUND

This matter arises out of Plaintiff's termination from the Hale County Commission as the County Administrator. The Complaint asserts eight counts: (1)

Defendants deprived Plaintiff of a "constitutionally protected property interest in her employment as County Administrator" without due process as required by the Fourteenth Amendment in violation of 42 U.S.C. § 1983; (2) Defendants violated Plaintiff's right to equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983; (3) Defendants terminated Plaintiff based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; (4) Defendant Hale County and Defendant Hale County Commission breached their employment contract with Plaintiff in violation of state law; (5) Defendant Hale County and Defendant Hale County Commission wrongfully terminated Plaintiff in violation of state law; (6) Judge Crawford defamed Plaintiff in violation of state law; (7) Defendants placed a "stigma plus" on Plaintiff and did not allow her the opportunity to clear her name in accordance with the Due Process Clause of the Fourteenth Amendment in violation of 42 U.S.C. § 1983; and (8) Defendants discriminated against Plaintiff based on her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*  (Doc. 1).

Defendants filed a motion to dismiss certain parts of the Complaint.  (Doc. 7). The Court granted in part Defendants' Motion to Dismiss the Complaint as follows: (1) Counts 1, 2, and 7 were dismissed against Judge Crawford in his official capacity *only*; (2) Count 6 was dismissed against Judge Crawford in his individual capacity *only*; and (3) Counts 3 and 8 were dismissed against Judge Crawford *only* in their entirety.  (Doc. 18).  The parties subsequently filed cross motions for summary judgment, Defendants on all counts and Plaintiff on Counts 1 and 4.  Each party

briefed their position and provided evidentiary support thereof to the Court.  This matter is now ripe for consideration.

## II. FACTUAL BACKGROUND

The Hale County Commission is an elected body of five individuals, headed up by the Probate Judge of Hale County who also serves as the Chairman of the Commission.  Plaintiff, a Caucasian female, began working for the Hale County Commission in 2004 as the County Administrator, after coming out of retirement to take the position.  After working several months for Hale County, Plaintiff entered into an employment contract ("the 2005 Contract") with Hale County, which was signed by the then Commission Chairman, Judge Leland Avery, and Plaintiff.  (Doc. 27-3, pp. 1–3).  The initial term of the contract was for October 1, 2005, through September 20, 2010.  *Id.* at 1.  Plaintiff's duties included those commonly discharged by the County Administrator and others the law required.  *Id.*  In addition to the 2005 contract, Plaintiff was provided with and signed for a copy of the Hale County Personnel Policy ("the Policy").  (Doc. 30-1, p. 25:2–7; Doc. 27-5, pp. 1–24).

On November 25, 2008, Plaintiff received a second employment contract ("the 2008 Contract"), which extended her employment term through November 25, 2013.  (Doc. 27-3, pp. 16–18).  The 2008 Contract was substantially the same as the 2005 Contract, but the 2008 contract included a cut in salary to $21,000.00.  *Id.* at 1.  The cut in salary was to facilitate Plaintiff's ability to draw payments from her retirement with the Alabama Retirement System while continuing to work, after

she decided not to retire from Hale County in 2008.  (Doc. 27-2, p. 12:14–23).

In the November 2012 election cycle, Judge Crawford defeated incumbent candidate Judge Avery in the run for Hale County Probate Judge.  (Doc. 27-7, p. 2: 11–16).  Also, Donald Anderson was elected as a commissioner during this election cycle.  (Doc. 27-13, p. 2:6–8).  Judge Crawford was to assume his new position on January 1, 2013.  (Doc. 27-7, p. 3: 4–6).  Before then, an amendment to the 2008 Contract ("the 2012 Amendment") was executed.  *Id.* at 3:10–18.  The 2012 Amendment made the following material amendments to the 2008 Contract: (1) affording Plaintiff all of the rights, privileges, and benefits that Hale County employees have, to include but not limited to, any and all hospital, surgical, dental, and/or any other medical benefit, under the benefit plan for county employees; (2) requiring unanimous consent of the Hale County Commission before Plaintiff could be terminated; and (3) extending the term of the 2008 Contract through November 25, 2018.  (Doc. 27-3, pp. 21–24).  Both Plaintiff and Judge Avery signed the 2012 Amendment.[1]

On June 18, 2013, the Hale County Commission held a commission meeting. The published agenda indicated that one of the general session topics was "personnel," to include the County Administrator (Plaintiff) and County Attorney (William Holmes).  (Doc. 30-10, p. 2).  The agenda also indicated that an executive session would take place to discuss threatening litigation.  *Id.*  Beyond the agenda,

---

[1] The parties do not appear to dispute whether the 2005 Contract and 2008 Contract was signed and voted on by the Hale County Commission; however, as discussed below, there is dispute whether the 2012 Amendment was voted on by the Hale County Commission.

4

Judge Crawford testified that he was unaware of any notice being provided to Plaintiff that she would be disciplined in the executive session or terminated in the general session.  (Doc. 30-11, p. 12:4–9; p. 15:10–14).

After the Commission discussed ongoing conflict issues with the County Attorney in the executive session, Judge Crawford provided Plaintiff with a self-prepared employee disciplinary form and read the form aloud.  (Doc. 30-11, p. 4:2–18).  The disciplinary form outlined alleged issues pertaining to Plaintiff: (1) chronic absenteeism and absent without authorized leave; (2) failure to carry out duties of the job; (3) failure to work cooperatively, cheerfully, and productively with others; (4) use of foul language in the workplace; (5) failure to meet the standard of appropriate attire on the job; and (6) travel without the approval of the commission.  (Doc. 30-13, pp. 2–3).  The entire commission, Plaintiff, and the County Attorney were present for the reading.  (Doc. 30-11, p. 3:16–20).  As Judge Crawford read the form, Plaintiff made continued attempts to interrupt and was told that she could not speak at that time.  (Doc. 27-2, pp. 135:18–136:2).  After Judge Crawford read the form, Plaintiff was offered an opportunity to respond; Judge Crawford testified that Plaintiff only responded "no comment."  (Doc. 30-11, p. 4:19–23).  No discussion as to Plaintiff's termination transpired during the executive session.

The Hale County Commission returned to general session, wherein Commissioner Anderson moved to terminate Plaintiff's contract.  (Doc. 30-9, p. 3). Commissioner Hamilton seconded the motion.  (Doc. 30-9, p.3).  Judge Crawford, Commissioner Hamilton, and Commissioner Anderson voted in favor of Plaintiff's

5

termination.  *Id.*  Commissioner Rogers voted against Plaintiff's termination, and Commissioner Rhodes abstained from the vote.  *Id.*  Given the majority approval, the vote carried and Plaintiff's employment was terminated.  *Id.*  Each proponent of Plaintiff's termination offered his own reasons for voting in favor of termination and provided these reasons in a declaration.

As to Judge Crawford, he offered five reasons.  *See* (Doc. 27-20).  First, he declared that Plaintiff's duties included preparing commission meeting minutes and Plaintiff failed to do so.  *Id.* at 1.  However, Plaintiff testified that she completed the meeting minutes and put them in the appropriate book for the commissioners to sign.  (Doc. 30-1, p. 22:15–23).  Carol Robinson also testified that electronic copies of the meeting minutes were discovered on Plaintiff's work computer after her termination.  (Doc. 35-8, pp. 3:19–4:8).  Judge Crawford also declared that he believed Plaintiff was absent from work on a regular basis based on his observations and reports of other County employees working closely with Plaintiff.  (Doc. 27-20, p. 1).  On the other hand, Plaintiff testified that she had no set work schedule and would come in and work until the job was done, throughout her tenure with Hale County.  (Doc. 30-1, p. 13:15–20).  Judge Avery also offered a declaration supporting Plaintiff's work schedule position.  (Doc. 35-5, p. 1).

Second, Judge Crawford stated that he received reports from Russell Weeden, the Hale County Emergency Management Director, that Plaintiff made threats to cut Weeden's budget if he did not add Plaintiff as a line item in his budget.  (Doc. 27-20, p. 2).  But Plaintiff denied this accusation in her deposition.  (Doc. 35-2, p.

44:13–16). Third, Judge Crawford declared that Plaintiff was responsible for managing and directing Hale County contracts. (Doc. 27-20, p. 2). Judge Crawford believed that, based on information he possessed, Plaintiff failed to meet legal requirements pertaining to said contracts on several occasions. *Id.* Plaintiff, however, testified that the Commission Chairman was the one responsible for the contract duties. (Doc. 35-2, p. 39:2–23). Fourth, Judge Crawford received reports from other Hale County employees that Plaintiff dressed in an unprofessional manner while at work. *Id.* But at least two employees testified that Hale County had no set dress code. (Doc. 35-8, p. 7:8–10; Doc. 35-9, p. 6:13–15). Fifth, Judge Crawford declared that he believed Plaintiff regularly took unauthorized trips and then sought reimbursement from Hale County for said trips. *Id.* Conversely, Plaintiff testified that she either received prior approval for said trips or was accompanied by other commissioners, so she refutes whether her attendance was unauthorized. (Doc. 35-2, p. 76; Doc. 35-2, pp. 65:8–10, 68:16–20).

Commissioner Hamilton and Commissioner Anderson also offered their own reasons for voting to terminate Plaintiff's employment. (Doc. 27-14; Doc. 27-21). The majority of the reasons Commissioner Hamilton and Commissioner Anderson offered overlap with Judge Crawford's. To the extent they differ, the following is provided. First, Commissioner Hamilton felt that Plaintiff was rude and used profanity with him in 2011 when he asked Plaintiff to retrieve documentation regarding county contracts. (Doc. 27-14, p. 2). After the exchange, Commissioner Hamilton wrote Plaintiff a letter documenting the incident. *Id.* at 3. But Plaintiff

testified that she was unaware that the word she used with Commissioner Hamilton was profanity.  (Doc. 35-2, p. 37: 21–22).  Further, Plaintiff testified that she did not get upset with Commissioner Hamilton.  *Id.* at 36:11–13.  As to Commissioner Anderson, he stated that Plaintiff's employment with Lawrence County as its administrator while simultaneously working as Hale County's administrator led him to believe Plaintiff was not devoting sufficient time to her work in Hale County.  (Doc. 27-21, p. 2).  Plaintiff testified that she informed the Hale County Commission before she began working for Lawrence County as its administrator in February 2013, and the commissioners did not express a concern. (Doc. 27-2, p. 27:2–16).

After Plaintiff's termination, Judge Crawford spoke with Peggy King.  (Doc. 27-23, p. 14).  Thereafter, Peggy King attended a Lawrence County Commission meeting that Plaintiff attended as a Lawrence County employee.  Peggy King and Plaintiff were competing for the same full-time position with Lawrence County at that time.  (Doc. 35-2, p. 59:2–3).  Plaintiff testified that, during the public comments section of the meeting, Peggy King recommended that the Lawrence County Commission check with Judge Crawford about what Plaintiff did wrong in Hale County before hiring Plaintiff full-time.  (Doc. 35-2, p. 58:10–59:9).  Peggy King, however, testified that she did not remember the specifics of what Judge Crawford said about Plaintiff in their conversation beyond merely wanting a full-time administrator.  (Doc. 27-23, p. 2:11–15).

Plaintiff also testified that Judge Crawford spoke to Sonny Brasfield and

Mary Pon, employees with the Association of County Commissions of Alabama, before her termination. (Doc. 35-2, p. 57:5–9). Plaintiff attested that Judge Crawford repeated the statements contained within the disciplinary form to them and told the two that Plaintiff "did not do her job." (Doc. 35-2, p. 57:10–20). But during his testimony, Judge Crawford stated that he only called Sonny Brasfield and Mary Pon for legal advice regarding Plaintiff's contract with Hale County. (Doc. 27-8, pp. 16:15–77:20).

