# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| TRICIA GALBREATH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HALE COUNTY, ALABAMA )<br>COMMISSION, et al., )<br>)<br>Defendants. ) | CIVIL ACTION NO. 15-308-CG-N |

## ORDER ON MOTION FOR REINSTATEMENT OR FRONT PAY

This matter is before the Court on a motion for equitable relief in the form of reinstatement or, alternatively, front pay filed by Plaintiff Tricia Galbreath ("Galbreath") (Doc. 82), a response in opposition filed by Defendants Hale County, Alabama Commission and Hale County, Alabama ("Defendants") (Doc. 98), and a reply filed by Galbreath (Doc. 107). Based on the reasons set forth below, Galbreath's motion is **DENIED** in part, and **GRANTED** in part.

## I. PROCEDURAL BACKGROUND

This case arises out of Galbreath's termination from the Hale County Commission as its County Administrator. When Galbreath began her employment with the Hale County Commission, she was provided and signed for a copy of the Hale County Personnel Policy (the "Policy"). Additionally, Galbreath and Defendants executed several employment contracts throughout her term of employment. During a county commission meeting on June 18, 2013, the Hale County Commission voted to terminate Galbreath's employment.

Based on her termination, Galbreath filed a multi-count complaint against Defendants. After the Court dismissed several claims at the motion to dismiss and summary judgment stage, Galbreath proceeded to trial with three claims remaining: (1) a Fourteenth Amendment procedural due process claim brought pursuant to 42 U.S.C. § 1983; (2) a state-law breach of contract claim; and (3) a state-law wrongful termination claim. Galbreath's claims were tried before a jury on March 23, 2017, through March 27, 2017. The jury returned a verdict in Galbreath's favor on all three claims. *See* (Doc. 73-1). The jury awarded Galbreath $8,000.00 in damages for any emotional pain and mental anguish she suffered from the date of her termination to the date of the jury's verdict. *Id.* at 5. The jury also awarded Galbreath $128,600.00 in damages for lost wages and lost benefits from the date of Galbreath's discharge to the date of the jury's verdict. *Id.* Galbreath now contends she is due reinstatement to her position as County Administrator for Hale County. Alternatively, she argues for front pay if the Court determines that reinstatement is unsuitable.

## II. WHETHER REINSTATEMENT IS AN AVAILABLE REMEDY

Galbreath contends that she prefers to be and is entitled to reinstatement as County Administrator for Hale County. (Doc. 82, p. 2). Reinstatement, she continues, is the most likely means of redress that would provide complete relief and allow her to further her career. *Id.* at 3. She contends that she is well qualified for the position, which has not been filled. *Id.* Further, she points out that the 2012 Contract required a unanimous termination vote from the Commission. *Id.*

2

Because there was not a unanimous vote, Galbreath insists that she was never actually terminated. *Id.*

Defendants begin their response by resurrecting their *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994), argument and contend Galbreath is not due prospective equitable relief because they are entitled judgment as a matter of law on Galbreath's due process claim. (Doc. 98, p. 1). The Court has previously rejected Defendants' *McKinney* argument at multiple points in this case. For the reasons previously stated, the Court again finds unpersuasive Defendants' claim for relief on this basis.

Next, Defendants argue that Galbreath offers no caselaw to support her position. (Doc. 98, p. 4). Defendants maintain that the proper measure of prospective equitable relief due "is simply to order a hearing take place." *Id.* Defendants aver that what Galbreath now asks the Court to order would "bypass the termination process altogether and rule on the merits of her termination" by reinstating Galbreath. *Id.* at 6. Defendants continue, the Court can only assess whether the necessary procedures were utilized, not whether the termination decision was wise or substantively correct. Defendants insist that reinstatement would be inequitable for several reasons: (1) it would put Galbreath in a better position than she would have been had she had a pre-termination hearing and (2) it punishes Defendants when Galbreath did not avail herself of any post-termination grievance procedures. *Id.* at 8–9.

