**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRICIA GALBREATH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 15-308-CG-N** |
| | ) | |
| **HALE COUNTY, ALABAMA** | ) | |
| **COMMISSION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS

This action is before the Court on a motion for award of attorneys' fees and costs and a brief in support filed by Plaintiff Tricia Galbreath ("Galbreath") (Doc. 84; Doc. 85). The remaining Defendants, Hale County, Alabama Commission and Hale County, Alabama ("Defendants") filed a response in opposition (Doc. 99), and Galbreath filed a reply thereto (Doc. 106). Galbreath also amended her request for an award of attorney's fees based on attorney Charles Ingrum's post-trial filings. (Doc. 96, p. 57; Doc. 106, p. 12).

Galbreath seeks and award of attorney fees in the amount of $185,642.30[1] and an award of costs and expenses in the amount of $12,321.37, for a total amount of $197,963.67. Upon consideration of the filings and exhibits presented unto the Court, the motion is **GRANTED** in part and **DENIED** in part and Galbreath is awarded attorneys' fees in the amount of $127,943.00 and costs and expenses in the

---

[1] Galbreath's figure is slightly lower than this amount, but the Court determines it is due to a miscalculation in her multiplication.

amount of $11,793.06, for a total amount of $139,736.06.

## I. The Attorney's Fee Standard

As to attorney's fees, "[t]he applicable statute, 42 U.S.C. § 1988, allows a district court to award attorney's fees to the prevailing party in civil rights cases brought under § 1983. The Court of Appeals for the Eleventh Circuit has stated that when a plaintiff succeeds in bringing a civil rights claim, 'he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *Barnes v. Zaccari*, 592 F. App'x 859, 869 (11th Cir. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 833 (2011)) (citation omitted). Galbreath may be considered a prevailing party for § 1988 attorney's fees purposes if she "succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted).

Overall, a reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Generally, the starting point for calculating a reasonable attorney's fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Hensley*, 461 U.S. at 433. To make this determination, the district court should consider the relevant factors among the twelve factors identified in *Johnson*

*v. Georgia Highway Express, Inc.*[2]  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350

(11th Cir. 2008) (citing *Johnson*, 488 F.2d 714, 717–719 (5th Cir. 1974)).  The

product of these two numbers is referred to as the "lodestar" and there is a strong

presumption that the lodestar represents a reasonable fee.  *Perdue*, 559 U.S. at 552

("[T]he lodestar method yields a fee that is presumptively sufficient to achieve [the

objective of § 1988].  Indeed, we have said that the presumption is a 'strong' one.")

(citations omitted).

  After calculating the lodestar, "[t]he court may then adjust the lodestar to

reach a more appropriate attorney's fee, based on a variety of factors, including the

degree of the plaintiff's success in the suit."  *Assoc. of Disabled Americans v.*

*Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006).  "When the number

of compensable hours and the hourly rate are reasonable, a downward adjustment

to the lodestar is merited only if the prevailing party was partially successful in its

efforts."  *Bivins*, 548 F.3d at 1350–51; *Cf. Mock v. Bell Helicopter Textron, Inc.*, 456

F. App'x 799, 802 (11th Cir. 2012) (affirming a 25% reduction for lack of success in

an ADEA action).  The presumption that the lodestar is reasonable "may be

overcome" and the lodestar enhanced "in those rare circumstances in which the

---

[2] The Fifth Circuit instructed the district court to consider, on remand, the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment caused by accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the "undesirability of the action; (11) the nature and length of the relationship between the attorney and client; and (12) awards in similar cases.  488 F.2d 714, 717–19.

lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554 (citations omitted). The fee applicant "must produce specific evidence" that the "enhancement was necessary to provide fair and reasonable compensation." *Perdue*, 559 U.S. at 553 (citations omitted).

Although the "*Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar — doing so amounts to double-counting." *Bivins*, 548 F.3d at 1349 (citing *Burlington v. Dague*, 505 U.S. 557, 562–563 (1992); *Perdue*, 559 U.S. at 553 ("an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation."); *Barnes*, 592 F. App'x at 871 (citing *Bivins*, 548 F.3d at 1349).

## II. Analysis

Galbreath brought three of her eight claims pursuant to 42 U.S.C. § 1983. The jury returned a verdict in Galbreath's favor on one of these three § 1983 claims. Now, Galbreath seeks attorneys' fees for her lead attorney, Charles Ingrum, and Ingrum's co-counsel at trial, Leigh Ann Carr. Although she began with eight claims, Galbreath only had three to bring to trial by the time Defendants' motion to dismiss and cross-motions for summary judgment was decided: (1) a Fourteenth Amendment procedural due process claim pursuant to § 1983; (2) a state law breach of contract claim; and (3) a state law wrongful termination claim. Galbreath contends she is due the full attorneys' fee award because the jury returned a verdict

in her favor on all three claims.  Further, Galbreath maintains that all of her claims, save the state law defamation claim, are related.  (Doc. 106, p. 13).  She explains that relation exists because the claims are alternative legal theories leading to the conclusion that she was improperly terminated and because the same facts and evidence are relevant to all claims.  *Id.*  Therefore, "the lion-share of the jury's calculation of damages, lost wages and benefits, would have been the same under the claims dismissed prior to trial."  *Id.*

Defendants first argue that Galbreath's motion should be denied because they are entitled to judgment as a matter of law.  (Doc. 99, p. 3).  The Court quickly disposes of this argument.  As set out fully in a separate order, Defendants are not due judgment as a matter of law or a new trial.  The Court, therefore, incorporates said order for the sake of brevity.