Since her termination, Hale County has not replaced Plaintiff. Instead, Plaintiff's duties were distributed between the existing clerks, Carol Robinson and Juanita Moore. (Doc. 27-8, p. 4:1–15; Doc. 27-9, pp. 2:20–11:15; Doc. 27-10, p. 3:7–10). Also, Hale County has not paid Plaintiff any additional monies under either the 2008 Contract or the 2012 Amendment since her termination.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, at *2 (11th Cir. 2011).  In reviewing whether a non-moving party has met its burden, the Court must draw all justifiable inferences in favor of the non-moving party.  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 – 99 (11th Cir. 1992) (citations omitted).  Thus the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## IV. DISCUSSION

## 1. Due Process Claims (Counts 1 & 7)

The Due Process Clause of the Fourteenth Amendment to the United States

Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In other words, if Plaintiff had a property interest in her employment as County Administrator, Defendants could not deprive her of it without due process.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  The Due Process Clause is enforced through 42 U.S.C. § 1983, which was enacted by Congress in order to enforce the Fourteenth Amendment.  *Conn v. Gabbert*, 526 U.S. 286, 290 (1990) ("Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights.")

**a. <u>Hale County Personnel Policy's Applicability to the Due Process Claim</u>**

Plaintiff contends that the language of the Policy constitutes an offer creating a unilateral contract under Alabama law.  (Doc. 29, p. 20).  She argues that she received a copy of the Policy and performed work for Hale County under the auspices of the Policy.  Thus, as a full-time employee under the Policy, she had a property interest in her employment.  Defendants counter that Plaintiff has no protectable property interest in her employment by way of the Policy.  (Doc. 33, p. 17).  Specifically, either the 2008 Contract or 2012 Amendment "was clear, unequivocal[,] and finite" and contains a termination provision, which, presumably, excludes application of the Policy.  *Id.* at 18.  Additionally, Defendants propound that Plaintiff conceded the Policy was inapplicable to her.  *Id.* at 19.

Property interests are "not created by the Constitution."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  "Rather they are created and their dimensions are

defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* And for the purposes of § 1983, "State law defines the parameters of a plaintiff's property interest …. 'Whether state law has created a property interest is a legal question for the court to decide.'" *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir. 1991) (quoting *Marine One, Inc. v. Manatee Cnty.*, 877 F.2d 892, 894 (11th Cir. 1989), *rehearing denied*, 898 F.2d 1490 (11th Cir. 1990)).

Discussing employment status within this state, the Alabama Supreme Court reasoned, in relevant part:

> It has long been the law in Alabama that employment is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. "[A]bsent an agreement on a definite term, any employment is considered to be 'at-will,' and may be terminated by either party, with or without cause or justification." *Clark v. America's First Credit Union*, 585 So. 2d 1367, 1369 (1991). Furthermore, employees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than 'at will.' The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied. *Alabama Mills, Inc. v. Smith*, 237 Ala. 296, 301 (1939).

*Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 310–11 (Ala. 1992), *cert. denied*, 507 U.S. 1031 (1993).

The Alabama Supreme Court explained that a plaintiff must demonstrate three elements to show employment is other than at will:

> (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the

contract separate from the services to be rendered.

*Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987) (citations omitted).

Evaluating whether a personnel policy can create a property interest in employment, the *Hoffman-La Roche* Court continued:

> we see no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so. Such a performance clearly provides any consideration necessary to the contract. The fact that the promise is communicated to the employee through the medium of a handbook, rather than by some other means, is simply of no consequence.
>
> …
>
> In summary, we find that the language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration.

*Hoffman-La Roche*, 512 So. 2d at 734–35.

Here, the Policy begins with the following recitals:

> Whereas: The Hale County Commission desires to provide quality services to the citizens of Hale County; and
>
> Whereas: the Commission is dedicated to providing equal opportunity for employment to all qualified applicants and fair treatment for all employees; and
>
> Whereas: the Commission believes that continuance of employment with the County should be based on satisfactory performance of duties;

13

Now, THEREFORE, BE IT RESOLVED that the County Commission of Hale County does hereby adopt and proclaim the following personnel policies:

(Doc. 27-5, p. 3).  The Policy continues:

The County will develop a description of each job/position in the County services, with a list of representative tasks normally assigned to or associated with the job/position.

(Doc. 27-5, p. 4, Section II, Conditions of Employment, ¶ A).

Each employee will be given a copy of his/her job description and an Employee Handbook, outlining all rules, regulations, policies, conditions, and benefits of County Employee employment.  Both employee and management/supervisory staff will be required to know and productively implement all provisions and conditions of employment.

(Doc. 27-5, p. 4, Section II, ¶ D).

All employees have the right to discuss any and all matters relating to their employment and/or their personal welfare with their supervisors.  They may communicate with their supervisors, either orally or in writing, and may be accompanied by representation of their choice.  When disagreement over the solution of a problem cannot be resolved, *permanent employees shall have access, through the grievance procedure*, to successively higher levels of management.  Management/supervisory personnel will produce resolution of problems and grievances, attempting to always ensure *every permanent employee the right to due process under the grievance procedure*.

(Doc. 27-5, p. 4, Section II, ¶ F) (emphasis supplied).

The County believes that the goal of productivity in county employment will be served by establishing a *probationary period* for new employees during which each employee is oriented to all the conditions and requirements of county work and during which his/her performance is closely supervised and monitored to assure the attainment of the minimum performance requirements for the job/position.  Probationary employees shall share in all the benefits of employment with the county except that *dismissals for cause during*

14

*the probationary period shall not be grievable.*

(Doc. 27-5, p. 5, Section II, ¶ I) (emphasis supplied).

>All new employees are required to serve a satisfactory three-months' probationary period *before attaining permanent status in the county service.* During this time, formal evaluations of the probationary employee's work will be conducted at regular intervals, but no less that (sic) three (3) times during the probationary period. Probationary employees who cannot meet the standards of their departments will be counseled and given the opportunity to improve in the areas of their deficiency(ies). Probationary employees shall enjoy all the rights, benefits and privileges of county employment, except that they do not have the right of access to the grievance procedure. Probationary employees' claim of discrimination is handled exactly as any other claim of discrimination.

(Doc. 27-5, p. 17, Section XII, Probationary Period).

In regards to employee violations, the Policy outlines the following

"Disciplinary Actions":

>Employees are expected to attend work regularly, arriving in (sic) time and spending the assigned time in productive work efforts. They are also expected to deal honestly, fairly and effectively with the County's resources and citizens. *When employees cannot or will not conform to the Personnel Rules and Regulations as outlined herein, they may be disciplined in the following ways*:
>
>1. <u>Verbal Reprimand:</u> a notification of which will be placed in the personnel file;
>
>2. <u>Written Reprimand:</u> a copy will be placed in the personnel file. The employee will also be given a copy of the written reprimand.
>
>3. <u>Suspension:</u> for up to ten (10) consecutive working days. Suspension of an aggregate of twenty-five (25) days in any calendar year (dating from the first suspension) will result in termination. Suspensions are without pay.
>
>4. <u>Demotion and Reduction of Pay:</u>

15

   5.  <u>Transfer:</u>

   6.  <u>Termination:</u>

   Steps 4, 5 and 6 shall be only with the concurrence of the County
   Engineer.  An appeal can be made following the steps in [the]
   grievance procedure.

(Doc. 27-5, p. 11) (emphasis supplied).

The Policy also sets out a four-step grievance procedure employees may utilize after completing the three-month probationary period. *See* (Doc. 27-5, pp. 9–10, Section VI, Grievance Procedure).  A non-probationary employee may first discuss the incident with an immediate supervisor (Step One).  Then the employee may file a written complaint with the department head (Step Two).  Next, the employee may request that the Personnel Officer notify the Personnel Review Board of a desire to appeal the Step Two decision.  The Board should meet within ten (10) days and hear the grievance (Step Three).  The Personnel Review Board shall submit a recommendation in writing to the County Commission and the County Commission may affirm, modify, or reject the recommendation (Step Four).

Plaintiff contends that she received and signed a copy of the Policy when she began employment.  (Doc. 30-1, p. 25:2–5).  Defendants do not dispute this point.  Further, there is no dispute that Plaintiff continued to work as the Hale County Administrator after receiving the policy even though she could resign.  This supplied the necessary consideration.  *Hoffman-La Roche*, 512 So. 2d at 735.

Therefore, the issue remains whether the language within the Policy was "specific enough to constitute an offer rather than a mere general statement of

policy." *Id.* Addressing the same Hale County Personnel Policy, this Court recently

found the same language specific enough to constitute an offer.  In *Langford v. Hale*

*County Commission*, this Court reasoned, in relevant part:

> The introductory paragraphs to the Policy Statements specifically state
> that the Commission is dedicated to providing "fair treatment for all
> employees" and that "continuance of employment with the County
> should be based on satisfactory performance of duties" as part of the
> underpinnings of the Policy.  (Doc. 31-3, p. 5)  The policy contained no
> disclaimers or reservations to deviate from [t]he policy provisions
> therein.  *Cf. Harper v. Winston County*, 892 So. 2d 346, 351–352 (Ala.
> 2004) (finding that the introduction to the handbook "repeatedly
> states" that it is a "guide" for employees and the statement that
> conditions "may vary slightly with the occasion as all problems vary"
> was sufficient to be "express disclaimers reserving to the County the
> right to deviate from the policies stated in the handbook" and thus did
> not create an employment contract).
>
> Importantly, the Personnel Policy clearly refers to employees, after a
> probationary period, as permanent employees.  (Doc. 31-3, p. 19, XII
> Probationary Period) ("All new employees are required to serve a
> satisfactory three-months' probationary period before attaining
> permanent status in the county service.")
>
> Moreover, the Eleventh Circuit has explained that "the existence of
> procedural protections can–at least in the absence of circumstances
> indicating the contrary–suggest the existence of substantive
> restrictions on the employer's discretion to discharge."  *Green v. City of*
> *Hamilton, Housing Authority*, 927 F.2d 1561, 1566 n.2 (11th Cir. 1991).
> In regard to substantive restrictions, the Personnel Rules and
> Regulations set out a hierarchy of disciplinary actions and a list of
> actions that are grounds for disciplinary action.  (Doc. 31-3, p. 13–14)
> The Personnel Rules and Regulations provide that demotion and
> reduction in pay, transfer and termination "shall be only with the
> concurrence of the County Engineer" and that an appeal can be made
> by way of the Grievance Procedure.  (Doc. 31-2, p. 13)  In the end, "if
> the employer does not wish the policies contained in an employee
> handbook to be construed as an offer for unilateral contract, he is free
> to so state in the handbook."  *Hoffman-La Roche*, 512 So. 2d at 734.
> Hale County Commission failed to do so.

14-cv-00070, Doc. 56 at pp. 18–19.  The Court sees no reason to deviate from the

above analysis.

Furthermore, the Court finds unpersuasive Defendants' contention that the "finite" status of either the 2008 Contract or 2012 Amendment or the mere existence of a contract prevents Plaintiff from satisfying *Hoffman-La Roche*.  Either contract specified a definite period of time wherein Plaintiff would be employed by Hale County.  Indeed, this identifies the "particular term, length, or duration of employment" necessary to move the needle from the default position of at will employment.  *Bates v. Jim Walter Resources, Inc.*, 418 So. 2d 903, 905 (Ala. 1982).

But assuming arguendo either the 2008 Contract or 2012 Amendment has a bearing on the applicability of the Policy, neither one explicitly disclaims application of the Policy, in the termination provision or otherwise.  Instead, both make reference to the Policy in at least one similar manner: shortcomings by Plaintiff are addressed and remedied "in accordance with County's disciplinary procedures."  (Doc. 27-3, pp. 17, 22).  Defendants offer no evidence that the "disciplinary procedures" either contract speaks to are anything other than those described in the Policy.  The disciplinary form Defendants provided Plaintiff supports this position.  *Compare* (Doc. 27-8, p. 21) *with* (Doc. 27-5, p. 11). Therefore, it strains reason to think that the entire Policy is inapplicable or the disciplinary procedures outlined in the Policy would apply but the rest of the Policy is inapplicable.

Further, assuming arguendo the 2012 Amendment is valid, it outlines that Plaintiff is "entitled to *all rights, privileges and benefits* that County employees

have *including but not limited to* any hospital, surgical, dental and/or any other medical benefit, under the benefit plan for other county employees." (Doc. 27-3, p. 22) (emphasis supplied). Defendant insists that this clause is limited to those benefits of and relating medical care. (Doc. 33, p. 21). This argument, however, fails to consider that any conflicts between either contract and the Policy or ambiguities therein "are construed in favor of the nondrafting party": Plaintiff. *Anderson v. McAllister Towing and Transp. Co., Inc.*, 17 F. Supp. 2d 1280, 1288 (S.D. Ala. 1998). Thus, such a limited evaluation of the 2012 Amendment is improper given that the benefits section is not limited medical benefits by its own terms.