It is a "well-settled principle that the nature and scope of the remedy are to

3

be determined by the violation, which means simply that federal-court decrees must directly address and relate to the constitutional violation itself." *Milliken v. Bradley*, 433 U.S. 267, 282 (1977). The leading case for damages in a procedural due process case is *Carey v. Piphus*, 435 U.S. 247 (1978). The *Carey* Court held that compensation for injuries emanating from the deprivation of a constitutional right "should be tailored to the interests protected by the particular right in question." *Id.* at 259. The *Carey* Court went on to conclude that "compensatory damages for a procedural due process violation may not be awarded absent proof of actual injury. The Court further held, however, that even in the absence of such proof, 'the denial of procedural due process should be actionable for nominal damages.' " *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986) (quoting *Carey*, 435 U.S. at 266)). *Carey*, however, did not reach the particular issue of equitable relief.

It is within the sound discretion of a district court whether to award equitable relief. *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985). A court decides "the propriety of equitable relief *based on the facts as found by the jury.*" *Haskins v. Boaz*, 822 F.2d 1014, 1015 (11th Cir. 1987) (citation omitted) (emphasis in original).

Neither party offers caselaw from the Eleventh Circuit Court of Appeals addressing whether and when reinstatement is an available remedy for a pre-termination procedural due process violation. In fact, Defendants maintain Galbreath provides no such citation "apparently because no such case exists." (Doc. 98, p. 4). But the Court is not left rudderless in its current analysis. A case from

4

the Eighth Circuit Court of Appeals is instructive and persuasive as to when the equitable remedy of reinstatement is an available remedy. In *Hopkins v. Saunders*, 199 F.3d 968 (8th Cir. 2000), a terminated employee brought a § 1983 action against his employer for, among other things, a violation of procedural due process at the pre-termination stage. On remand from the Eighth Circuit for several reasons, the district court found that the plaintiff had a property interest in his employment and did not receive the notice and a hearing due process requires prior to his termination. *Id.* at 975. Even so, the district court awarded only nominal damages to the plaintiff because the court found the termination was justified and, therefore, refused reinstatement. *Id.*

Both parties appealed the district court's decision. The Eighth Circuit affirmed the district court's property interest determination; however, the district court's award of nominal damages was found to constitute "legal relief" rather than equitable relief, which was contrary to the court's earlier decision and remand. This portion of the district court's order was vacated. Relying on *Carey*'s holding that federal law dictates the appropriate remedy in a procedural due process claim, the Eighth Circuit explained, in relevant part:

> The Supreme Court defined the proper remedy for the denial of procedural due process in *Carey v. Piphus*, holding that the remedy for a procedural due process violation is defined by the extent of the injury that resulted from the denial of constitutionally required process. 435 U.S. at 263–64; *see also Peery v. Brakke*, 826 F.2d 740, 747 (8th Cir. 1987). *Thus, in the context of public employment, reinstatement is proper only where a tenured employee would not have been dismissed if his procedural due process right had been observed…*. Where an employee would have been discharged even if he had received due process, i.e. was discharged for cause, his sole injury is the lack of

5

process and only nominal damages are proper.

*Saunders*, 199 F.3d at 979 (emphasis supplied). The *Saunders* Court went on to find that under the "*Carey* remedial framework" the district court's finding that the plaintiff "would have been dismissed even if he had received due process" was supported by evidence and was not "clear error." *Id.*

The Eighth Circuit's holding in *Saunders* is in line with the Eleventh Circuit's interpretation of *Carey*—that the pertinent inquiry in determining the proper scope of damages in the context of a procedural due process violation is whether the deprivation is justified. *See, e.g.*, *Harden v. Pataki*, 320 F.3d 1289, 1300 (11th Cir. 2003) (reasoning that a justifiable injury a habeas petitioner may sustain is not properly compensable under 42 U.S.C. § 1983); *Cnty. of Monroe v. United States Dep't of Labor*, 690 F.2d 1359, 1363 (11th Cir. 1982) (concluding that "injury caused by justified termination is not compensable in the form of back pay").