Defendants next argue that Ingrum characterized another case he prosecuted against these same Defendants, *Langford v. Hale County Alabama Commission*, 2016 WL 4976859 (S.D. Ala. Sept. 16, 2016), as "very similar" to this case.  (Doc. 99, p. 5).  Defendants, therefore, argue that the Court should follow *Langford* in awarding attorneys' fees.  Defendants also argue that the Court should refuse to award Carr any attorney's fees because she made no distinct contribution to the case.  Defendants do not contest the hours Ingrum spent on this case; however, they do ask for a 50% reduction in the lodestar as was done in *Langford*.

## A. Attorney Fee Request for Services of Attorney Charles Ingrum

1. <u>Reasonable hourly rate</u>

The Court may look to the prevailing hourly rate in the relevant legal community and awards of attorneys' fees in similar cases, the fifth and twelfth factors in the *Johnson* analysis. Galbreath states that $350 per hour is a reasonable hourly rate for Ingrum. In support, Galbreath provided attorney Mary E. Pilcher's affidavit as to her opinion that $400 per hour is the prevailing hourly rate in this District for skilled and experienced attorneys willing to represent individual plaintiffs in civil rights or discrimination cases. (Doc. 92). Pilcher states that she has approximately thirty-two years of experience and has practiced in this District almost exclusively (90%) in the area of civil rights and constitutional law since 2001. Pilcher is admitted in multiple federal and state courts and has lectured on constitutional law and federal civil practice.

Galbreath points out that Ingrum, a senior partner with nearly twenty-one years experience, is licensed to practice in Alabama and admitted to all Federal Courts in Alabama, is licensed to practice in Georgia and admitted to the Northern and Middle District Federal Courts in Georgia, and admitted to practice before the Court of Appeals for the Eleventh Circuit. Ingrum states that he practices approximately 80% of the time in federal court and federal litigation with the remainder in state court litigation. Mr. Ingrum points out that he also successfully represented another plaintiff against these same Defendants in a wrongful termination case last year. (Doc. 86-1).

Defendants maintain that Ingrum should only be awarded the hourly rate he was awarded in *Langford*, $275 per hour, because Ingrum offers no explanation why

6

an additional $75 per hour is justified. (Doc. 99, p. 5). Defendants contend that $275 per hour is still the prevailing market rate in this legal community given Mr. Ingrum's credentials. *Id.*

Generally, the "reasonable hourly rate" is defined as "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). The "relevant market" is usually the "place where the case is filed." *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (citation omitted). Overall, the court is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citation omitted). But the district courts are warned that "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000).

Although the Court does not give controlling weight to prior awards, those awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this judicial district for attorneys of reasonably comparable skill, experience, and reputation to that of Ingrum seeking an award of fees pursuant to a fee-shifting statute. *Norman*, 836 F.2d at 1299; *see Langford*, 2016 WL 4976859, at *15 (finding $275 per hour to be a reasonable hourly rate in 2016 for attorney Ingrum in what appears to be his first significant

civil rights prosecution); *Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253, at *9
(S.D. Ala. Dec. 13, 2013) (finding a range of $250 to $300 per hour to be a
reasonable hourly rate for "more experienced and qualified attorneys" in 2013);
*Oden v. Vilsack*, 2013 WL 4046456, at *6 (S.D. Ala. Aug. 9, 2013) (awarding $250
per hour as a reasonable rate in the prevailing market for attorneys with fifteen to
twenty years of experience including one attorney with forty years experience but
with limited experience in civil rights actions in 2013) (action pursuant to the Equal
Credit Opportunity Act); *Byrd v. Gregory Barro, P.L.C.*, 2011 WL 814544, at *14
(S.D. Ala. Feb. 16, 2011) (finding $250 per hour the reasonable hourly rate in a
Federal Debt Collection Practices Act case in 2011, which represented a $50 per
hour increase from the last hourly rate awarded to the same attorney in a similar
case based on an increase in experience). The Court has also considered Pilcher's
affidavit as to the hourly rate that she has been awarded as a civil rights and
employment discrimination attorney with ten more years experience than Ingrum.

Also, *Johnson* factors three and nine—"the skill requisite to perform the legal
service properly" and "the attorney's experience, reputation and ability"—may be
considered in determining a reasonable hourly rate. The Court has considered the
legal skills exhibited by Ingrum in his appearance before the Court and finds him to
be a skilled litigator. In *Norman*, the Eleventh Circuit discussed legal skill in depth
and instructed that the district courts may consider the "judgment shown in case
assessment", "expertise in negotiations and tactics", "organization and efficiency",
"knowledge of trial practice and knowledge of the substantive law", and

"persuasiveness" of the attorney. 836 F.2d at 1300–01. The Eleventh Circuit then explained that "[i]t is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar …." *Id.* at 1301. The Court observed Ingrum's skills in pursuing the eight-count complaint against these Defendants.

As to experience, Galbreath contends that Ingrum "has undertaken and completed other cases regarding a plaintiff's rights under federal law in the past." (Doc. 85, p. 18). Indeed, Ingrum prosecuted and tried a wrongful termination case against these same Defendants in 2016. *See Langford v. Hale County, Alabama Commission*, 2:14-cv-00070-KD-M (S.D. Ala.). In that case, Ingrum was successful at the summary judgment stage in proving as a matter of law that his client's procedural due process rights were violated. Further, in *Langford,* Ingrum convinced a jury that his client suffered $110,230 in compensatory damages. But beyond this, the Court is unaware of any other wrongful termination cases Ingrum has prosecuted.