Defendants also argue that Plaintiff concedes the Policy does not apply to her. The Court disagrees with this argument. To begin with, "[i]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation." *Harbison v. Strickland*, 900 So. 2d 385, 391 (Ala. 2004) (citation omitted). "Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach." *Id.* (citation omitted). Therefore, it is the terms of the Policy that determines its applicability to Plaintiff, not the subjective opinion of Plaintiff.

A review of the Policy shows it does not identify employees that were and were not subject to the Policy. For instance, "[a]ll employees" who reach permanent status have access to the grievance process. (Doc. 27-5, p. 4). And "[e]ach employee" will be provided with a copy of the Policy, "outlining all rules,

regulations, policies, conditions, and benefits of County Employee employment." *Id.*
Nothing in the Policy differentiated between contract and non-contract employee
application. "Had the Hale County Commission intended to exclude all [contract]
employees from the Personnel Rules and Regulations it could have done so."
*Langford*, 14-cv-00070, Doc. 56 at 19. Upon consideration of the foregoing, Plaintiff
has a protected property interest in her employment by way of the Policy.
*Mackenzie*, 920 F.2d at 1559 ("Whether state law has created a property interest is
a legal question for the court to decide.") Having established Plaintiff had a
property interest in her employment, the Court must evaluate what, if any, process
was due before her termination.

**b. Procedure Provided by Hale County to Plaintiff**

"[O]nce it is determined that the Due Process Clause applies, 'the question
remains what process is due.'" *Loudermill*, 470 U.S. at 541 (citing *Morrissey v.
Brewer*, 408 U.S. 471, 481 (1972)). In *Mathews v. Eldridge*, 424 U.S. 319 (176), the
Supreme Court set out the test courts must use to determine the scope of procedural
protections required by the Constitution. The Court held that the reviewing court
must weigh the following three things:

> [f]irst, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that additional or substitute procedural
> requirements would entail.

*Id.* at 335. After balancing these factors, the *Loudermill* Court concluded due

process provides a public employee possessing a property interest in her

employment the following prior to termination:

> The essential requirements of due process … are notice and an
> opportunity to respond.  The opportunity to present reasons, either in
> person or in writing, why the proposed action should not be taken is a
> fundamental due process requirement….  The tenured public employee
> is entitled to oral or written notice of the charges against him, an
> explanation of the employer's evidence, and an opportunity to present
> his side of the story.

*Loudermill*, 470 U.S. at 546 (citation omitted).  More simply, "[t]he importance of [a]

[public employee's] property interest makes it necessary to provide some sort of

pretermination hearing, which includes notice and an opportunity to be heard."

*Harrison v. Willie*, 132 F.3d 679, 684 (11th Cir. 1998).  The above makes clear that a

plaintiff is not due a full evidentiary hearing.  Instead, a plaintiff is due a hearing

that serves as "an initial check against mistaken decisions—essentially, a

determination of whether there are reasonable grounds to believe that the charges

against the employee are true and support the purposed action."  *Loudermill*, 470

U.S. at 545–46.  Having established that Plaintiff was due notice of her work

discrepancies and an opportunity to be heard, it is necessary to establish whether

the undisputed facts show Defendants provided such procedure.

Plaintiff contends she is due summary judgment on her due process claim

within Count 1 because "she was ambushed" by what transpired in the executive

session and general session on June 18, 2013, which provided neither notice nor a

real opportunity to respond.  (Doc. 29, p. 25)  No one knew what Judge Crawford

planned and the agenda does not reflect that an executive session would be

conducted discussing her work performance or a general session motion to terminate her employment would be made. *Id.* Defendants respond that Plaintiff "[u]nquestionably … was confronted with the charges against her" and was provided an opportunity to respond "but merely said: 'No comment.'" (Doc. 39, p. 2). In other words, Defendant's position is that the contemporaneous notice Plaintiff received at the commission meeting and whatever opportunity she was provided to respond is sufficient to satisfy due process.

The Court has searched for an Eleventh Circuit case addressing whether contemporaneous notice satisfies due process in a public employment situation but has not found one, and the parties do not offer one. However, the Seventh Circuit has addressed the issue. Whether contemporaneous notice satisfies due process depends "on what has taken place before the hearing, on the nature of the violation the employee is charged with, and of the risk of error if the employee does not have some advance notice of the hearing." *Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998). In *Staples*, a physical altercation occurred between William Staples and Norman Currie while the two were at work. A couple of days later, Staples received notice to appear before a three-person panel regarding a different matter. To Staples surprise, the true purpose of the meeting was to address the altercation and his potential termination. Staples's request for a postponement to formulate a defense was denied. At that point the panel informed Staples they were recommending his employment be terminated, which was upheld by the City. On appeal, the Seventh Circuit framed the issue as "whether contemporaneous (rather

than advance) notice given during a hearing that was convened for an entirely different purpose satisfies the *Loudermill* requirement." *Id.* at 386. In finding the contemporaneous notice did not satisfy due process, the court reasoned that Staples was unaware of the purpose of the hearing he was notified about: "[h]e had no idea his job was on the line" until he was informed that he was being let go. *Id.* at 387. "*Loudermill* makes it clear that the summary procedures that are required prior to termination are for the purpose of guarding against erroneous deprivation." *Id.* Therefore, the surreptitious method of springing the termination on Staples did not satisfy due process. Reversing the district court's entry of summary judgment, the court cautioned, "'procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exception.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. at 344)).

Judge Crawford testified that Plaintiff was provided notice of the disciplinary action against her because "it was on the agenda." (Doc. 30-11, p. 12:8–9). If so, Plaintiff's notice would indeed be in advance of the meeting and not contemporaneous. In order to be in advance, the agenda would not only have had to make its way to Plaintiff but meet the content requirement of *Loudermill*. Undisputed facts show Hale County promulgates its meeting agenda in two ways: a copy is "posted [on] the bulletin board in the hallway of the county commission office and it is made available as the public comes into the courtroom for the general session." (Doc. 30-11, pp. 12:21–13:1). Beyond this, there is no evidence that Plaintiff was personally provided with a copy of the meeting agenda. But Plaintiff

was the County Administrator, so, drawing all inferences in Defendants' favor, it is hard to surmise that she was unaware of the agenda contents.

But if Plaintiff did see the agenda posting for the June 18, 2013 meeting, what would it have apprised her?  The agenda topic Defendants apparently rely on for supplying pretermination notice is made up of only three words: (1) Personnel; (2) Administrator; and (3) Attorney.  (Doc. 30-10, p. 2).  Nothing more is said regarding Plaintiff.  This topic is not even listed as a point of discussion during the executive session, which is where Defendants presented the reprimand which apparently lead to termination.  Even reading the facts in the light most favorable to Defendants, is such a superficial notice sufficient as a matter of law under the most liberal interpretation of *Loudermill*?  Surely not.  This brief reference to Plaintiff in the agenda provides no notice of the charges contained within the written reprimand, much less the opportunity to mount any type of defense.  Moreover, Plaintiff's presence at the meeting was for purposes aside from the one word that pertained to her.  She was there to record meeting minutes.  Thus, Plaintiff likely "had no idea that h[er] job was on the line until" Judge Crawford read the reprimand.  *Staples*, 142 F.3d at 387.

Even a reasonable inference does not support the proposition that Plaintiff's prior interactions provided her notice of what was to transpire on June 18.  The first prior interaction was a letter sent by Commissioner Hamilton to Plaintiff almost two years before her June 2013 termination.  (Doc. 27-12, p. 9).  The second was with Judge Crawford expressing concern about "not having an administrator in the

24

office." (Doc. 30-10, p. 6:16–19). The Court is mindful of its duty in evaluating the facts before it, but neither incident shows a genuine issue of material fact regarding notice. Instead, all evidence points to Plaintiff having no notice of the contents of the reprimand beforehand. *See* (Doc. 30-11, pp. 14:21–15:14; Doc. 30-12, p. 3:2–6; Doc. 30-7, p. 2). Given the gravity of the situation, Plaintiff was due more than contemporaneous notice of the issues her employer had with her performance. To allow less in such a situation exacerbates the risk of error in termination. Under these facts, Defendants have not shown that a genuine issue of fact regarding Plaintiff receiving the necessary notice exists.

But the notice inquiry does not decide this issue. Undisputed facts must also show Plaintiff was not afforded "some pretermination opportunity to respond." *Loudermill*, 470 U.S. at 542 (concluding a deprivation of property must be proceeded by "notice *and* opportunity for hearing") (emphasis supplied). Plaintiff insists that she was given no real opportunity to be heard. (Doc. 29, p. 25). She offers Judge Crawford's deposition testimony in support and concludes that she attempted to voice her position but was repeatedly told to "shut up." Therefore, "there is little reason to question why she remained quiet when [Judge] Crawford finally deigned to offer her an opportunity to speak." *Id.*

Undisputed facts show Plaintiff attempted to interject several times to plead her case while Judge Crawford read the reprimand but was refused the opportunity to talk. (Doc. 35-2, p. 52:1–2). But at least two witnesses support Defendants' position that Judge Crawford offered Plaintiff the opportunity to respond in the

25

executive session after he read the reprimand, but Plaintiff only replied, "no comment." (Doc. 30-11, p. 11:22; Doc. 30-13, p. 4:5–9). Plaintiff does not deny that she was offered some type opportunity to respond in the executive session. (Doc. 35-2, p. 52:17–23). "Affording an employee the opportunity to respond after being confronted with the charges is all that pretermination due process requires of the employer." *Harrison*, 132 F.3d at 684. And the fact that Plaintiff chose to remain silent, for whatever reason, does not offend the Fourteenth Amendment. *See id*. Additionally, the Fourteenth Amendment is not offended by the fact that Plaintiff was not provided the opportunity to respond in the general session that immediately followed the executive session. What is required is that an employee be afforded the opportunity at some point, however informal, to respond before termination. *See Ogburia v. Cleveland*, 380 F. App'x 927, 929 (11th Cir. 2010) (finding an employee's opportunity to be heard sufficient when he had several occasions to present his side leading up to the termination decision); *Harrison* 132 F.3d at 684 (same). Therefore, evaluating Plaintiff's claim in the light most favorable to the non-moving party, a genuine issue of whether Plaintiff was provided an opportunity to respond exists. Plaintiff's Motion for Summary Judgment on Count 1 is **DENIED**.

## c. Applicability of *McKinney* to Plaintiff's Due Process Claims

Notwithstanding the above analysis, Defendants argue summary judgment is due because Plaintiff's due process claims in Counts 1 and 7 (procedural and stigma plus) are precluded under *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1996) (en

banc), *cert. denied sub nom.*, *McKinney v. Osceola Cnty. Bd. of Cnty. Comm'rs.*, 513 U.S. 1110 (1995).  (Doc. 26, p. 17).  Plaintiff responds that her claims are not precluded because *McKinney* is inapplicable when an employee is denied any pretermination due process.  (Doc. 34, p. 39).  Additionally, Plaintiff contends that *McKinney* does not apply because the Hale County termination policy is itself unconstitutional.  *Id.* at 40.

In *McKinney*, the Eleventh Circuit held that a claim of bias in a pretermination hearing was a procedural due process claim—as opposed to a substantive due process claim since "the County failed to provide one of the elements of procedural due process—an unbiased decisionmaker."  20 F.3d at 1561. However, the *McKinney* Court went on to hold that the plaintiff in that case had not stated a procedural due process claim under § 1983 because state law provided an adequate remedy through the Florida court system.  *Id.* at 1563–64.  In reaching this conclusion, the court reasoned that "a procedural due process violation is not complete unless and until the State fails to provide due process."  *Id.* at 1557.  In other words, *McKinney* "recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in appropriate fora— agencies, review boards and state courts before being subject to a claim alleging a procedural due process violation."  *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).

Defendants contend that Alabama provides a remedy at law through its court system that precludes Plaintiff's due process claim under § 1983.  (Doc. 26, p. 18).