And although applied in different contexts, the Eleventh Circuit has allowed a § 1983 plaintiff to receive back pay, lost benefits, loss of future income and damages for mental anguish and emotional distress arising from procedural due process violations based on the unjustified discharges of a public employee. *See, e.g.*, *Wilson v. Taylor,* 733 F.2d 1539, 1550 (11th Cir. 1984) (back pay reduced by the amount of other income received after his initial termination awarded to an unlawfully discharged police officer); *Murphy v. City of Flagler Beach,* 846 F.2d 1306, 1309 (11th Cir. 1988) (mitigated damages is consistent with the compensatory purposes of Section 1983); *Stallworth v. Shuler,* 777 F.2d 1431, 1435 (11th Cir.

1985) (the injury in civil rights cases may be intangible and need not be financial or physical but may include damages for humiliation and emotional distress (citing *Carey v. Piphus,* 435 U.S. 247, 263–64 & n. 20 (1978)). Further, although analyzed in the context of First Amendment claims under § 1983, "reinstatement is a base element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required." *Allen v. Autauga Cnty. Bd. of Education*, 685 F.2d 1302, 1305 (11th Cir. 1982). The Eleventh Circuit even explained in dicta, as it relates to a procedural due process claim, that the appropriate prospective remedy is "reinstatement and a correction in any procedural defects of the pre-termination hearing." *McKinney v. Pate*, 151 F.3d 1550, 1561 (11th Cir. 1994) (*en banc*). Given this, the Court cannot say that reinstatement is not an available remedy within the Eleventh Circuit for a § 1983 procedural due process claim when a discharge is be unjustified.

During trial Defendants contended that Galbreath had been rightfully terminated. In other words, the jury was asked whether Galbreath's termination was justified. (Doc. 79-1, p. 341). And as it related to her breach of contract claim, the jury was asked whether Galbreath would have been fired anyway due to after-acquired-evidence. *Id.* at 337–38. To both of these questions the jury answered in the negative. (Doc. 73-1, pp. 2, 4). Based on this, the scope of the jury's determination appropriately includes prospective relief in the form of reinstatement.

This conclusion is supported by numerous decisions from various United

7

States Circuit Courts of Appeals that have addressed the scope of damages available in procedural due process actions and similarly found reinstatement to be within this scope. *See, e.g.*, *Whalen v. Mass. Trial Court*, 397 F.3d 19, 28 (1st Cir. 2005) (barring suit based on Eleventh Amendment grounds but explaining that "plaintiff's entitlement to more than nominal damages in a procedural due process case turns on whether the constitutional violation—the failure to provide a pre-termination opportunity to contest termination—did in fact cause the harm asserted—the loss of the job and related benefits. If [the plaintiff] would have been terminated even after a proper hearing, he would not be eligible for either reinstatement or damages flowing from his unemployment."); *Pace v. Moriarty*, 83 F.3d 261, 263 (8th Cir. 1996) (holding that while qualified immunity shielded a defendant from damage claims related to denial of due process, the defendant officials were not shielded from the plaintiff's claims "for reinstatement or other equitable remedies"); *Newsom v. Batavia Local Sch. Dist.*, 842 F.2d 920, 928 (6th Cir. 1988) (reasoning that to the extent a plaintiff "seeks reparative relief aimed at restoring him to the position he would have occupied but for the due process violation, he is entitled to such relief unless the school district can prove, by a preponderance of the evidence, that, even had it not deprived [the plaintiff] of his right to procedural due process, he would have still rightfully been expelled"); *see also Broday v. Village of Port Chester*, 345 F.3d 103, 119–20 (2d Cir. 2003) (analyzing a due process violation involving the lack of proper notice in land condemnation proceedings, the court explained that "[t]he appropriate remedy for a

proven due process violation often depends on the state at which the violation is found and the relief sought" and holding that where the plaintiff was seeking the reconveyance of his property rather than monetary damages, the plaintiff "is entitled to a return of his property only if he can prove that any denial of due process made a difference in the condemnation proceedings").