Defendants argue that because Ingrum classifies *Langford* as a "very similar" case that Ingrum should be awarded no more per hour than he was in that case: $270 per hour. (Doc. 99, p. 5). The Court finds this classification somewhat misleading. Although the defendants in both cases were the same, the factual scenarios for each case distinctly differ. Further, the only success Ingrum had in *Langford* was an award of damages based on the due process claim that was decided as a matter of law at the summary judgment stage. So the only question for

the jury on the due process claim was damages. The jury returned a defense verdict as to the remaining political affiliation and racial discrimination claim. But here, three claims were tried to the jury and Ingrum convinced the jury to return a verdict in Galbreath's favor on all three claims.

Moreover, even if the cases were "very similar", this could justify an increase to the hourly rate awarded in *Langford* because Ingrum billed approximately 49% fewer hours in this case and was more successful at trial. With experience comes the ability to work smarter, which implicitly means working faster and more successfully. This is a greater value to all involved and justifies some type of increase case-over-case.

The Court may also consider the preclusion of other employment, whether a fee is fixed or contingent, time limitation imposed by the client or circumstances, and the undesirability of the litigation—the fourth, sixth, seventh, and tenth *Johnson* factors. Galbreath argues that Ingrum is a member of a small firm with limited resources and the extensive work required in this matter resulted in the near exclusion of other work. (Doc. 85, p. 12). Galbreath asserts that her counsel took a substantial risk in representing her in a time-consuming, single plaintiff civil rights and employment discrimination action on a contingent fee basis. *Id.* at 15. Pilcher explained in her affidavit that these types of cases are "undesirable by most members of the bar." (Doc. 92, p. 4). Two reasons for their undesirability are that many cases are lost or require considerable time to pass "before any attorney's fees are even considered." *Id.* Galbreath explains that Ingrum took "a substantial risk"

in taking this case, which has been furiously opposed at every step of the way by Defendants.

Upon consideration of the above, the Court finds $300 per hour is a reasonable hourly rate for Ingrum, which is a $25 per hour increase from the case he tried last year. This rate recognizes Ingrum's apparent increase in skill required to litigate civil rights cases relating to a wrongful termination. The Court also finds that the awarded hourly rate is sufficient to encourage capable attorneys to represent civil rights and employment discrimination clients, although there is a risk of non-payment and that such representation may preclude other employment. *See Perdue*, 559 U.S. at 552 ("a 'reasonable fee' is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").

Galbreath also contends that it would be appropriate to assess a 1.5 multiplier (150%) to the lodestar given the contingent nature of the fee. (Doc. 85, p. 15). Galbreath is unclear whether this should be assessed against the hourly rate or total fee award. (Doc. 85, p. 15) ("Accordingly, it would [ ] even be appropriate to enhance Plaintiff's attorneys' fees by a multiplier of 1.5.") She maintains that this multiplier is appropriate given the "substantial risk" associated with this case and the vigorous nature with which Defendants contested every allegation she made. *Id.* The Court, however, cannot award an enhancement to an award of attorneys' fees based on a case being taken on a contingency basis under federal fee-shifting statutes. *Burlington v. Dague*, 505 U.S. 557, 563 (1992). The risk associated with the contingency basis of representation is already calculated into the lodestar. *Id.*

To also award a multiplier would amount to "double counting." *Id.* Given this, the Court declines to award an enhancement in this case.

2. Hours reasonably expended

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Therefore, a district court should not allow any hours which are "excessive, redundant, or otherwise unnecessary", such as hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (emphasis omitted). "Redundant hours generally occur when more than one attorney represents a client", although "they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1301–02.

Generally, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board-cut." *Bivins*, 548 F.3d at 1350 (citation omitted). If the district court employs an across-the-board cut, it must "provide a concise but clear explanation of its reasons for the reduction." *Loranger*, 10 F.3d at 784. Also, "[i]t is well-settled that fees-on-fees are permitted under § 1988 even though Congress did not explicitly provide for fees-on-

fees therein." *Jackson v. State Bd. of Pardons and Paroles*, 331 F.3d 790, 799 (11th Cir. 2003); *see also Jonas v. Stack*, 758 F.2d 567, 568 (11th Cir. 1985) ("[A] prevailing party's counsel is entitled to reasonable compensation when he litigates his own claim for entitlement to § 1988 fees.")

To determine the hours reasonably expended, the Court may consider the first and second *Johnson* factors: the time and labor required and the novelty and difficulty of the question. Galbreath argues that Ingrum reasonably expended 419.2 hours throughout this case. *See* (Doc. 84, p. 2) (365.4 hours spent through filing the motion for attorneys' fees); (Doc. 96, p. 57) (additional 36 hours spent responding to Defendants' Renewed Judgment as a Matter of Law and, Alternatively, Motion for New Trial); (Doc. 106, p. 12) (additional 17.8 hours spent replying to Defendants' opposition to Galbreath's request for reinstatement or front pay, request for attorneys' fees and retaxation of costs, and request for prejudgment and post-judgment interest).

When Defendants filed their opposition to Galbreath's attorneys' fees motion, Ingrum had logged 365.4 hours. At that time, Defendants posed no objection to whether this was a reasonable amount of hours spent on this case. Given Ingrum "reasonably expended" 714.40 hours in *Langford,* Defendants maintain that Ingrum spending half as much here is reasonable. (Doc. 99, p. 7). The Court agrees. And given the amount of post-trial motion practice associated with this matter, the Court finds Ingrum's additional 53.8 hours expended also reasonable. Therefore, the Court does not reduce the 419.2 hours reasonably expended by Ingrum.