Indeed, the Eleventh Circuit extended *McKinney* to employment cases in Alabama because Alabama courts "review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Bell v. City of Demopolis, Ala.*, 86 F.3d 191, 192 (11th Cir. 1996) (citing *Ex parte Tuskegee*, 447 So. 2d 713 (Ala. 1984)). Alabama allows a claimant to file a common law writ of certiorari to seek review of a perceived wrongful termination because of a due process violation. *See Hicks v. Jackson Cnty. Comm'n*, 990 So. 2d 904, 912 (Ala. Civ. App. 2008). Given this, Defendants contend that Plaintiff's due process claims are improper unless and until Alabama denies her access to such relief at the state level.

However, the fault in Defendants' reasoning lies in the law explained in the preceding section. *Loudermill* requires a public employee possessing a property interest in her employment "be given an opportunity for a hearing *before* [s]he is deprived of any significant property interest" because "the significance of the private interest in retaining employment cannot be gainsaid." 470 U.S. at 542–43 (citation omitted) (emphasis in original). This pretermination hearing "includes [both] notice and an opportunity to be heard." *Harrison*, 132 F.3d at 684. And "[t]ermination without *any* pre-termination hearing is an independent violation of due process." *Haddler v. Walker Cnty., Ala.*, 2014 WL 2465322, at *5 (N.D. Ala. May 30, 2014) (citing *Loudermill*, 470 U.S. at 542) (emphasis in original); *see also Enterprise Fire Fighters' Ass'n v. Watson*, 869 F. Supp. 1532, 1539 (M.D. Ala. 1994). "If the rule were otherwise, a public employee's right to a pretermination hearing as

explicated in *Loudermill* would be chimerical and ultimately meaningless because it could be 'cured' in each instance simply by providing a hearing after termination." *Watson*, 869 F. Supp. at 1539.

Moreover, a review of *McKinney* and *Bell* supports Plaintiff's contention that neither case applies.  To be sure, the plaintiff in *McKinney* was afforded notice of the charges against him and a three-day trial to present his case and confront his accusers.  When his employment was terminated, he brought a due process claim not on the procedure under which he was terminated but on the alleged bias of the decision maker.  *McKinney*, 20 F.3d at 1561.  Therefore, he did not contest the sufficiency of the review system in question but that the review system was applied in a deficient manner.  Likewise, in *Bell*, the plaintiff alleged that the committee that reviewed his termination was biased, which meant that the plaintiff was bringing an "as applied" challenge rather than a challenge to the sufficiency of the review procedures.  *Bell* 86 F.3d at 192.

Ultimately, the plaintiffs' due process claim in *McKinney* and *Bell* failed because each received all the process they were due.  They were both provided, prior to termination, notice of the charges against them and an opportunity to be heard on those charges.  Therefore, a state court was the proper forum to entertain their "as applied" challenge.  This stands in contravention to a plaintiff's challenge based on a denial of any pretermination hearing.  *See Harrison*, 132 F.3d 679, 683–84 (considering whether the plaintiff was denied a pretermination hearing); *McCoy v. Ala. Dep't of Corrs.*, 427 F. App'x 739, 741 (11th Cir. 2011) (discussing a state

employee's pretermination due process); *Ogburia v. Cleveland*, 380 F. App'x 927, 929–30 (11th Cir. 2010) (discussing pretermination due process separately from whether a plaintiff had an adequate state remedy for his claim of post termination due process).  And also stands in contravention to a plaintiff that challenges the constitutionality of the review system in question.  *Peacock v. City of Elba*, 1997 WL 1068632, at *5 (M.D. Ala. Mar. 27, 1997) (finding *McKinney* did not foreclose a due process claim when the plaintiff contends the policy under which he is terminated is unconstitutional); *Watson*, 869 F. Supp. at 1541 (same); *see also Lumpkin v. City of Lafayette*, 24 F. Supp. 2d 1259, 1265 (M.D. Ala. 1998) (finding a public safety director failed to state a due process violation because he did not contest that the city terminated his employment under an unconstitutional policy but that the city ignored the established procedure in an "as applied" challenge).  More simply, either a complete lack of a pretermination hearing or a constitutional attack on the policy itself would not be barred by *McKinney* and *Bell*.

Here, Plaintiff does assert that she was terminated by a biased decisionmaker, which is an "as applied" claim.  (Doc. 1, p. 8).  But she goes further and also asserts that she was afforded no pretermination hearing and that the Policy permitted her termination in this manner.  (Doc. 1, p. 8; Doc. 34, p. 40).  Therefore, she challenges the complete absence of a pretermination hearing and the constitutionality of the Policy, not simply how the policy was applied to her in a deficient manner.  To be sure, Plaintiff asserts she was unaware that her job was on the line during the June 18, 2013 meeting before Judge Crawford began reading the

reprimand form.  And viewing the facts in Plaintiff's favor for the immediate analysis, Plaintiff testified that she tried to respond but was told to not talk.  (Doc. 35-2, p. 50, l. 10).  Therefore, for the purposes of Defendants' motion, Plaintiff was afforded no pretermination hearing.  Additionally, Plaintiff takes the Policy to task as unconstitutional.  The Policy's language shows that it permitted Plaintiff's termination without notice or an opportunity to respond.  (Doc. 35-4, p. 12).  The only actions required prior to termination was the "concurrence of the County Engineer."  *Id.*  Thus, *McKinney* and *Bell* do not prevent Plaintiff's due process claims from moving forward.

Notwithstanding the above, Defendants insist Plaintiff's termination is the result of either "negligent or intentional conduct by a government official," which renders any pretermination hearing impracticable.  (Doc. 39, p. 3).  Defendants contend, according to *Parratt v. Taylor*, 451 U.S. 527 (1981), and *National Association of Boards of Pharmacy v. Board of Regents of the University System of Georgia*, 633 F.3d 1297 (11th Cir. 2011), no due process violation occurs when a pretermination hearing is impracticable.

Evaluating *Parratt*, the Eleventh Circuit explained, "Predeprivation due process is impracticable where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, because the state cannot know when such deprivation will occur."  *Nat'l Assoc. of Bds. of Pharmacy*, 633 F.3d at 1317.  This Court echoed this sentiment in an earlier order by making clear that a complete lack of predeprivation due process

is not always an actionable procedural due process claim.  *See* (Doc. 16, p. 11).  The instant matter, however, is distinguishable from *Parratt* and *National Association of Boards of Pharmacy* in several respects.

First, as explained above, the interest in question often dictates the extent of predeprivation due process required.  *See Mathews*, 424 U.S. at 335.  In *Parratt*, the Supreme Court evaluated the extent of process due regarding $23.50 worth of hobby materials being mailed to a prisoner.  In *National Association of Boards of Pharmacy*, the Eleventh Circuit evaluated a copyright infringement claim based on a professor's use of copyrighted questions in a pharmaceutical licensing review course.  In both cases, no predeprivation due process could be had or should be had given the interest in question.

But here, the property interest in question is a "private interest in retaining employment[, which] cannot be gainsaid."  *Loudermill*, 470 U.S. at 543.  Thus, some level of predeprivation due process is required, and the Court cannot indulge in the legal legerdemain necessary to reach the conclusion that a pretermination hearing in this case would be a practical impossibility commensurate with a predeprivation hearing regarding a negligent prison employee's loss of hobby supplies (*Parratt*) or a predeprivation hearing to address a professor's intentional copyright infringement of test questions (*National Association of Boards of Pharmacy*).  "It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation" in either case.  *Parratt*, 451 U.S. at 541.  A pretermination hearing for a public employee who possesses a property interest in her employment, however, is

another matter.

Second, in both *Parratt* and *National Association of Boards of Pharmacy*, there was not a procedure that allowed the officials to deprive a person of their property. Defendants attempt to align their position to these cases by arguing, "Plaintiff is not alleging any state-sanctioned procedure in violation of her due process rights. Instead, it appears that Plaintiff is attempting to proceed on a theory that Defendants intentionally failed to provide her with a pretermination hearing." (Doc. 39, p. 5).[2] This argument gives short shrift to Plaintiff's complaint, (Doc. 1, p. 8), and Plaintiff's response, (Doc. 34, p. 40), wherein Plaintiff clearly takes Defendants to task for operating under an unconstitutional policy. In other words, the very fact that the Policy allowed Defendants to intentionally terminate her with only concurrence of the County Engineer is what, Plaintiff claims, caused the due process violation.[3] The Policy differentiates this case from *Parratt* and *National Association of Boards of Pharmacy*.

But assuming arguendo Defendants acted contrary to a policy that Plaintiff did not dispute, a pretermination hearing was still practicable. "[W]here 'the depriving actions were taken by a high-ranking official having final authority over

---

[2] To any extent Defendants contend Hale County's policy is an insufficient basis for a due process claim because it was not promulgated by the State of Alabama, this contention is without merit. *See McKinney*, 20 F.3d at 1554 (applying due process analysis to actions of board of county commissioners pursuant to county personnel policies); *Fetner v. City of Roanoke*, 813 F.2d 1183, 1185 (11th Cir. 1987) (applying the same to a city council).

[3] Defendants' assertion that any pretermination process would be impracticable because Plaintiff concedes the Policy did not apply to her is unavailing. *See* (Doc. 26, p. 19). As established in § 1(a) *supra*, Plaintiff cannot opine on this matter.

the decision making process' they cannot be construed as 'random and unauthorized.'" *Cifarelli v. Vill. of Babylon*, 894 F. Supp. 614, 620 (E.D.N.Y. 1995) (quoting *Dwyer v. Regan*, 777 F.2d 825, 832 (2d Cir. 1985)). Such actions are foreseeable. Indeed, the Hale County Commission is the "high-ranking" body that has the final decisionmaking authority for Hale County in regards to employee terminations. *See* (Doc. 35-4, p. 11). Judge Crawford is the Chairman of the Hale County Commission. "As such, the depriving action was foreseeable and created a circumstance in which predeprivation process is typically necessary." *Cifarelli*, 894 F. Supp. at 620. *Parratt* and *McKinney*, therefore, do not, as a matter of law, foreclose Plaintiff's due process claims. *See Peacock v. City of Elba*, 1997 WL 1068632, at *5 (M.D. Ala. Mar. 27, 1997). Defendants' Motion for Summary Judgment on Counts 1 and 7 is **DENIED**.

## 2. <u>Qualified Immunity for Judge Crawford</u>

Plaintiff also brought suit against Judge Crawford in his individual capacity in Count 1.[4] Judge Crawford contends he is protected from suit by qualified immunity. (Doc. 23, p. 30). Discussing the appropriate analysis for qualified immunity, the Eleventh Circuit concluded:

> In order to receive qualified immunity, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)). If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity....

---

[4] Count 1 was previously dismissed against Judge Crawford in his official capacity. (Doc. 18).

> Once the defendant establishes that he was acting within his
> discretionary authority, the burden shifts to the plaintiff to show that
> qualified immunity is not appropriate. *See id.* The Supreme Court
> recently set forth a two-part test for evaluating a claim of qualified
> immunity. As a "threshold question," a court must ask, "[t]aken in the
> light most favorable to the party asserting the injury, do the facts
> alleged show the officer's conduct violated a constitutional right?"
> *Saucier v. Katz*, 533 U.S. 194, 201 (2001)[, *abrogated on other grounds*,
> *Pearson v. Callahan*, 129 S. Ct. 808 (2009).] If a constitutional right
> would have been violated under the plaintiff's version of the facts, the
> court must then determine "whether the right was clearly established."
> *Id.* This second inquiry "must be undertaken in light of the specific
> context of the case, not as a broad general proposition." *Id*; *see also*
> *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1031–33 (11th Cir. 2001) (en
> banc).

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The Supreme Court has sense

articulated that a claim of qualified immunity that can be decided on the "clearly

established" prong alone should rightfully be so decided. *Pearson v. Callahan*, 555

U.S. 223, 236 (2009).

Plaintiff concedes for the purposes of this Order that Judge Crawford was

acting within the scope of his discretionary authority. (Doc. 29, p. 27). Therefore,

the only question is whether Plaintiff's facts establish a violation of a constitutional

right that was clearly established.