Notwithstanding this caselaw, Defendants attempt to argue that the only means of prospective relief available to Galbreath "is simply to order that a hearing take place." (Doc. 98, p. 4). In support, Defendants cite *Brady v. Gebbie*, 859 F.2d 1543 (9th Cir. 1988); *Codd v. Velger*, 429 U.S. 624 (1977); *Langford v. Hale County, Alabama Commission,* 2016 WL 4974960 (S.D. Ala. Sept. 16, 2016); *Earl v. Dupree*, 2001 WL 36152178 (S.D. Ala. Feb. 21, 2001); and *Wyatt v. Bronner*, 500 F. Supp. 817 (M.D. Ala. 1980). However, these cases lend no support to Defendants.

To begin, although the *Brady* Court found reinstatement was unavailable based solely on a procedural due process claim, the court did not go so far as to exclude reinstatement as a prospective remedy "when another substantive right coexists with the right to procedural due process." 859 F.2d at 1552. Here, Galbreath brought and was successful on a procedural due process claim and a breach of contract claim; therefore, she had another coexisting substantive right.

Next, the *Codd* Court referenced a hearing being the proper prospective remedy that the Due Process Clause requires in the context of a Fourteenth Amendment stigma plus claim. 429 U.S. at 627. Here, the Court dismissed Galbreath's stigma plus claim; therefore, she has no need or right to "clear her

name." Additionally, a hearing was the proper prospective remedy in *Earl* and *Wyatt* because there had been no factual finding in those cases of whether the termination in question was justified. Here, the trier of fact has already determined that Galbreath's termination was unjustified. A hearing, therefore, would be pointless.

That the jury found Galbreath's termination was unjustified in this matter is also distinguishable from *Langford*. In *Langford*, Hale County was able to prove that it would have terminated the employee without regard to political affiliation. 2016 WL 4974960 at *2. Here, Defendants did not convince the jury that it would have fired Galbreath based on after-acquired-evidence or with justification, even though Defendants strangely now contend it is undisputed Galbreath would have been terminated regardless of the procedure offered. *See* (Doc. 73-1, pp. 2, 4). Further the employee in *Langford* was unable to establish any damages beyond "emotional distress and embarrassment in the community." *Id.* at 3. Here, Galbreath convinced the jury that the 2012 Contract was valid, which proved damages extending beyond the date of Defendants' termination vote.

Because the jury already determined that Galbreath's termination was unjustified, her reinstatement request does not "prove too much" or show Galbreath is trying to "game the system" as Defendants contend. And because the jury has already determined that Galbreath's termination was unjustified, the Court does not have to, nor is Galbreath asking the Court to, decide the merits of her termination. The jury decided this at trial upon Defendants' request. Therefore,

the Court does not act as a "super-personnel department" in deciding whether reinstatement is an available means of prospective equitable relief. And what Defendants do not consider is that this is not merely the failure to conduct a pre-termination hearing but rather the unjustified actual loss of employment by Galbreath.

Reinstatement is not an inequity against Defendants as they contend. The 2012 Contract anticipates that Galbreath will be employed through November 25, 2018. (Doc. 72-1, p. 32). She has an expectation that she can provide services for Defendants until this time and receive compensation for these services. Defendants, likewise, have an expectation of services for compensation. This means that Galbreath would not receive a windfall or be in a better position if she was reinstated. Instead, both parties would receive what they bargained for under the 2012 Contract.

The fact that Galbreath did not pursue any of the grievance procedures within the Hale County Personnel Policy does not work an inequity upon Defendants. To begin, the 2012 Contract clearly states that the Hale County Board of Commissioners may terminate Galbreath's employment upon an unanimous vote. (Doc. 72-1, p. 33). But the evidence at trial proved Galbreath was not terminated based on an unanimous vote. Also, the 2012 Contract requires any notice provided under the contract (i.e., a termination notice) be in writing and either be personally delivered or sent by mail to Galbreath. *Id.* at 34. Defendants produced no such notice. So it was reasonable for Galbreath to believe that she was not properly

11

terminated. If the overseer of the grievance policy did not properly terminate Galbreath, what good would grieving her termination do? Moreover, had Galbreath utilized the grievance procedure, the same commissioners that voted to terminate Galbreath would be the final deciding body that has the authority to adopt or reject any decision rendered in the grievance procedure. *Id.* at 14. Any efforts to grieve her termination would likely have been futile.