### 3. Calculating the lodestar

The Court has determined that Galbreath is entitled to an hourly rate of $300 per hour for the services performed by Ingrum. The Court has determined that Ingrum reasonably expended 419.2 hours in this action. Accordingly, the lodestar is $125,760.00.

### 4. Adjustments to the lodestar

The Court may adjust the lodestar based upon the amount involved and the results obtained—the eighth *Johnson* factor. To begin, Defendants contend that the 50% lodestar reduction that was applied in *Langford* should equally be applied in this case. (Doc. 99, p. 8). Like *Langford*, Defendants explain, Galbreath was successful on less than half of the eight claims she originally alleged in the Complaint. Defendants argue that all eight claims remained in some aspect through summary judgment an one, stigma plus until just before trial. *Id.* at 9. "As a result, all of Mr. Ingrum's pre-trial time consists, to a significant extent, of working on claims that were ultimately unsuccessful." *Id.* Defendants also take Ingrum to task for "block-billing," which they claim makes it difficult to do a line-by-line analysis of his time. Defendants argue that a line-by-line analysis would allow for culling of any time Ingrum may have spent drafting motions on ultimately unsuccessful claims. *Id.* Given this, Defendants ask the Court to apply an across-the-board 50% reduction to the lodestar.

Galbreath argues that she proved that Defendants violated her procedural due process rights. (Doc. 85, p. 18). Additionally, she puts forth that the jury

returned a sizeable verdict based on this claim. *Id.* Galbreath avers that *Langford* should have no bearing on whether the lodestar should be reduced in this case and each attorney fee award should be judged on the facts of that case. (Doc. 106, p. 7). Here, Galbreath explains, she was successful on all claims that went to trial, albeit only three from her original complaint. Even so, Galbreath argues that all of her claims, save the defamation claim, are not distinctly different. *Id.* Given this, the necessary facts related to each claim are "inextricably intertwined." She also points out that the jury returned a verdict in her favor for nearly the amount she requested and that any damages award based on lost pay and benefits "would have been the same under the claims dismissed prior to trial." *Id.* at 7. In other words, they would have been duplicative and not allowed.

Despite the "strong presumption that the lodestar is the reasonable sum that the attorneys deserve", *Bivins*, 548 F.3d at 1350, "[t]he court may [ ] adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit", *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). In deciding whether to reduce the lodestar, the Eleventh Circuit explained, in relevant part:

> [w]here the plaintiff prevails on only some of his claims, as is the case here, special considerations come into play. First, the court should calculate the lodestar amount—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. Having calculated that amount, the court can then reduce the lodestar to reflect the plaintiff's partial success. If the claims on which the plaintiff did not prevail and the claims on which he did prevail were "distinctly different claims ... based on

different facts and legal theories," the court cannot award any fee for
services on the unsuccessful claims. *Id.* at 434–35. However, if the
unsuccessful and the successful claims "involve a common core of facts"
or are "based on related legal theories," the court must compare the
plaintiff's overall relief with the number of hours reasonably expended
on the litigation. *Id.* at 435. If the plaintiff obtained "excellent
results," his attorney should be fully compensated for all time
reasonably expended on the litigation. *Id.* However, if the plaintiff
obtained only "partial or limited success," the court may reduce the
lodestar amount if it believes that amount is excessive in relation to
the plaintiff's relief. That decision rests in the discretion of the district
court. *Id.* at 436–37.

*Popham v. City of Kennesaw*, 820 F.2d 1570, 1578–79 (11th Cir. 1987) (footnotes

omitted).

"[T]he most critical factor is the degree of success obtained." *Villano v. City of

Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (citing *Hensley*, 461 U.S. at

436). However, "[i]t is well established that where 'a plaintiff has achieved only

partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount.' "

*Villano*, 254 F.3d at 1306 (quoting *Hensley*, 461 U.S. at 436). "There is no room to

doubt that a court may reduce a § 1988 award when the degree of success obtained

is limited, even when a plaintiff obtains a favorable jury verdict that a

constitutional right was violated." *Villano*, 254 F.3d at 1306. Overall, "a downward

adjustment to the lodestar is merited only if the prevailing party was partially

successful in its efforts." *Bivins*, 548 F.3d at 1350–51 (citation omitted). "What

constitutes partial success is determined on a case-by-case basis." *Id.* at n.3 (citing

*Hensley*, 461 U.S. at 434–36).

However, "success in a civil rights case 'cannot be valued solely in monetary

terms.' " *Villano*, 254 F. 3d at 1306 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). The Eleventh Circuit has "previously explained that a court that reduced a §1988 award 'would have erred had it ignored the fact that [the plaintiff in a civil rights action] benefitted the public interest by vindicating his constitutional rights.' " *Id.* (quoting *Popham*, 820 F.2d at 1580) (bracketed text in original). And, "vindicating a constitutional right against a municipal defendant heightens the public benefit created by a lawsuit." *Id.* at 1307.

Also, "[t]he relative importance of a money damage award must be determined on a case-by-case basis." *Villano*, 254 F.3d at 1307. "[W]here compensatory damages constitute the primary relief sought and become the only relief obtained, a court is not beyond its discretion in considering the damages awarded as a relevant factor." *Id.* However, while finding that the amount of damages is relevant, the Supreme Court "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside*, 477 U.S. at 574. "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.' " *Villano*, 254 F.3d at 1305 (quoting *Hensley*, 461 U.S. at 436).