Here, Plaintiff avers that *Loudermill* clearly established that a public

employee with a property interest in her employment must be provided notice and

an opportunity to be heard prior to termination. (Doc. 29, p. 27). Therefore, Judge

Crawford is not due qualified immunity based on his own admissions. *Id.* However,

the Supreme Court has declared that the test of "clearly established" law cannot

apply at a high level of generality; instead, to deny qualified immunity, "the right

the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 596 (11th Cir. 1997) ("The law which must be clearly established is that governing the specific factual situation confronting the government official in the particular case.")  "Also, the conduct of a government official is judged against the law and facts at the time the defendant acted, not by hindsight based on later events." *Harris*, 105 F.3d at 596.

As Defendants contend, although *Loudermill* established a due process right to notice and a hearing, Plaintiff offered no relevant caselaw clearly establishing that "a due process violation occurred where a public employee had a contract with terms such as those as the contract in this case, where a hearing [with contemporaneous notice] was held, and where there was a vote to terminate employment." (Doc. 33, p. 25).[5]  Indeed, Plaintiff has not shown how a relevant court has "define[d] the clearly established right at issue on the basis of the specific context of th[is] case." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Moreover, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*,

---

[5] "[O]nly the caselaw of the Supreme Court, the Eleventh Circuit, or the law of the highest court of the state where the events took place … can 'clearly establish' constitutional rights." *Amnesty Int'l USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009).

132 S. Ct. 1235, 1245 (2012)) (citation omitted).  It was objectively reasonable for Judge Crawford to believe that the notice provided, however contemporaneous, and opportunity to respond offered did not violate due process in light of *McKinney*.  In other words, a reasonable county commissioner could not be said to have had "fair warning" that Plaintiff's termination violated due process in light of the state afforded post termination remedies.  *See Tolan*, 134 S. Ct. at 1866 (stating that "the salient question … is whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged [conduct] was unconstitutional") (citation omitted).  Judge Crawford is due qualified immunity in his individual capacity on Plaintiff's Count 1.[6]

### 3. Title VII and Equal Protection Claims (Counts 2 & 3)

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1). The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny any person within its jurisdiction the equal protection of the law."  U.S. Const. amend. XIV, § 1.  The mandate of the Equal Protection Clause essentially is "that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Equal Protection

---

[6] Plaintiff only argued against qualified immunity in regards to Judge Crawford as it relates to the procedural due process claim in Count 1.  Defendants only respond as to qualified immunity for Count 1.  Therefore, the Court only decides the qualified immunity issue for Count 1.

Clause is enforced through 42 U.S.C. § 1983, which was enacted by Congress in order to enforce the Fourteenth Amendment. *Conn v. Gabbert*, 526 U.S. 286, 290 (1990) ("Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights.") A Title VII and § 1983 Equal Protection claim have the same elements where the claims are based on the same set of facts. *Crawfrod v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "Since the legal standards governing each of these categories of claims are the same, it is therefore unnecessary to evaluate [Plaintiff's] causes of action separately." *Hossain v. Steadman*, 855 F. Supp. 2d 1307, 1312–13 (S.D. Ala. 2012).

A plaintiff may prove discrimination by relying on direct, circumstantial, or statistical evidence. *See Walker v. Nationsbank of Florida, N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). Direct evidence is evidence, which, "if believed, proves the existence of discriminatory motive 'without inference or presumption.'" *Hamilton v. Montgomery Cnty. Bd. of Educ.*, 122 F. Supp. 2d 1273, 1279 (M.D. Ala. 2000) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)). Plaintiff offers no direct evidence of racial discrimination in regards to her termination. Neither has she attempted to show discrimination through statistical evidence.

Here, Plaintiff relies on circumstantial evidence to survive summary judgment. (Doc. 34, p. 42). A plaintiff's attempt to demonstrate racial discrimination based on circumstantial evidence triggers the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).  Under *McDonnell Douglas*, a plaintiff raises an inference of racial discrimination by establishing a prima facie case.  A plaintiff establishes a prima facie case by pointing to evidence that shows (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was discharged from that position; and (4) she was replaced by a person outside of her protected class.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  A plaintiff's demonstration of these prima facie elements creates a presumption of discrimination and shifts the burden to the defendant to show that the plaintiff's termination was based on a "legitimate, non-discriminatory reason."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  A defendant's demonstration of a "legitimate, non-discriminatory reason" shifts the burden back to the plaintiff to show that the proffered justifications were merely pretextual, with the ultimate burden of persuasion remaining at all times with the plaintiff to prove intentional discrimination.  *Id.* at 253.

In moving for summary judgment on Counts 2 and 3, Defendants rightfully do not belabor the first three elements.  In regards to the first element, "[d]iscrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim."  *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1002–03 (11th Cir. 2001), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008).  In other words, "all races are protected."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n.16 (11th Cir. 2011).  And rare is the case where the second and third element are not a given.  *Id.*  What Defendants

hang their hat on is that Plaintiff cannot satisfy the fourth element of *McDonnell Douglas* because Plaintiff "was not replaced at all." (Doc. 26, p. 21).

A review of Plaintiff's response and the record shows that Plaintiff has not produced any evidence that she was replaced by a person outside her protected class. Plaintiff cannot meet her prima facie burden without this showing. Therefore, Plaintiff failed to raise a presumption of discrimination and shift the burden to Defendants.

Plaintiff's failure to make out a prima facie case is dispositive of her racial discrimination claim under Title VII and § 1983 based on the Equal Protection Clause. *Hossain v. Steadman*, 855 F. Supp. 2d 1307, 1314 (S.D. Ala. 2012). But even if Plaintiff were able to point to evidence that she was replaced by a person outside her protected class, Defendants offered legitimate, nondiscriminatory reasons for terminating her employment. Defendants' burden in this regard is "exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (citation omitted). Thus, to comply with Title VII or § 1983 based on the Equal Protection Clause, Defendants "may fire an employee for good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). Courts "are not in the business of adjudging whether employment decisions are prudent or fair," but rather, their "sole concern is whether unlawful discriminatory animus motivates a challenged employment

decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Defendants propound that Judge Crawford, Commissioner Hamilton, and Commissioner Anderson had a common, legitimate reason to terminate Plaintiff: "They believed [Plaintiff] was frequently absent from work and not supervising and directing the County office employees." (Doc. 26, p. 21). Juanita Moore and Carol Robinson corroborated for the commission Plaintiff's absences. *Id.* Defendants contend that Plaintiff's deposition testimony supports this reason since she openly admits to only being in the office on Mondays and at the biweekly board meetings. Additionally, Defendants aver that Plaintiff cannot refute that Judge Crawford, Commissioner Hamilton, and Commissioner Anderson reasonably believed that Plaintiff failed "to keep minutes of the Commission meetings[,] t[ook] unapproved travel[,] fail[ed] to provide information in advance of meetings[,] curs[ed] Commissioner Hamilton during a conversation," and threatened other County employees. *Id.* at 22.

It was not only Plaintiff's duty to present a prima facie case under *McDonnell Douglas*, it was her duty to meet each of Defendants' offered reasons head on and show they were pretextual, not merely quarrel with their wisdom. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). She did not. Instead, Plaintiff attempts to circumvent the standard announced in *McDonnell Douglas* by providing facts she contends are circumstantial evidence establishing a pattern and practice of "systematic purging of high ranking white employees." (Doc. 34, p. 43).

Plaintiff's list, in its entirety, reads as follows:

> Plaintiff is white.
>
> Defendant Crawford and the majority of the Hale County Commission at the time of her termination were African-American.
>
> Prior to her termination, Plaintiff had performed all of her duties in a satisfactory manner.
>
> Prior to her termination, neither Defendant Crawford nor any member of the Hale County Commission complained to her about her job performance or the manner in which she performed her job.
>
> None of the reasons set forth by the Defendants in their Motion for Summary Judgment were given as reasons for [ ] Plaintiff's termination were presented to her prior … to the executive session on June 18, 2013.
>
> Following the election, Defendant Crawford and the Commission set about purging white employees including [ ] Plaintiff, the Chief Clerk of the Probate Court, and the County Attorney.
>
> The African-American members of the Commission, whom together with Defendant Crawford constituted the majority of the Commission – ratified and followed in lock-step with Defendant Crawford's actions regarding white employees.
>
> The County Attorney and the Chief Clerk were both replaced by African-American females.

*Id.*

Plaintiff insists that she survives summary judgment based on these facts because they demonstrate a triable issue concerning Defendants' discriminatory intent. (Doc. 34, p. 42). In support, Plaintiff cites *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011). In *Smith v. Lockheed-Martin Corp.*, the Eleventh Circuit concluded, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a

summary judgment motion in an employment discrimination case." 644 F.3d at 1328. "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* A plaintiff's record facts establish a triable issue when they create "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citation and footnote omitted). "An inference 'is not a suspicion or a guess,' but rather 'a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact.'" *Knight v. Fourteen D Enters., Inc.*, 995 F. Supp. 2d 1311, 1334 (S.D. Ala. 2014) (quoting *Smith*, 644 F.3d at 1329 n. 25).

The facts Plaintiff offers in an attempt to invoke *Smith* and avoid *McDonnell Douglas* are unpersuasive. To begin, Plaintiff puts a lot of stock in the alleged "systematic purging" of other high-ranking white employees. Specifically, as noted, she contends that the Caucasian County Attorney's and Caucasian Chief Probate Clerk's termination and replacement with African-Americans are circumstantial evidence of racial animus in her termination, even though there is no evidence she was replaced by an African-American. The Eleventh Circuit held in *Goldsmith v. Bagby Elevator Co., Inc.* that such "me too" evidence is admissible to prove intent of an employer to discriminate. 513 F.3d 1261, 1286 (11th Cir. 2008). However, a plaintiff's use of "me too" evidence is not a free for all; certain limitations apply. For instance, "me too" evidence is only relevant if it is attributable to a common decisionmaker. *See Bell v. Crowne Mgmt., LLC*, 844 F. Supp. 2d 1222, 1236 (S.D.

43

Ala. 2012).  Next, "me too" evidence is not relevant in every type of discrimination case, only in a pattern and practice claim.  *Brown v. Berg Spiral Pipe Corp.*, 2011 WL 3610646, at *14 (S.D. Ala. Aug. 17, 2011); *Lane v. Terry*, 2010 WL 2721896, at *17 (N.D. Ga. Jun. 4, 2010).

Turning to the complaint, Plaintiff does not allege wrongdoing by an unconnected third person.  The common decisionmaker in this case is the Hale County Commission.  Next, Plaintiff sprinkles throughout her complaint legal buzzwords giving the aroma of a pattern and practice claim, although not titled as such.  In Count 2, Plaintiff alleges, "Defendants engaged in a *pattern and practice* of removing white employees from their employment with Hale County while allowing similarly situated African-American employees to retain their jobs."  (Doc. 1, p. 9) (emphasis supplied).  In Count 3, Plaintiff continues, "Defendants engaged in a *practice of removing* white employees and replacing them with African-American employees."  *Id.* at 10 (emphasis supplied).  This language at least hints to a pattern and practice claim along with her disparate treatment claim. Plaintiff, however, is a private litigant.  A private litigant cannot maintain a pattern and practice claim unless it is brought as a class action and the class is ultimately certified.  *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 965 (11th Cir. 2008), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (20009), *and Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Mims v. Tenn. Valley Auth. Bd. of Directors*, 2014 WL 3689789, at *5 (N.D. Ala. Jul. 22, 2014) (finding a private plaintiff's claim of a racially discriminatory pattern and practice improper).  Since Plaintiff is a private

litigant, the pattern and practice claim would be improper.  Since the pattern and practice claim is improper, the "me too" evidence cannot be considered in establishing a triable issue of discrimination.

What is left of Plaintiff's factual allegations boils down to the following: (1) she is of a different race than a majority of the Hale County Commission; (2) she is of the opinion that she performed all of her job duties "in a satisfactory manner" prior to termination; and (3) she was unaware prior to the executive session on June 18, 2013, that the County Commission had the concerns it offered as justification for her termination.  *See* (Doc. 34, p. 43).  Even viewing these facts in the light most favorable to Plaintiff, they do not represent circumstantial evidence that creates a triable issue of discrimination.  If one's supervisor or the majority of one's supervisors being of a different race were circumstantial evidence of discrimination, a triable issue of discrimination would exist in nearly every racial discrimination claim under Title VII or the Equal Protection Clause based on § 1983.