Further, the position Galbreath held with Hale County has not been filled. Therefore, reinstatement does not work an inequity upon Defendants. And, reinstatement is not inequitable for Defendants because, as Galbreath rightfully concedes, it is up to Defendants whether Galbreath would serve out the remainder of her contract. (Doc. 107, p. 10). The 2012 Contract and the Due Process Clause do not bar her future termination as long as Galbreath were to receive the process due and the terms of the contract were followed.

Accordingly, the Court rejects Defendants' contention that reinstatement is an unavailable remedy for this procedural due process violation.

### III. WHETHER REINSTATEMENT IS A FEASIBLE REMEDY

Having determined reinstatement is an available remedy for this procedural due process violation, the question stands whether reinstatement is a feasible remedy in this case. While reinstatement is the preferred prospective equitable remedy, it is not the only possible equitable prospective remedy. "When extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement." *United States EEOC v. W & O Inc.*, 213 F.3d 600, 619 (11th

Cir. 2000) (citation omitted). "In deciding whether to award front pay, rather than reinstatement, courts look to whether ' "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy," ' *Lewis v. Federal Prison Indus.*, 953 F.2d 1277, 1280 (11th Cir. 1992) (quoting *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1449 (11th Cir. 1985)), the ' "defendant's management [had] intimidated or threatened" ' the plaintiff, *id.* (quoting *Elvins v. Adventist Health Sys.*, 660 F. Supp. 1255, 1263 (D. Kan. 1987)), or the termination had harmed the plaintiff's well-being, *id.*" *W & O Inc.*, 213 F.3d at 619. Another relevant consideration in deciding front pay is the plaintiff's retirement date. *Lewis*, 953 F.2d at 1280. And just as it does with back pay, a failure to mitigate damages will "limit the amount of front pay available." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir. 1988).

"[B]ecause of the potential for windfall, [the] use [of front pay] must be tempered." *Lewis*, 953 F.2d at 1281 (citation omitted) (second and third bracket in original). "Front pay remains a special remedy, warranted only by egregious circumstances." *Id.* Although the caselaw outlined here evaluated the propriety of front pay in age discrimination and Title VII cases, the Eleventh Circuit has found no error in applying these rules to determine whether front pay is appropriate in regards to a § 1983 claim. *Haskins v. Boaz*, 822 F.2d 1014, 1015 (11th Cir. 1987) (citing *Goldstein*, 758 F.2d at 1448–49).

In the instant case, there has been no evidence that Defendants are willing or amenable to reinstating Galbreath. And Defendants do not even broach the

13

question of whether reinstatement is a feasible option. They only argue that Galbreath is entitled to neither reinstatement nor front pay. Galbreath, however, did convey to the Court that Defendants' counsel communicated to her counsel that it "was doubtful that Defendants would be willing to reinstate Galbreath." (Doc. 82, p. 7). This in and of itself is sufficient to establish that reinstatement is unfeasible. *Austrum v. Fed. Cleaning Constrs., Inc.*, 2016 WL 3526130 at *8 (S.D. Fla. June 23, 2016) ("Given Federal's unwillingness to hire Austrum, the Court finds that instatement is unfeasible and could likely lead to an acrimonious situation.") The Court is reluctant to order reinstatement only to potentially create a contempt proceeding in an already prolonged suit.

Trial evidence establishes that animosity and discord exists between the parties. At least one commissioner testified that he stayed away from the Hale County offices due to his seemingly negative relationship with Galbreath. (Doc. 79-1, p. 61). Additionally, one commissioner testified that the county administrator was the face of the commission and needed to represent them in the commissioners' absence. However, upon terminating Galbreath, Hale County did not hire a replacement. That a replacement was not hired further establishes the animosity between the parties. More simply, it seems that the commissioners did not desire an ever-present county administrator as much as they just wanted to be rid of Galbreath. The Court is unoptimistic that these feelings would subside upon reinstatement.