The Court finds that the majority of the successful and unsuccessful claims are related because they arose from a common core of facts. *See Popham*, 820 F.2d at 1578–79. The Court has considered the benefit to the public interest by vindication of Galbreath's constitutional right as a public employee to pre-

termination procedural due process. *Villano*, 254 F.3d at 1306. The Court has also considered Galbreath's success on all three claims that went to the jury and obtaining an award of $128,600.00, which is 22% short of the $146,124.00 she requested.[3] The Court has also considered the lack of success on five of the claims that were originally pleaded but dismissed. Additionally, the Court has considered the total amount of time Ingrum spent on this case. Approximately 17% of Ingrum's time was expended on unsuccessful claims, one of which is an unrelated claim (defamation). But the majority of Ingrum's time was spent post-summary judgment. This means that most of Ingrum's time was likely spent on the three claims successfully tried before the jury, notwithstanding Defendants' contention otherwise. As a whole, the Court would not characterize this as an excellent litigation result but it was not far from it.

Accordingly, the Courts finds that reducing the lodestar of $125,760.00 by twenty percent (20%) is appropriate. This reflects the amount of success on damages awarded at trial versus what was sought and the amount of time expended on unsuccessful claims and an unrelated claim. This reduction also recognizes that "vindicating a constitutional right against a municipal defendant heightens the public benefit created by a lawsuit." *Villano*, 254 F.3d at 1307. Applying the reduction to the lodestar, the Court awards an attorney's fee of $100,608.00 for the work performed by Ingrum.

**B. Attorney Fee Request for Services of Attorney Leigh Ann Carr**

---

[3] The amount of damages to award for emotional distress and mental anguish was left up to the jury.

1. Carr's contribution to litigation

Attorney Leigh Ann Carr has been admitted to practice law in Alabama for thirteen years and is admitted to practice law in multiple states and multiple federal districts. (Doc. 86-2, p. 1). At the time of filing her affidavit, she is a partner at Ingrum, Layson, & Carr, L.L.C. and practices exclusively in federal court. Carr participated with Ingrum in trying *Langford* against these same Defendants. She states that she spent 156.2 hours working on this case and requests an award of $250 per hour for this work pursuant to § 1988. *Id.* at 2.

Galbreath contends that Carr's participation was instrumental in the favorable outcome at trial at the expense of Carr's other billable work. (Doc. 106, p. 5). She argues that Carr's actions were not clerical or paralegal in nature. *Id.* Ingrum explained in his second affidavit that the assistance of another attorney (Carr) was essential in this case. (Doc. 106-1, p. 2). "Going over depositions, reviewing and crafting witness questions, and assisting and developing strategies which form the blue print for presentation of this case are examples of tasks Ms. Carr performed." *Id.* Further, Galbreath explains that Carr assisted Ingrum in evidence tracking during trial and ensuring all claims were fully and properly presented in a streamlined fashion. (Doc. 106, p. 5). Thus, Galbreath avers that Carr provided a separate and distinct service due compensation. *Id.*

Defendants respond that Carr is due no award of fees for her participation for the same reasons outlined in *Langford*. (Doc. 99, p. 6). More specifically, Defendants argue that the largest amount of Carr's time was spent reviewing

depositions attended by Ingrum and reviewing documents prepared by Ingrum, which was not a distinct contribution to the litigation of this matter. *Id.* at 6–7. Defendants further argue that Carr "was not responsible for making any arguments, objections, or questioning any witnesses." *Id.* at 7.

In *Norman*, the Eleventh Circuit explained that "[r]edundant hours generally occur where more than one attorney represents a client." 836 F.2d at 1301–02. However, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1301–02; *Johnson v. University College of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994 (1983) ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work…. [A] reduction is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.") (emphasis in original). Also, "[t]he time billed for excessive lawyers in a courtroom or conference" when not specifically necessary, "may obviously be discounted." *Barnes*, 168 F.3d at 433 (citation omitted).

The Court has reviewed the timesheet of Carr's pre-trial activity. The Court is satisfied that Carr made a distinct contribution to this proceeding. For instance, Carr reviewed the case file, pleadings, and depositions in order to prepare

Galbreath's motions in limine. (Doc. 88, p. 1). Additionally, Carr performed the necessary research for the cases Defendants cited in their motions in limine. *Id.* Carr also made preparations for a Rule 50 motion and researched potential jurors. *Id.* These tasks go beyond what a secretary or paralegal would typically perform and are not duplicative of Ingrum's time entries.

There are some entries that show Ingrum and Carr performed some of the same tasks, but they do not necessarily show that each attorney is billing for unreasonably duplicative work. Specifically, both Ingrum and Carr reviewed the deposition transcripts of each witness or potential witness and either made notes or prepared questions. *Compare* (Doc. 87, p. 5) *with* (Doc. 88, p. 1). But Ingrum's time entries indicate that his review was more focused on preparing questioning for each witness, whereas Carr's entries indicate she was focused on anticipating what Defendants would offer in their case and formulating any necessary rebuttal evidence. Thus, both attorneys reviewed the same tasks with a different but reasonable goal in mind. Moreover, it seems unrealistic to conclude that a two-attorney team would be precluded from brainstorming together on what questions should or should not be asked or how a particular witness's testimony may or may not work into a trial strategy.

As to her contribution during trial, Carr's time entries indicate that she made notes regarding witness testimony that would assist in cross-examination, re-direct, or in Galbreath's rebuttal case. (Doc. 88, p. 1). Further, Carr indicates that she met with trial witnesses regarding their testimony and helped prepare Ingrum for

closing arguments. *Id.* These tasks are not duplicative of Ingrum's entries and are reasonable tasks of co-counsel during a fast-paced, factually extensive, and legally complex trial. It is worth noting that Defendants do not seem disagree that co-counsel was necessary at trial. In fact, Defendants' lead counsel was assisted by co-counsel during trial who, like Carr, made no arguments, objections, or questioned any witness.