Next, the fact that Plaintiff subjectively propounds that she performed her duties in a "satisfactory manner" has little bearing on how her employers viewed her work.  Plaintiff cannot create a triable issue of fact by "simply presenting sufficient evidence to allow a jury to find that it, or some hypothetical, objectively reasonable employer would have considered her actual work performance to be satisfactory in the areas of asserted deficiency."  *Curtis v. Teletech Customer Care Mgmt. (Telecomms.), Inc.*, 208 F. Supp. 2d 1231, 1245–46 (N.D. Ala. 2002).  To create a triable issue Plaintiff must offer sufficient proof that Defendants did not

believe her work performance was unsatisfactory.  *Id.*  Lastly, Plaintiff has not explained how a reasonable juror could equate being surprised with the reasons for termination as racial animus.  To say differently would be based on nothing more than a suspicion or guess, not a reasoned, logical decision.

Plaintiff's circumstantial evidence, therefore, is not comparable to the evidence presented by the plaintiff in *Smith*, which indicated a clear connection between the employer's actions and the employee's race.  *See Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 967 n. 1 (11th Cir. 2012) (observing that the employee in *Smith* "presented evidence that his employer was particularly concerned with race and all of the circumstantial evidence connected its employees' race to the employer's decision-making").  Consequently, Plaintiff has not presented a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination."  *Smith* 644 F.3d at 1328.  Defendants' Motion for Summary Judgment as to Counts 2 and 3 is **GRANTED**.

## 4. Age Discrimination Under 29 U.S.C. § 621 (Count 8)

The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, "prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age."  *Simms v. MVM, Inc.*, 704 F.3d 1327, 1331 (11th Cir. 2013).  Plaintiff's complaint lays out a claim of age discrimination in Count 8. (Doc. 1, p. 13).  Under § 623(a)(1), Plaintiff bears "the burden of persuasion to establish that age was the 'but-for' cause of employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  Thus, to prevail on an age

discrimination claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177–78.  Much like the preceding discussion on race discrimination, an age discrimination claim based on circumstantial evidence is evaluated under the *McDonnell Douglas* standard.  *Simms*, 704 F.3d at 1332.  Therefore, Plaintiff must make out a prima facie case of discrimination.  To make out a prima facie case of age discrimination, Plaintiff must demonstrate four things: (1) she was a member of the protected age group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by a younger individual.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

Defendants' argue summary judgment is due because Plaintiff failed to show she was replaced by a younger individual; therefore, she did not establish a prima facie case of age discrimination.  (Doc. 26, p. 22–23).  In opposing a motion for summary judgment, a party may not rely on her pleading to avoid judgment against her.  Grounds alleged in the complaint but not relied on in summary judgment are deemed abandoned.  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *see also Shamburger v. City of Mobile*, 2008 WL 2874363, at * 1 (S.D. Ala. July 23, 2008) (deeming abandoned claims asserted in a complaint but not argued in response to a motion for summary judgment).  Here, Plaintiff did not respond to Defendants' summary judgment motion on the age discrimination claim (Count 8); therefore, she has abandoned it.  Defendants' Motion for Summary

Judgment as to Count 8 is **GRANTED**.

## 5. Defamation (Count 6)

Plaintiff asserts a state law defamation claim based on various statements made by Judge Crawford.  (Doc. 1, p. 12).  Although the complaint does not expound on the defamatory statements, Plaintiff's answers to Defendants' interrogatories do. Judge Crawford's statements can be broken down into three categories: (1) his statements during the June 18, 2013 executive session; (2) his statements to Mary Pon and Sonny Brasfield on or about June 18, 2013; and (3) his statements to Peggy King around October 2013.  (Doc. 35-11, p. 4).  Defendants offer for each category a separate basis for summary judgment.

"To establish a prima facie case of defamation, the plaintiff must show (1) that the defendant was at least negligent, (2) in publishing (3) a false and defamatory statement to another (4) concerning the plaintiff, (5) which is either actionable without having to prove special harm (actionable per se) or actionable upon allegation and proof of special harm (actionable per quod)."  *Delta Health Group, Inc. v. Stafford*, 887 So. 2d 887, 895 (Ala. 2004) (citation omitted).  It has already been determined that Plaintiff is a public official for purposes of her defamation claim.  (Doc. 16, p. 24).  And Plaintiff concedes this point for the purposes of Defendants' motion. (Doc. 34, p. 44).  Therefore, Plaintiff must prove "by clear and convincing evidence that the defamatory statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d

306, 332–33 (Ala. 2007) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).[7]

a. **Statements Made During the June 18, 2013, Executive Session**

Defendants contend summary judgment is due for Judge Crawford's oral publication of the written reprimand's contents during the June 18, 2013, executive session. Defendants contend the statements are absolutely privileged by a legislative privilege and, therefore, an improper basis for defamation. (Doc. 26, p. 24). Plaintiff counters that "legislative immunity" is not due because Judge Crawford was not engaged in his "legislative function" when he read the reprimand form during the executive session. (Doc. 34, p. 44). Plaintiff insists that "legislative function" equates to "passing an ordinance/resolution." *Id.* at 45.

Addressing legislative privilege, the Alabama Supreme Court explained:

An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously, and is false. To make the defense of absolute privilege available, the communication must be made on a privileged occasion; the circumstances under which the defamatory language is used are the occasion, and it is the occasion that is privileged. The privilege is a matter of public policy, and is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the

---

[7] A more thorough analysis of the law that applies to Plaintiff's defamation claim is discussed in an earlier order. *See* (Doc. 16, pp. 21–25). But it is unnecessary to repeat it in its entirety given the bases upon which Defendants move for summary judgment.

recovery of damages.

*O'Barr v. Feist*, 296 So. 2d 152, 156 (Ala. 1974) (citation omitted).

"In order to promote the public welfare," members of a county commission are conferred this "absolute privilege from certain causes of action stemming from the performance of their legislative functions." *Butler v. Town of Argo*, 871 So. 2d 1, 23 (Ala. 2003). This absolute privilege must be available "for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." *Webster v. Byrd*, 494 So. 2d 31, 35 (Ala. 1986) (citation omitted). The "legislative privilege applies even when the defamatory communication is not related to matters of public or legislative concern." *Id.* But this privilege does not extend to "public discussion outside of a legislative function, such as explaining reasons for voting on legislation or engaging in activities only incidentally related to legislative affairs." *Id.* "[W]hether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court." *Walker v. Majors*, 496 So. 2d 726, 730 (Ala. 1986).

In support of their legislative privilege claim, Defendants cite to *Butler v. Town of Argo, supra.* The *Butler* Court held that statements made by a city council member during a city council meeting, which suggested various wrongdoings by a motorist and the mayor concerning the dismissal of the motorist's speeding ticket, were covered by a legislative privilege in the motorist's invasion of privacy and defamation claims. 871 So. 2d at 24–25. The court reasoned that the council

50

member's statements were made in conjunction with her recommendation to the city council that the mayor be asked to resign, or that the council begin an investigation.  *Id.*  Thus, the statements were made pursuant to the council member's performance of a legislative function.  *Id.*  The Court finds this factual scenario applicable.

The prior commission chair is the authority that signed the 2008 Contract and 2012 Amendment with Plaintiff in this matter.  The commission voted to approve at least one of these contracts.  Therefore, making sure that the contract was properly fulfilled falls within the legislative purview of the commission.  All of Judge Crawford's statements were made in conjunction with perceived deficiencies in Plaintiff's performance during the commission meeting.  This is analogous to the occasion and allegations made in *Butler*.  "Therefore, despite the falsity of any statements [ ]he made and despite any malice [ ]he may have had in making them, [Judge Crawford] is absolutely privileged from [Plaintiff's] claims as to publications [Judge Crawford] made during" the executive session.  *Butler*, 871 So. 2d at 25.

Further, the Court finds unpersuasive Plaintiff's caselaw and contention that legislative privilege only applies whenever a legislative body is "passing an ordinance/resolution."  To begin with, the caselaw Plaintiff cites for this proposition addresses legislative immunity in regards to general tort claims, not legislative privilege for defamation.  *See Ex parte Simpson*, 36 So. 3d 15 (Ala. 2009); *Marnon v. City of Dothan*, 677 So. 2d 755 (Ala. Civ. App. 1995).  Next, both cases Plaintiff relies on, *Simpson* and *Marnon*, were decided pre-*Butler*.  Had the *Butler* Court

intended for legislative privilege to apply only when an ordinance or resolution is actually being passed, they could have said so. *Butler* dealt more with the introduction and submission of the information and the occasion upon which this occurred, not what was ultimately done with the information or what was being performed at that moment in the meeting. Judge Crawford made the statements in regard to a county contract during a commission meeting, not to the public or outside of a meeting setting. He made the statements in conjunction with a recommendation that Plaintiff be reprimanded. This fits the rule articulated in *Butler*. Therefore, as a matter of law, the character and occasion of Judge Crawford's statements during the executive session on June 18, 2013, dictate that they are covered by legislative privilege. Defendants' Motion for Summary Judgment is **GRANTED** as it relates to Judge Crawford's statements regarding Plaintiff during the June 18, 2013, executive session.

**b. Statements Made to Sonny Brasfield and Mary Pon**

Next, Defendants contend summary judgment is due in regards to any alleged statements by Judge Crawford to Sonny Brasfield and Mary Pon regarding Plaintiff. In support, Defendants raise three arguments.

First, Defendants contend the undisputed evidence shows Judge Crawford never made defamatory statements to Sonny Brasfield and Mary Pon. (Doc. 26, p. 25). In support, Defendants rely on the following exchange:

> Q. [Defense Counsel] Did you and Mary Pon ever discuss your termination from employment?
>
> A. [Plaintiff] I'm not sure.

Q. Did you and Mary Pon ever discuss any of the accusations that were made against you in Exhibit 16 which is the disciplinary write-up?

A. I don't think so.

Q. Did Mary Pon ever say, hey, I heard they accused you of not doing your job?

A. No, sir.

Q. Did either one of them say anything like that to you?

A. No, sir.

Q. To your knowledge, has anybody – well, let me back that up.  To your knowledge, has Judge Crawford ever told Mary Pon or Sonny Brasfield that you did anything wrong on the job?

A. Not that I know of.

(Doc. 27-2, pp. 32:8–33:4).  Plaintiff counters that her interrogatory answer and deposition consistently support the fact that Judge Crawford conveyed the alleged defamatory statements within the reprimand form to Sonny Brasfield and Mary Pon.  (Doc. 34, p. 48).  She further avers that the above response was offered after Defense counsel repeatedly asked her the same question until the desired answer was provided.

The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant," Plaintiff.  *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).  "When there is conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all of the answers and

resolve the conflict." *Cortes v. American Airlines, Inc.*, 1997 WL 33125722, at *4 (S.D. Fla. Nov. 19, 1997) (citing *Victory Carriers, Inc. v. Stockton Stevendoring Co.*, 388 F.2d 955, 959 (9th Cir. 1968)). The same applies to inconsistencies within a deposition. *Edwards v. Niles Sales & Service, Inc.*, 439 F. Supp. 2d 1202, 1222 n.19 (S.D. Fla. 2006). This is because such a determination is based on the credibility of the witness. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Turning to Plaintiff's sworn interrogatory answer 5(b), Plaintiff offers that Judge Crawford conveyed the statements offered in 5(a) to Sonny Brasfield and Mary Pon on or about June 18, 2013. (Doc. 35-11, p. 4). This, in fact, aligns with the following exchange in Plaintiff's deposition:

> Q: [Defense Counsel] What defamatory statements did Judge Crawford make to Mary Pon and Sonny Brasfield?
>
> A. [Plaintiff] This same thing that's in A.
>
> Q. He told them everything in A on June 18, 2013?
>
> A. I did not do my – the main thing is, "She did not do her job."
>
> Q. Okay. How do you know that he told Mary Pon and Sonny Brasfield that?
>
> A. I talked to them.
>
> Q. You talked to both of them?
>
> A. Yes.