As to mitigation, there is no reason to deny front pay based on Galbreath's

mitigation efforts. Mitigation of damages was an affirmative defense raised and argued by Defendants. When posed with an interrogatory on this affirmative defense, the jury found that Defendants failed to prove that Galbreath did not exercise reasonable efforts to mitigate her damages.

As to her well-being, Galbreath testified that she suffered emotional distress and mental anguish as a result of Defendants' procedural due process violation. Specifically, she was embarrassed, she suffered stress, and she suffered from a shingles outbreak. The jury apparently found this testimony credible and that these harms would not have occurred but for the due process violation because the jury awarded Galbreath $8,000 in emotional distress and mental anguish damages. (Doc. 73-1, p. 4). The jury's determination in this aspect shows that the due process violation harmed Galbreath's well-being and supports front pay as opposed to reinstatement.

The 2012 Contract term is also a relevant consideration. Galbreath is now approximately 56 years old. She already came out of retirement once. The 2012 Contract is set to expire November 25, 2018. She will be approximately 58 years old. It is reasonable that either she would not seek renewal after the 2018 expiration or Defendants would not renew the contract at that time.

There are 82 weeks from the jury's verdict to the end of the contract. This is a relatively short period of time. Thus, it is reasonable to conclude that Galbreath would remain there until that time. *See Lewis*, 953 F.2d at 1281 ("Lewis was only four years away from the date of his mandatory retirement, so we may fairly

assume that Lewis would have remained at FCI until the time of that retirement.") That Galbreath would remain in her position until contract expiration, that the contract is soon to expire, and that the contract would likely not be renewed weighs in favor of front pay. Reinstatement would require money, resources, and time to train Galbreath on what has changed since 2013. To train up an employee whose term is so brief is inefficient.

Moreover, as discussed above, Galbreath has an expectation that she will receive the benefit of the bargain under the 2012 Contract. The 2012 Contract states that Galbreath will receive "full compensation" and "benefits" "due and payable" to Galbreath in the wake of a breach by Hale County. (Doc. 72-1, p. 35). This shows that the parties envisioned some type of front pay.

Based on the above factual findings, the Court finds reinstatement is unfeasible and front pay is the appropriate prospective equitable remedy. *See W & O, Inc.*, 213 F.3d at 606 (concluding that a district court must "make factual findings as to whether reinstatement is feasible" if it awards a plaintiff front pay).

Because the 2012 Contract spells out the compensation Galbreath would receive, there is no need for another hearing to establish front pay. Galbreath agrees that there is no need to calculate future increases in pay. This means that there is no need to discount a front pay award to present value. *Stratton v. Dep't for the Aging for the City of New York*, 132 F.3d 869, 882 (2d Cir. 1997). Further, Galbreath agrees that the cost of her health insurance established at trial will remain the same throughout the term of the 2012 contract. Defendants do not

contest these figures, just that Galbreath is not due front pay as a whole.

The total of her compensation and health insurance premiums would be $42,000.00 per year ($30,000.00 per year compensation plus $12,000.00 per year health insurance premiums). This would equal $807.69 per week in total compensation. The relevant period of time upon which front pay is awarded is from the date of the jury's verdict in this case (March 27, 2017) through the end of the 2012 Contract (November 25, 2018). This timespan is made up of 87 weeks. Therefore, the total front pay due to Galbreath in this matter is $70,269.03.[1]

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES**, in part**,** and **GRANTS**, in part Galbreath's Motion for Reinstatement or, Alternatively, Front Pay (Doc. 82). Defendants are hereby **ORDERED** to pay unto Galbreath $70,269.03 in front pay.

**DONE** and **ORDERED** this 8th day of August, 2017.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Galbreath offers another figure for the total front pay due: $71,750.00. She contends that this is the sum of her weekly compensation ($875.00) for a period of 82 weeks. But as discussed above, the proper per week compensation for Galbreath is $807.69. Further, the proper number of weeks is 87. The Court presumes Galbreath's per week, number of weeks, and total figure are a typo given the motion also references "Ms. Langford," who was the plaintiff in a separate action against Defendants.