Therefore, the Court concludes that Galbreath has satisfied her burden in showing the time spent by Carr reflects her "distinct contribution" to this proceeding that is within the "customary practice of multiple lawyer litigation." *See Barnes*, 168 F.3d at 432.

2. <u>Carr's hours expended and reasonable hourly rate</u>

The question then becomes what hourly rate and amount of Carr's time represents the proper lodestar variables. Defendants do no contend that any of Carr's time was not reasonably expended. Instead Defendants contend Carr should be compensated at a paralegal's hourly rate ($75 per hour) because Carr's work consisted of "entirely clerical task[s] that required no legal training or professional judgment to perform." (Doc. 99, p. 7). The Court finds this position unavailing.

Among other tasks, Carr researched and prepared motions in limine, prepared for Defendants' Rule 50 motion, assisted with trial strategy, researched potential jurors, tracked evidence during trial to help formulate cross-examination questions, and formulated rebuttal evidence. These tasks go beyond clerical work and require legal training or professional judgment to effectively execute. The

effectiveness of these tasks is evidenced by a verdict in Galbreath's favor on all counts sent to the jury.

Although Carr states in her affidavit that she exclusively practices in Federal court, there is no explanation of how long she has done so or how many civil rights cases of this nature she has participated in outside of *Langford*, which was just tried last year.[4]  The Court has searched for other federal cases Carr may be associated with in the Southern, Middle, or Northern Districts of Alabama.  And the only other federal cases the undersigned was able to identify Carr as attorney of record for are presently before the United States Bankruptcy Court for the Middle District of Alabama.  Therefore, it appears that *Langford* is the extent of Carr's wrongful termination background.  This means that Carr has about half the years of experience that Pilcher does and, at best, one prior wrongful termination case. Given this, the Court finds that a reasonable hourly rate for Carr is $175 per hour. This brings the lodestar for Carr to $27,335.00 (156.2 hours times $175 per hour).

3. Adjustment to the lodestar

As with Ingrum, the Court finds a reduction in Carr's lodestar of twenty (20%) percent is appropriate in this matter.  Thus, the Court awards an attorney's fee of $21,868.00 for the work performed by Carr.

## II. MOTION FOR COSTS

Galbreath filed a Bill of Costs with the Court seeking an award of $12,321.37 in costs and expenses associated with litigating this matter.  (Doc. 89).  Of this

---

[4] The Court has reviewed the docket for *Langford* and notes that Carr did not make an entry of appearance in *Langford* and was not listed as an attorney of record.

amount, the Clerk taxed $1,252.49 against Defendants. (Doc. 104). Now, Galbreath objects and seeks retaxation pursuant to Federal Rule of Civil Procedure 54(d). (Doc. 106, p. 8).

Rule 54(d) provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d). In this circuit, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Hithon v. Tyson Foods, Inc.*, 566 F. App'x 827, 830 (11th Cir. 2014). Expenses that may not be taxed as costs pursuant to 28 U.S.C. § 1920 may be included in a § 1988 attorney's fee award. Therefore, "the 'reasonableness' standard articulated in § 1988 is liberally applied." *Hithon*, 566 F. App'x at 830.

"To determine which expenses may properly be included, the court must look to the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Hayden v. Vance*, 2016 WL 4157362, at *7 (N.D. Ala. June 28, 2016). "The Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research." *Hall v. Siemens VDO Auto. Elecs. Corp.*, 2014 WL 1329553, at *11 (N.D. Ala. Mar. 31, 2014) (quoting *Yule v. Jones*, 766 F. Supp. 2d 1333, 1344 (N.D. Ga. 2010) (collecting cases and citing *Trotter v. Columbia Sussex Corp.*, 2010 WL 383622, at *10–12 (S.D.

Ala. Jan. 29, 2010). The fee applicant bears the burden of producing records of sufficient detail that explain and support a fee and costs request. *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1275 (S.D. Ala. 2013).

Galbreath seeks costs in the total amount of $12,321.37. (Doc. 89); (Doc. 106, pp. 8–13). This total is made up of the fees of the Clerk ($400); fees for service of summons and subpoena ($6.31); deposition costs associated with fourteen depositions ($3,820.10); mileage and daily attendance fee for three trial witnesses ($628.68); costs incident with taking depositions ($1,422.91); fees associated with litigation copies ($585); and other costs ($5,458.37: hotel costs during trial, postage, folders/dividers, mileage of various individuals). (Doc. 89, pp. 3–7).

## A. Mileage

To begin, Defendants object to Galbreath's request for costs associated with the attendance of Leland Avery, Russell Weeden, and Ann Langford. Between the $40 per day allowance for each witness and mileage, Galbreath requests $628.68. (Doc. 89, pp. 2, 4). Defendants argue that Galbreath provides neither sufficient detail nor documentation to determine whether the correct mileage rate was used. (Doc. 99, p. 12). Based on Galbreath's fee chart, Defendants contend Galbreath used an erroneous mileage rate ($1.03 per mile instead of $0.535 per mile) and, therefore, mileage should not be awarded.