(Doc. 35-2, p. 57:10–22).  These facts, read in Plaintiff's favor, create a genuine issue of whether Judge Crawford conveyed the alleged information at some point to Sonny Brasfield and Mary Pon.  To weigh in at this point on which of Plaintiff's statements throughout her deposition or interrogatory answers are correct is tantamount to an improper credibility determination.  It will be Plaintiff's duty to explain any inconsistencies to the jury and the jury's duty to determine what to accept or reject.

Next, Defendants label any testimony by Plaintiff that Judge Crawford made defamatory statements to Sonny Brasfield and Mary Pon as "triple hearsay."[8]  (Doc. 26, p. 26).  Due to this, Defendants contend that such evidence cannot be reduced to an admissible form and therefore cannot be considered to decide the present motion.  As Plaintiff points out, this argument can be quickly dismissed.

"[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial or reduced to admissible form."  *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).  This simply allows "otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form."  *Id.* (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1999)).  "For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely

---

[8] Although Defendants label the statements as triple hearsay, it is only double hearsay, as explained below.

for impeachment purposes (and not as substantive evidence)."[9]  *Id.* at 1323–24.

The first layer of hearsay, Judge Crawford to Sonny Brasfield and Mary Pon, could

be admissible as a party opponent admission.  *See* Fed. R. Evid. 801(d)(2).  If this

matter were to proceed to trial, Sonny Brasfield and Mary Pon could be called as

witnesses to testify to any statement Judge Crawford did or did not make.  Thus,

"Plaintiff ha[s] demonstrated a genuine issue of material fact by submitting

evidence … which could later be given in an admissible form…."  *Macuba*, 193 F.3d

at 1324 n.18.

Lastly, in a civil case, "state law governs privilege regarding a claim or

defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.

Alabama's attorney-client privilege rule includes those communications between a

public officer and an attorney.  Ala. R. Evid. 501(a)(1).  Defendants contend that any

statements by Judge Crawford as the Chairman of the Hale County Commission to

Sonny Brasfield and Mary Pon, "both attorneys with the Association of County

Commissions of Alabama," would be a privileged attorney client communication.

(Doc. 26, p. 31).  At this point the Court is without the facts necessary to reach

Defendants' conclusion.  For instance, a communication between an attorney and

client is not privileged unless it is intended to be and actually is confidential.  *Exxon*

*Corp. v. Dep't of Conservation and Natural Resources*, 859 So. 2d 1096, 1103 (Ala.

---

[9] Impeachment evidence generally will not create a genuine issue of material fact,
but it may when the moving party has the burden of persuasion.  *Macuba*, 193 F.3d
at 1324 n.16; *Fireman's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1312 (8th Cir. 1993)
("[P]utting … evidence in question through impeachment could defeat a motion for
summary judgment when the moving party has the burden of persuasion.")

2002), rehearing denied. Confidentiality is a question of fact to be determined by the Court. *Ex parte DCH Reg'l Med. Ctr.*, 683 So. 2d 409, 412 (Ala. 1996). Defendants, however, offer no facts in support of this pivotal question. Additionally, Plaintiff argues that Sonny Brasfield is not an attorney for the Alabama County Commission Association or even an attorney within this state. (Doc. 34, p. 15; Doc 35-13). The application of this privilege is surely questionable if a communication is made to a non-attorney or potentially in a non-confidential setting. Therefore, the Court cannot determine whether such privilege warrants summary judgment. Defendants' Motion for Summary Judgment for the alleged defamatory statements made by Judge Crawford to Sonny Brasfield and Mary Pon is **DENIED**.

## c. Statements Made to Peggy King

Lastly, Defendants move for summary judgment on Plaintiff's allegation that Judge Crawford made defamatory statements about Plaintiff to Peggy King. (Doc, 26, p. 26). Defendants contend that Peggy King's deposition testimony shows that Judge Crawford made no defamatory statements to her. *Id.*

When asked during her deposition about any statements made by Judge Crawford, Peggy King offered the following testimony:

Q. [Plaintiff's Counsel] Do you remember any other negative comments Judge Crawford said about [Plaintiff]?

A. [Peggy King] I've tried to think of anything. I really only remember him saying how hard of a time he had with the other commissioners. He said that the other commissioners really wanted her to be there. He never actually said he didn't even want her. I mean, he didn't even say that. What he said, he wanted a full-time administrator. I do not remember any specifics. I'm sorry.

(Doc. 27-23, p. 2:3–15).

As it relates to deciding a motion for summary judgment, a sister district court offered the following regarding a witness's testimony that she could not remember whether an event occurred:

> [A] witness who states that he cannot remember whether or not an event alleged to have happened by the moving party actually took place does not help the nonmoving party to meet its burden. The nonmoving party must come up with evidence that negates the version of events alleged by the moving party-an acknowledgment that the event may have occurred, but the witness cannot remember, falls short.

*Chandler v. James*, 985 F. Supp. 1094, 1100 (M.D. Ala. 1997); *see also Hodge v. Orlando Utils. Comm'n*, 2011 WL 250400, at *13 (M.D. Fla. Jan. 26, 2011) ("[T]he failure [of the witness] to recall the meeting more than three years after it occurred, does not create a genuine issue regarding whether the meeting actually occurred."); *Linao v. CGR Tire Ctrs.*, 2010 WL 4683508, at *5 (N.D. Ga. Nov. 12, 2010) ("[W]here the only evidence negating the existence of an event is a witness's failure to remember that event, other courts have declined to find a genuine issue of fact for summary judgment." (citing *Torjagbo v. United States*, 285 F. App'x 615, 619 (11th Cir. 2008)). Therefore, Peggy King's testimony alone does not aid Plaintiff in overcoming Defendants' motion, even though Plaintiff alleges otherwise. *See* (Doc. 34, p. 17)

Plaintiff also offers her own conflicting deposition testimony. (Doc. 34, pp. 50–51). Therein Plaintiff states she witnessed Peggy King inform the Lawrence County Commission in October 2013 that Judge Crawford said Plaintiff did not do

her job.  (Doc. 35-2, pp. 58:10–59:8; Doc. 35-2, pp. 60:16–61:20).  Defendants counter that any such statement is inadmissible hearsay, improper for consideration in deciding the present motion.  (Doc. 39, p. 7).

Although statements made by Judge Crawford may be admissible as a party opponent admission under 801(d)(2), Fed. R. Evid., Plaintiff has not shown how her own conflicting testimony regarding Peggy King's statements at the Lawrence County Commission meeting about what Judge Crawford said can be reduced to an admissible version.  *See* Fed. R. Evid. 805 ("[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules"); *United States v. Pendas-Martinez*, 845 F.2d 938, 942–43 (11th Cir. 1988) (both levels of hearsay must be excepted from the hearsay rule).  The Court cannot consider Plaintiff's testimony in deciding the present issue.  Therefore, Plaintiff has not "demonstrated a genuine issue of material fact by submitting evidence … which could later be given in an admissible form…."  *Macuba*, 193 F.3d at 1324 n.18.  Given the above, Defendants' Motion for Summary Judgment is **GRANTED** as it relates to Judge Crawford's statements made to Peggy King.

In conclusion, Defendants' Motion for Summary Judgment on Plaintiff's defamation claim (Count 6) is **GRANTED**, in part, and **DENIED**, in part, as set out above.

## 6. <u>Breach of Contract (Count 4)</u>

The parties submit dueling summary judgment motions for Plaintiff's state

law breach of contract claim.  "Because there are cross motions for summary judgment on the exact same issue[ ], it is impossible to merely cast the facts 'in the light most favorable to the non-movant,' as each side is both movant *and* non-movant.  Accordingly, the [C]ourt sets out *all* versions of the facts which are supported by the record." *Crane v. Holder*, 66 F. Supp. 3d 1391, 1396 n.5 (N.D. Ala. 2014).

To establish a breach of contract claim under Alabama law, a plaintiff must show four elements: (1) a valid contract; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages.  *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).  The elements of a valid contract are "'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'"  *Ex parte Grant*, 711 So. 2d 464, 464 (Ala. 1997) (quoting *Strength v. Ala. Dep't of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993)).

To begin, Plaintiff contends that the 2012 Amendment is a valid contract under which summary judgment is due.  (Doc. 29, p. 28).  Unsurprisingly, Defendants counter that the 2012 Amendment is invalid for a host of reasons.  For instance, Defendants insist that the 2012 Amendment was never voted on and approved by the Hale County Commission.  (Dc. 33, p. 27).  Plaintiff disputes this point.  (Doc. 36, p. 15).

The Court has reviewed the evidence and finds a genuine issue of material fact exits as to whether the 2012 Amendment was voted on by the Hale County Commission.  Plaintiff testified that the commission voted and approved the 2012

Amendment during the November 27, 2012, commission meeting. (Doc. 30-1, pp. 21:21–22:17). She also provided a declaration from former Commission Chairman Judge Avery and Commissioner Rogers that the Hale County Commission voted and approved the 2012 Amendment. (Doc. 30-4, p. 3; Doc. 30-7, p. 3). Judge Avery and Plaintiff signed the 2012 Amendment on November 27, 2012. (Doc. 30-5, p. 5). Additionally, Carol Robinson testified that meeting minutes from the November 27, 2012, meeting were found on Plaintiff's work computer after her termination. (Doc. 35-8, p. 3:7–48). The minutes indicate that the commission voted on the contracts for Plaintiff, EMA Director Weeden, and County Attorney Holmes during the November 27, 2012, session. (Doc. 30-6, p. 2). But the record evidence also shows that the meeting minutes found on Plaintiff's work computer were neither signed by the individual commissioners nor filed in the appropriate book. Moreover, Commissioner Hamilton and Commissioner Rhodes, both commissioners during that time, deny that a vote amending Plaintiff's contract took place on November 27, 2012. (Doc. 27-14, p. 1; Doc. 27-15, p. 1). Further, the deposition testimony of EMA Director Weeden does not definitively point to a vote taking place on November 27, 2012, just that his contract was renewed on that date. (Doc. 35-6, p. 3:9–13).

The foregoing facts outline that the validity of the 2012 Amendment is an unsettled question. The Court finds equally unpersuasive Plaintiff's contention that Commissioner Rhodes's declaration and Commissioner Hamilton's declaration are a sham and should be discarded. (Doc. 36, p. 14). Plaintiff has not pointed the Court

to inconsistencies between either commissioners' declaration and prior deposition testimony. *See Wigley v. R & D Maintenance Services, Inc.*, 2009 WL 2151148, at *3 (S.D. Ala. July 15, 2009) (finding a declaration to not be a sham when there is no inconsistency between the declaration and prior deposition). Instead, the only inconsistency is between the declarations and purported meeting minutes, which are unsigned by either commissioner. The veracity of either position is determined based on credibility, which is a question better suited for a jury.

Next, Defendants contend that the 2012 Amendment is invalid because it was based solely on a desire to insulate Plaintiff from the incoming commission; therefore, it suffers a lack of consideration. (Doc. 26, p. 27). Plaintiff insists that her performance as county administrator supplies sufficient consideration and cites *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725 (Ala. 1987), in support. As discussed above, an employee's actual performance can supply the necessary consideration to create an employment contract when language in a policy manual is specific enough to constitute an offer to create a binding unilateral contract. 512 So. 2d at 735. Plaintiff, however, does not explain the intersection of this rule and whether such consideration is sufficient to support the modification of an independent employment contract.

The answer to this question is not one the Court need opine on today in order to find sufficient consideration for the 2012 Amendment since "'[p]arties to a written contract may by mutual consent without other consideration … alter, modify or rescind [a] contract.'" *LSREF2 Baron, LLC v. Wynfield Properties, LLC*, 2013 WL

6388597, at *2 (M.D. Ala. Dec. 6, 2013) (quoting *Cavalier Mfg., Inc. v. Clarke*, 862 So. 2d 634, 640–41 (Ala. 2003)); *see also Watson v. McGee* 348 So. 2d 461, 464 (Ala. 1977). Given this, the consent of the parties was sufficient consideration for the 2012 Amendment if such consent took place. But, as discussed above, the consent of the parties by way of a vote is a disputed issue of fact for a jury to determine.