The Court has reviewed Galbreath's chart (Doc. 89, p. 4) and witness fee computation form (Doc. 89, p. 2) and finds Galbreath did not use an erroneous mileage rate. On page 4 of Document 89, Galbreath has a table spelling out witness

fees. In this table, there is a column labeled "Mileage." Under this column, she has listed "164.56" for Leland Avery, Russell Weeden, and Ann Langford. Looking only at this column, it is unclear whether the figure listed delineates the actual round trip mileage for each witness or the product of dollar amount due for the round trip mileage each witness traveled times the allotted mileage expense.

Based on a review of the entire document, the Court finds Galbreath did not mean for this column to delineate the raw mileage but instead the total amount due. To be sure, it does not seem reasonable that Galbreath would round the miles traveled to two decimal points. Also, on page 2 of the same document, Galbreath spells out that each of these witnesses were to be compensated for one day of testimony and for traveling 317 miles. The daily attendance fee ($40 per day) plus the product of 317 miles times the appropriate mileage rate ($0.535) equals $209.59. This is actually $0.03 more that the total Galbreath provided for each witness. And this difference is likely caused in rounding but works out in Defendants' favor. Thus, the Court declines to reduce the costs to be taxed for witness mileage fees.

In addition to witness mileage rates, Defendants aver that Galbreath's counsel's mileage expenses to attend various depositions should be denied because there is "no documentation to substantiate the mileage claim, no information on the amount of mileage actually incurred, and no information on the mileage rate used to calculate the claim amounts." (Doc. 99, pp. 12–13). Defendants argue that it is likely Galbreath used an erroneous mileage rate like they maintain she did with the witness mileage reimbursement. Defendants' position is unavailing.

The Court has compared Ingrum's mileage and hotel request entries with his time sheet entries for the depositions on corresponding dates. This sufficiently substantiates the mileage claim. Further, a simple Internet search shows that the approximate mileage between the listed points multiplied by the appropriate mileage rate is within one to two dollars of the amount Galbreath seeks to be assessed against Defendants.[5] Therefore, the Court declines to reduce the amount requested by Galbreath for Ingrum's mileage associated with taking depositions.

Defendants also object to Galbreath seeking to tax mileage incurred by attorney Carr in traveling from Opelika to Mobile and back on two separate occasions. (Doc. 99, p. 13). They maintain that Carr did not provide a distinct contribution to the case. *Id.* Further, Defendants argue that the mileage charges are duplicative of mileage charged by attorney Ingrum. *Id.* The Court has already explained that Carr provided a distinct contribution to this proceeding and will not deny mileage based on this point. Further, the dates that Carr logged mileage correspond with jury selection in this case and the beginning and end of trial, which are logged on her timesheet. It might be preferable to carpool, but this is feasible only if both attorneys leave at the same time and will stay for the same amount of time. Carr's travel from Opelika to Mobile and back for these proceedings is reasonable.

---

[5] Although looking the approximate mileage up on the Internet is rather simple and straightforward, the Court counsels that the parties should provide more than just the origination city, any waypoint, and the destination city as Ingrum did. The mileage associated with the relevant distances aids the Court in evaluating a cost and expense request with greater ease and more quickly.

Finally, Defendants object to Galbreath's request for mileage reimbursement for Tucker North, a law student that attended trial with Galbreath's counsel. Defendants maintain that North's mileage is not taxable because "he made no contribution whatsoever to the proceedings and merely attended as an observer." (Doc. 99, p. 13). Galbreath responds that North assisted with witnesses while counsel was in trial and acted as a runner for her counsel. (Doc. 106, p. 9).

This Court has previously found that North's "assistance with logistical matters and witnesses during trial" leads to expenses that are reasonably incurred for litigation purposes. *Langford*, 2016 WL 4976859 at *13. North acted in the same capacity in this case. The Court, therefore, finds North's same role in this matter means his mileage should be assessed against Defendants.

## B. Folders and Dividers

Galbreath also seeks to assess against Defendants $60.31 incurred in folders and dividers used in this matter. Defendants object and argue that these expenses are "routine office overhead" that should not be awarded. (Doc. 99, p. 14). Galbreath maintains that the folders and dividers used are not part of the "overhead of his firm (toner, pens, and paper) and [were] solely used for the 'case preparation.'" (Doc. 106, p. 10).

Even if the folders and divider are not "overhead," they are not taxable in this situation. "[T]he costs for binders, folders, labels and related items are reimbursable when used in conjunction with complying with an order specifically requiring them, but they would not be eligible when used in other settings …."

*Procaps S.A. v. Patheon Inc.*, 2016 WL 411017, at *7 (S.D. Fla. Feb. 2, 2016).  When not ordered, folders and binders are not compensable because they are merely for convenience of counsel.  *Durden v. Citicorp Trust Bank, FSB*, 2010 WL 2105921, at *4 (M.D. Fla. April 26, 2010) (finding costs for binders, labeling, and bates numbering are "extraneous" and to be born "primarily of convenience and not necessity").

Galbreath points to no order of the Court associated with the expense incurred for the folders and dividers.  At best, Civil Local Rule 7(g) explains, "where exhibits are numerous, it is helpful to the Court to receive well-organized, tabbed binders of double-sided copies, along with an index or table of contents."  Civ. L.R. 7(g).  Even so, this is not a direct order from the Court, and Galbreath makes no attempt to explain that the folders and dividers are associated with supplying the Court with courtesy copies of exhibits, which the Court would be much more sympathetic towards.  The Court reduces the amount to be taxed against Defendants by $60.31.

## C. Copy Charges

Galbreath moves to assess against Defendants $585 in copy expenses associated with "litigation copies for trial."  At a total of 1,170 copies, Galbreath asks the Court to tax these copies at $0.50 per page.  Defendants contend that Galbreath's per page figure is excessive and a more reasonable rate of $0.10 to $0.14 per page should be used.  (Doc. 99, p. 15).  Further, Defendants argue that the copy charge should be disallowed because no explanation is offered to specify what the

copies are or why they were needed. *Id.* Galbreath counters that the documents were related to the prosecution of this case and should be assessed. (Doc. 106, p. 11). She also argues that the Court should implement the "local rate" for copy charges. *Id.*

In determining whether to award copying costs, "the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *W & O, Inc.*, 213 F.3d at 623. It is not necessary that the photocopies be used at trial or be filed with the court to be taxable. *Id.* Charges for photocopies made merely for the convenience of counsel or the parties, however, are not taxable. *Blevins v. Heilig—Meyers Corp.*, 184 F.R.D. 663, 668 (M.D. Ala. 1999).

Ingrum explains in his second affidavit that all copies were required and necessary in this matter for the following reasons: "Discovery—18 copies; Deposition Transcripts—869; Trial Exhibits—106; Attachments to Response to Motion for Summary Judgment—177; Total—1170." (Doc. 106-1, p. 3). The Court finds that all copies listed could have reasonably been necessary in this matter. But as to the rate charged, the Court finds Galbreath's rate of $0.50 per page is excessive. She directs the Court to use a local rate but offers no support for her proposition that within Mobile copies generally run $0.50 per page. A search of copy cost awards within this district shows that the local rate is more reasonably $0.10 per page. *See Crouch v. Teledyne Continental Motors, Inc.*, 2013 WL 203408, at *9 (S.D. Ala. Jan. 17, 2013). Therefore, the Court assesses copy costs against Defendants in the

amount of $117.00 (1,170 pages times $0.10 per page).

**D. Hotel Expenses**

As a last matter, Defendants argue that various hotel expenses should not be assessed against them. As to the hotel expense for attorney Carr and Tucker North, Defendants maintain that any such expense should not be awarded because Carr and North made no distinct contribution in this matter. (Doc. 99, pp. 15–16). Defendants request the Court reduce the costs assessed in the amount of $1,258.91 for these individuals' hotel stay during jury selection and trial. The Court finds Defendants' argument unavailing.

As discussed previously, Carr did make a distinct contribution in this matter and, therefore, her hotel stay during jury selection and trial are properly assessed against Defendants. But even if Carr made no distinct contribution, the Court finds that Carr's hotel expenses were reasonably incurred in this action, which is "based on the instruction from *Hithon*[ ] that § 1988 requests for costs and expenses are to be given a liberal construction." *Langford*, 2016 WL 4976859 at *13 (approving Carr's hotel fees in *Langford* even though the court found she did not make a distinct contribution as an attorney at trial). Moreover, for this same reason, the hotel expenses associated with North's presence at trial and assistance with logistical matters and witnesses during trial are properly assessed against Defendants. *See id.* (approving North's hotel fees in *Langford*).

As to the hotel fee associated with Leland Avery, a witness for Galbreath on the first day of trial, Defendants argue that Avery should have been provided a

daily subsistence allotment that did not exceed that given to traveling government employees. (Doc. 99, p. 16). Defendants explain that the maximum lodging rate for a government employee in Mobile, Alabama in March 2017 was $91 per day. *Id.* Therefore, Defendants ask the Court to reduce the amount assessed against them for Avery's hotel stay to $91 per day instead of the $155.86 submitted. Galbreath responds that the caselaw Defendants rely upon for their position is "based upon a 1997 bankruptcy case from Illinois" that should be disregarded. (Doc. 106, p. 11). Further, Galbreath contends that Avery's testimony was necessary, his lodging was not exorbitant, and, therefore, the amount paid should be awarded. *Id.* at 12.

Subsistence costs for witnesses are recoverable when "an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." 28 U.S.C. § 1821(d)(1). "A subsistence allowance for a witness … 'shall be paid in an amount not to exceed the maximum per diem allowance' set by the General Services Administration for federal employees." *Santana v. RCSH Operations, LLC*, 2012 WL 3779013, at *4 (S.D. Fla. Aug. 31, 2012) (quoting § 1821(d)(2)). "Therefore, 'the amount taxable is the amount actually paid or the statutorily defined amount, whichever is less.' " *Id.* (quoting *Independence Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 721 (N.D. Ill. 1982).

Given the clear statutory directive and application within district courts of this Circuit and others circuits of § 1821 to a witness's hotel fee, the Court finds Galbreath's argument unavailing. The Court may award no more than $91 per

night (excluding taxes) for Avery's lodging.  *See*

https://www.gsa.gov/portal/category/100120 (last visited August 17, 2017).

Therefore, the Court reduces the hotel fee for Avery to $117.86.[6]

### III. CONCLUSION

Based upon consideration of the above analysis, the Court **GRANTS**, in part,

and **DENIES** in part Galbreath's Motion for Attorneys' Fees and Costs (Doc. 84) as

follows:

1. Attorney's fees are **AWARDED** in the amount of $100,608.00 for the work

   performed by Ingrum;

2. Attorney's fees are **AWARDED** in the amount of $27,335.00 for the work

   performed by Carr; and

3. Costs and expenses are **AWARDED** in the amount of $11,793.06.

The total amount to be awarded unto Galbreath for the above is $139,736.06.

**DONE** and **ORDERED** this 17th day of August 2017.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Galbreath also requests additional costs and expenses be taxed against Defendants for Ingrum's lodging associated with various depositions and transcript expenses associated with these depositions.  Defendants make no objection to these costs and expenses in their response.