The parties also contest each others' performance. Defendants contend that Plaintiff did not perform under the contract. (Doc. 26, p. 28). Specifically, they contend that Plaintiff was personally responsible for preparing commission meeting minutes but failed to do so from June 2012 through July 2013. (Doc. 33, p. 10). Additionally, Plaintiff refused to work hours that show she performed her duties in good faith. (Doc. 33, p. 29). Because of these alleged failures to perform, Plaintiff is the one who breached the contract or at least repudiated it. On the other hand, Plaintiff parries that Defendants failed to perform by barring her from performing her duties and terminating her without the unanimous vote the 2012 Amendment required. (Doc. 29, p. 29).

To begin with, the Court discussed above that a genuine issue of fact exists as to whether Plaintiff prepared the meeting minutes. Defendants contend she did not. (Doc. 27-20, p. 2). Plaintiff contends she did. The deposition testimony of Carol Robinson seems to support the fact that she may have prepared at least some, if not all, of the meeting minutes during the time in question. (Doc. 35-8, p. 3:7–48). Additionally, Defendants have produced evidence that Plaintiff was out of the office enough to at least raise the question of what her work schedule was. (Doc. 27-10, p.

4:11–16; Doc. 27-18, p. 2:8–15; Doc. 27-20, p. 1; Doc. 27-21, p. 1).  But Plaintiff has also produced evidence that she had no set hours under her contract.  (Doc. 35-5, p. 2).  And Plaintiff continued to work after the new commission transition, even if there is a dispute as to when and for how long she was supposed to work.  Therefore, Plaintiff is correct that these facts create an issue of Plaintiff's performance and surely do not show the unqualified refusal to perform under the contract, which is necessary to support Defendants' argument for repudiation of either contract.  *See* (Doc. 36, p. 15) (citing *Draughon's Bus. Coll. v. Battles*, 50 So. 2d 788, 790 (Ala. Ct. App. 1951)).

Equally so, Defendants' have shown a genuine issue as to their performance. There is no question that the 2012 Amendment requires a unanimous vote before Plaintiff can be terminated.  (Doc. 35-17, p. 3).  Further, it is undisputed that the Hale County Commission did not unanimously approve Plaintiff's termination. (Doc. 30-7, p. 3).  But whether this is a breach of contract requires finding the 2012 Amendment valid.  The above reasoning illustrates that the validity of the 2012 Amendment is a question of fact for the jury to determine.

Moreover, the Court finds a genuine issue of material fact exists as to whether Defendants are in breach of contract in failing to pay Plaintiff monies in accordance with Article IV Subsections D or F of either the 2008 Contract or 2012 Amendment.  These subsections are the same in both contract and read as follows:

> D. In the event termination by the Employer for cause prior to the completion of the Employment Term, the Employee shall be entitled to receive, in full discharge of all of County's obligations to Employee, the Employee's full compensation, benefits and expense reimbursements

then payable to the Employee through the date of termination and the
Employee shall be entitled to an additional six (6) months of
Employee's full compensation from the effective date of termination.

F. In the event of termination of Employee's employment other than (i)
as a result of any disability pursuant to the above, (ii) by reason of
Employee's death, (iii) for cause pursuant to the above, or (iv) by the
Employee voluntarily during the Employment Term, the Employee
shall be entitled to receive, in full discharge of all of County's
obligations to Employee, Employee's full compensation, benefits and
expense reimbursements due and payable to the Employee under the
terms of this Agreement, including any salary increase Employee
would have been due under said contract for the remainder of the
contract term.  Said payments shall be made in equal monthly
installments for the total number of months remaining on the contract
at the time of termination.

(Doc. 35-16, p. 3; Doc. 35-17, p. 4).

If Defendants did breach either contract, they presumably would owe
Plaintiff some amount of monies given these two subsections.  But this cannot be
determined in deciding the instant motion for the following reasons.  First,
determining which clause applies requires determining whether Plaintiff's
termination was with or without cause.  Such a determination would require
weighing the conflicting evidence, which is improper.  Second, if Defendants'
termination was truly without cause, Plaintiff would be due monies through the end
of her contract.  But which contract would that be: the 2008 Contract or the 2012
Amendment?  The Court cannot determine this without overstepping its bounds.

Lastly, Defendants contend for the first time in their reply brief that, as a
matter of public policy, former Chairman Judge Avery could not contractually bind
successor commissioners with the amendment of Plaintiff's employment contract.
(Doc. 39, p. 8).  "District courts, including this one, ordinarily do not consider

arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012).  The Defendants offer, and the Court detects, no reason to deviate from this general rule.  Therefore, a genuine issue of material fact exists as to Plaintiff's state law breach of contract claim.  Both Plaintiff's and Defendants' Motions for Summary Judgment on Count 4 are **DENIED**.

### 7. <u>Wrongful Termination (Count 5)</u>

Defendants contend that Alabama caselaw has concluded that a claim of termination in violation of employment policies and procedures is a claim of breach of contract, not also a tort claim of wrongful termination.  (Doc. 26, p. 29) (citing *Morrow v. Town of Littleville*, 576 So. 2d 210, 212–13 (Ala. 1991)).  Therefore, since Plaintiff's claim is essentially a reiteration of her breach of contract claim and based on contractual duties, she cannot sustain a cause of action for wrongful termination. *Id.*

To begin with, the *Morrow* Court did not hold that Alabama law does not permit a claim of wrongful termination when a claim is based on violations of employment policies and procedures.  Instead, the *Morrow* Court evaluated whether the plaintiff in that case stated a cognizable breach of contract claim for the purpose of determining whether the plaintiff's claim was barred by the applicable statute of limitations.  576 So. 2d at 213.  Caselaw both prior to and after *Morrow* confirm that the court did not foreclose a plaintiff's ability to bring suit for wrongful termination.

As explained in the Court's adopted opinion, "the Alabama Court of Civil Appeals reversed dismissal of a former police officer's claim for wrongful termination [in *Hardic v. City of Stevenson*, 843 So. 2d 206 (Ala. Civ. App. 2002)], holding: 'As to Hardic's claim of wrongful termination, we view this court's decision in *City of Gadsden v. Harbin*, 398 So. 2d 707 (Ala. Civ. App. 1981), as controlling. That decision held that a municipal employee may bring a wrongful-termination action.  This court determined that "[t]he dismissal of a public employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under Alabama law."  *Harbin*, 398 So. [ ]2d at 708.' [843] So. 2d at 210." (Doc. 16, p. 34).

Here, Plaintiff alleges that she had a protectable interest in her employment due to the Policy and a written contract.  (Doc. 1, p. 11).  She further alleges that she was not afforded a pretermination hearing.  Therefore, Plaintiff brought a cause of action for the separate tort of wrongful termination.  *See Hale v. City of Lanett, Ala.*, 2012 WL 3890132, at *3 (M.D. Ala. Sept. 7, 2012) (city police officers) ("In Alabama, a municipal employee may bring a wrongful termination action against a municipality ….  Therefore, to the extent the plaintiffs assert that they were not provided a hearing in compliance with municipality's own policies and procedures during termination proceedings, the court concludes that the plaintiffs state a plausible claim for relief."); *Taylor v. City of Demopolis*, 2005 WL 3320735, at *8 (S.D. Ala. Dec. 6, 2005) (city clerk), *aff'd*, 182 F. App'x 973 (11th Cir. 2006).

Like they did in their Motion to Dismiss, Defendants attempt to distinguish

Plaintiff's case from *Hardic* and *Harbin* by arguing that "a wrongful termination claim can be brought by *municipal* employees who are members of a protected class pursuant to Alabama Code Section 11-43-230." (Doc. 26, p. 29) (emphasis in original). Therefore, Plaintiff, a county employee, cannot bring suit for wrongful termination. *Id.* This is unpersuasive because neither *Hardic* nor *Harbin* expressly based its holding on § 11-43-230. Moreover, as Plaintiff points out and as the Court earlier explained in its adopted opinion, at least two Alabama Supreme Court cases have held that an employee outside the municipal realm may bring suit for wrongful termination based on a failure to dismiss the employee in accord with due process of law requirements. *See Limbaugh v. Johnston*, 393 So. 2d 963 (Ala. 1981); *Jefferson County v. Reach*, 368 So. 2d 250 (Ala. 1979).

> *Reach* held the plaintiff's claim "that his dismissal from the Sheriff's Department, without being afforded a hearing, violated due process of law under both the Alabama Constitution and the United States Constitution … arises from a breach of duty imposed by law…" and was thus considered a tort claim. 368 So. 2d at 252. *Limbaugh*, citing *Reach*, held that the reinstated plaintiff's "claim for back pay is a tort action for damages on account of the injury caused by the failure to dismiss him in accord with due process of law requirements" and that "[a] plaintiff is allowed one year from the date of the alleged wrongful dismissal to commence proceedings." 393 So. 2d at 965. The Alabama Supreme Court's decisions in *Limbaugh* and *Reach* suggest that wrongful termination claims may not be limited to just municipal employees ….

(Doc. 16, p. 36). Therefore, Defendants' contention that a claim of wrongful termination is reserved for municipal employees is unpersuasive.

The only further justification Defendants offer for *Limbaugh* and *Reach's* inapplicability is to suggest that a cause of action for wrongful termination may also

exist for state employees, but not county employees.  (Doc. 26, p. 30).  Plaintiff

parries that *Limbaugh* and *Reach* held that county employees could bring a cause of

action for wrongful termination because the deputy sheriff in both case was a

county employee.  (Doc. 34, pp. 56–57).  Therefore, little question exists whether

Plaintiff, a county employee, may bring a claim of wrongful termination.

The Court acknowledges that the language of *Limbaugh* and *Reach*,

especially *Limbaugh*, raises the question of whether the deputy sheriff in either

case was a state or county employee.  *See* 393 So. 2d at 964 ("Limbaugh, a classified

employee of Jefferson county, subject to and governed by the civil service laws

relating to Jefferson County employees and the rules and regulations of the

Jefferson County Personnel Board ….")  That the deputy sheriff in either case was a

county and not state employee is at odds with the great weight of caselaw holding

that a deputy sheriff is a state employee since he or she is considered the "alter ego"

of the sheriff, a state employee.  *See, e.g.*, *Mack v. Arnold*, 929 So. 2d 480, 483 (Ala.

Civ. App. 2005) (finding county personnel system's manual did not apply to a Wilcox

County deputy sheriff, who was a state employee); *Whitten v. Lowe*, 677 So. 2d 778,

780 (Ala. Civ. App. 1995) (same in Marshall County); *see also Cofield v. Randolph

Cnty. Comm'n*, 844 F. Supp. 1499, 1501 (M.D. Ala. 1994) (concluding a deputy

sheriff could not be held liable in his official capacity for tortious acts because he

was immune as a state officer).

But the Court need not reconcile whether a deputy sheriff is in all instances a

state or county employee to decide the present motion.  What is gleaned from

*Limbaugh* and *Reach* is that Alabama has not strictly limited a wrongful termination claim to municipal employees, and Defendants offer no citation where a county employee's claim of wrongful termination was dismissed due to his or her employment status.  The Court is unconvinced that the Alabama Supreme Court would preclude Plaintiff's wrongful termination claim, especially since the *Limbaugh* and *Reach* Court at least perceived that the employee in those cases was a county employee.  *See Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) ("In matters of state law, federal courts are bound by the rulings of the state's highest court.")  And the Alabama Court of Civil Appeals' reliance on these earlier cases in *Hardic* at least suggests that that court understood that county employee application was not an impossibility.  *Cf. Doyle v. Volkswagenwerk Aktiengelellschaft*, 81 F.3d 139, 142 (11th Cir. 1996).  Therefore, Defendants' Motion for Summary Judgment on Count 5 is **DENIED**.

## V. CONCLUSION

For the reasons stated above, the following is hereby **ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. 25) is decided as follows:

   a. Summary judgment as to Counts 1, 4, 5, and 7 is **DENIED**;

   b. Summary judgment as to Counts 2, 3, and 8 is **GRANTED**; and

   c. Summary judgment as to Count 6 is **GRANTED**, in part, and **DENIED**, in part, as set out above.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 28) as to Counts 1 and 4 is **DENIED**.

3.  Defendant Judge Crawford is **GRANTED** qualified immunity in his

individual capacity as to Count 1.

**DONE** and **ORDERED** this 1st day of February, 2017.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE